## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ISAAC HAYES ENTERPRISES, LLC,
THE ESTATE OF ISAAC HAYES,

        Plaintiffs,

    v.

DONALD JOHN TRUMP individually,
DONALD J. TRUMP FOR PRESIDENT,
2024, INC., REPUBLICAN NATIONAL
COMMITTEE, TURNING POINT USA,
INC., NATIONAL RIFLE
ASSOCIATION OF AMERICA,
AMERICAN CONSERVATIVE
UNION, BTC, INC.,

        Defendants.

CASE NO: 1:24-cv-03639-TWT

Honorable Thomas W. Thrash, Jr.

## DEFENDANT REPUBLICAN NATIONAL COMMITTEE'S
## RESPONSE IN OPPOSITION TO
## MOTION FOR EMERGENCY PRELIMINARY INJUNCTION

On August 16, 2024—in the key stretch of the 2024 presidential election—Plaintiffs Isaac Hayes Enterprises, LLC and the Estate of Isaac Hayes filed this lawsuit against the Republican National Committee ("RNC") and others alleging (as relevant here) that Defendants infringed the copyright to the song "Hold On, I'm Coming" (the "Song") during events supporting President Trump's candidacy.  Doc. 1.  Plaintiffs served the RNC with the Amended Complaint (Doc. 6) and their Motion for an Emergency Preliminary Injunction (Doc. 6-1) on August 23.  Doc. 11, Affidavit of Service.  Plaintiffs waited until the home stretch of the presidential

election to seek an injunction even though Plaintiffs or their agents have had knowledge of the allegedly infringing uses of the Song since at least 2020. Doc. 9, Amended Complaint ¶¶ 9, 44 ("Upon information and belief, a cease-and-desist letter was sent to the Trump campaign in 2020 by non-parties Universal Music Group and Warner Chappell Music, publishers contracted by Plaintiff Isaac Hayes Enterprises."). And Plaintiffs filed this suit against the RNC despite the RNC having a valid license to perform the Song at the Republican National Convention—the only conduct that forms the basis of the alleged infringement by the RNC. *Id*. at ¶ 61.

The Court should deny Plaintiffs' much delayed and strategically timed request for the "extraordinary and drastic remedy" of a preliminary injunction because Plaintiffs have not satisfied any of the four prerequisites for that relief. *Eknes-Tucker v. Gov. of Ala.*, 80 F.4th 1205, 1219 (11th Cir. 2023) (citation omitted). Plaintiffs have not shown that they are substantially likely to succeed on the merits of their claims against the RNC because (1) they have not shown that they own the copyright to the Song, and (2) the RNC's allegedly infringing activities were in fact licensed and (in any event) fair use. Plaintiffs have not even tried to show that they will suffer irreparable harm without a preliminary injunction, and their own delay in seeking relief confirms that they will suffer no such harm. A preliminary injunction would disproportionately harm the RNC by interfering with its political speech during the crucial last leg of a presidential election. And a preliminary

injunction would harm the public interest for the same reason.  For any and all of these reasons, discussed below, the Court should deny Plaintiffs' Motion.

## <u>BACKGROUND</u>

On August 16, 2024, Plaintiffs Isaac Hayes Enterprises, LLC and the Estate of Isaac Hayes filed this lawsuit against President Donald Trump, his campaign organization, and various other organizations supporting President Trump's candidacy in the 2024 presidential election, including the RNC.  Doc. 1 at 1.

All of Plaintiffs' claims relate to the alleged playing or performance of the Song "Hold On, I'm Coming" during various events in support of President Trump's 2024 presidential candidacy.  *See generally* Amended Complaint, Doc. 6.  Plaintiffs' Amended Complaint reveals that Plaintiffs knew as early as 2020 that President Trump was using the Song at events supporting his presidential campaign.  *See* Amended Complaint, Doc. 6 at ¶¶ 9, 44 ("Upon information and belief, a cease-and-desist letter was sent to the Trump campaign in 2020 by non-parties Universal Music Group and Warner Chappell Music, publishers contracted by Plaintiff Isaac Hayes Enterprises.").  Yet Plaintiffs delayed in seeking a preliminary injunction until August 2024—during the crucial final months of the 2024 presidential election.

Plaintiffs base their request for an Emergency Preliminary Injunction entirely on direct copyright infringement.  *See generally* Doc. 6-2.  Plaintiffs assert no such claim against the RNC, but in their Amended Complaint, Plaintiffs do assert two

claims of "contributory and vicarious copyright infringement" against the RNC—
one based on allowing the composition of the Song to be performed (Doc. 6,
Amended Complaint, ¶¶ 85-89) and one based on allowing the sound recording of
the Song to be played (*id.*, ¶¶ 90-94).  Plaintiffs have identified only a single instance
of alleged infringement by the RNC:

> On information and belief, Mr. Trump unlawfully
> performed the Copyrighted Work after his speech at the
> 2024 Republican National Convention on July 18, 2024,
> at Fiserv Forum in Milwaukee, Wisconsin, which was
> hosted by Defendant RNC.  The sound recording was not
> performed, but the composition and lyrics were unlawfully
> performed by a band.

*Id.*, ¶ 61.  Plaintiffs also linked to a timestamped YouTube video of CBS News'
coverage of the Convention.  *Id.*

Contrary to Plaintiffs' allegations, the performance of the Song during the
Republican National Convention was not unauthorized.  Rather, on January 17,
2024, the RNC (through Alongi Media, Inc.) entered into a Music License with
Broadcast Music, Inc. (the "BMI License"), which granted the RNC a license to
perform the Song during the Convention:

> BMI hereby grants to LICENSEE a non-exclusive license
> to perform, present or cause the live and/or recorded
> performance during Events or Functions, or by means of
> internet or intranet transmissions from LICENSEE's
> website, of all musical works of which BMI shall have the
> right to grant public performance licenses during the Term
> hereof.

Exh. 1, Affidavit of Declaration of Elise Dickens, Attachment A, Music License for

Political Entities or Organizations, Paragraph 2(a); *see also* Ex. 1, Declaration of

Elise Dickens, ¶ 5.

A house band played music during the Republican National Convention

pursuant to the BMI License, which included the Song.  One month afterward, BMI

sent a letter dated August 14, 2024, to "exclude[ ]" from the license "all musical

compositions written and copyrighted by Isaac Hayes" effective "from this date

forward."  Exh. 1, Declaration of Elise Dickens, Attachment B, Letter from BMI to

Alongi Media (August 14, 2024).  According to BMI, the letter was prompted by "a

communication from Universal Music Publishing Group, as publisher of the musical

works written and copyrighted by Isaac Hayes, objecting to the use of Mr. Hayes'

musical compositions by Alongi Media, Inc. on behalf of the 2024 Republican

National Convention and instructing BMI to remove all works written and

copyrighted by Isaac Hayes from the Agreement."  *Id.*  That letter was based on

Paragraph 2(a) of the BMI License, which provides that, at a songwriters' request,

BMI may exclude works from the License on a *prospective* basis, so that the License

would not cover performance of the works "at any Event or Function *following*

*receipt of such notice*":

> Notwithstanding the foregoing, one or more work(s) or
> catalog(s) of works by one or more BMI songwriter(s)
> may be excluded from this license if notice is received by
> BMI that such BMI songwriter(s) objects to the use of

their copyrighted work(s) for the intended uses by the LICENSEE. BMI shall provide written notice to LICENSEE of any such exclusion. *Any performance by LICENSEE of any excluded work(s) or catalog(s) of works at any Event or Function following receipt of such notice shall not be covered by the grant under, and shall be deemed a material breach of, this Agreement*, even if the venue or establishment at which the Event or Function takes place is separately licensed to publicly perform the work(s) or catalog(s) of works.

Exh. 1, Declaration of Elise Dickens, Attachment B, Music License for Political Entities or Organizations, Paragraph 2(a) (emphasis added).

Plaintiffs never sent a cease-and-desist letter to the RNC. Exh. 1, Declaration of Elise Dickens, ¶ 8. Nor have Plaintiffs offered any explanation of the basis for, or investigation that led to, their conclusory assertion that the RNC allowed the Song to be played "without exercising due diligence and searching for authorization to use [the Song], and or obtaining [its] own authorization to use [the Song]." Doc. 6, Amended Complaint, ¶¶ 86, 91. Instead, without conferring with the RNC, Plaintiffs filed this lawsuit and moved for a preliminary injunction—seeking to force the RNC to pull down videos of the Republican National Convention during the final stretch of a presidential campaign. *See* Doc. 6-2, Amended Brief at 3-4, 8 (including videos of "[c]ampaign events" among "conduct" that Plaintiffs seek to enjoin).

## **LEGAL STANDARD**

"A district court may grant injunctive relief only if the moving party demonstrates that: (1) it has a substantial likelihood of success on the merits;

(2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Eknes-Tucker*, 80 F.4th 1205 at 1219 (quotation marks and citation omitted). "Failure to meet even one" of those prerequisites dooms a request for a preliminary injunction. *Wreal v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). "[C]ourts must remember that a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion" as to each of "these four prerequisites." *Eknes-Tucker*, 80 F.4th at 1219 (quotation marks and citation omitted).

## **ARGUMENT**

### I.    **PLAINTIFFS HAVE NOT SHOWN A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON MERITS OF THEIR CLAIMS AGAINST THE RNC.**

Plaintiffs base their request for a preliminary injunction entirely on their claims of direct copyright infringement, neither of which was asserted against the RNC in the Amended Complaint.[1]  *See* Doc. 6-2, Amended Brief at 4-5.  In their Amended Complaint, Plaintiffs assert two unelaborated claims for "contributory

---

[1] Plaintiffs' direct copyright infringement claims are based on an alleged infringement of the composition and sound recording of the Song.  Amended Complaint, ¶¶ 69-84.  Plaintiffs do not move for a preliminary injunction against any other counts of the Amended Complaint (*see* Doc. 6-2, Amended Brief at 4-5)—nor could they, as the facts and law do not support such claims.

and/or vicarious copyright infringement" against the RNC (Counts 3 and 4).  *Id.*[2]
The motion for preliminary injunction is silent on these counts—it does not provide
any supporting facts, explain Plaintiffs' theory for liability, or even argue a
likelihood of success on these claims.  *Id*.  The Court should deny Plaintiffs' motion
with respect to the RNC for that reason alone.

But even if Plaintiffs properly sought injunctive relief related to the claims
against the RNC—which they have not—Plaintiffs cannot show a likelihood of
success regarding *any* alleged conduct by the RNC related to the Song.  Again,
Plaintiffs have identified only a single activity by the RNC: a band's performance of
the Song for three minutes during the 2024 Republican National Convention, videos
of which are available online.[3]  *See* Doc. 6, Amended Complaint, ¶ 61.

---

[2] Contributory and/or vicarious copyright infringement require a direct
infringement, as well as additional knowledge of, actions by and/or benefits received
from that alleged infringement.  *See, e.g., Cable/Home Commc'n Corp. v. Network
Prods., Inc.*, 820 F.2d 362, 365 (11th Cir. 1987) ("The test for contributory
infringement has been formulated as one who, with knowledge of the infringing
activity, induces, causes or materially contributes to the infringing conduct of
another."); *BUC Int'l Corp. v. Int'l Yacht Council*, 489 F.3d 1129, 1138 n.19 (11th
Cir. 2007) ("Liability for vicarious copyright infringement arises when the defendant
profits directly from the infringement and has the ability to supervise the direct
infringer." (quotation marks and citation omitted)).   However, the Amended
Complaint alleges only that the RNC "allowed" the Song to be played at campaign
events (*see* Doc. 6, Amended Complaint, ¶¶ 86, 91), which fails to properly state a
claim for relief for secondary copyright infringement liability.  *See Newborn v.
Yahoo, Inc.*, 391 F. Supp. 2d 181, 189 (D.D.C. 2005) ("[B]rief, conclusory
statements, which are accompanied by no factual support, are simply insufficient to
state a claim of contributory copyright infringement.").

[3] Although Plaintiffs' contributory and/or vicarious copyright infringement
claims against the RNC are based on alleged infringement of both the composition
and sound recording of the Song (*see* Doc. 6, Amended Complaint, ¶¶ 86, 91),

For at least two independent reasons, Plaintiffs have no substantial likelihood of success on their claims.  *First*, Plaintiffs have not shown that they currently own the copyright in the Song, as required to seek injunctive relief.  *Second*, the RNC had a license to perform the Song at the Convention.

**A.    Plaintiffs have not shown that they have an ownership interest in the copyright to the Song.**

Plaintiffs acknowledge that they must show "ownership of" or an "exclusive license for" the copyright to the Song to prevail on their claims.  Plaintiffs allege that "Plaintiff Isaac Hayes Enterprises, LLC is the current owner of right, title, and interest in and to the Copyrighted Work, … which was assigned to Plaintiff with the United States Copyright Office."  Amended Complaint, Doc. 6, ¶ 4.  But Plaintiffs support that allegation with a Copyright Office record that appears to document a March 30, 2024 "Copyright Assignment" *from* Isaac Hayes Enterprises, LLC ("Party 1") *to* non-party Primary Wave Music IP Fund 3, LP ("Party 2").[4]  Doc. 1-2.  It thus appears that Plaintiffs parted with their interest in the copyright.  As a result, Plaintiffs have not shown a continuing ownership interest in the copyright as required to seek an injunction barring alleged future infringements.  *See* 17 U.S.C.

---

Plaintiffs fail to assert any factual allegations related to the performance of the alleged sound recording by the RNC and admit that the "sound recording was not performed" during the single instance of alleged infringement.  *Id*. at ¶ 61.

[4] Discovery has not yet opened in this case.  *See* Fed. R. Civ. P. 26(d)(1).  Counsel for the RNC therefore asked counsel for Plaintiffs to provide the assignment agreement underlying Doc. 1-2, but Plaintiffs' counsel refused to do so.

§ 501(b) (granting a "legal or beneficial owner" the right to sue for "infringement … committed while he or she is the owner"); *Fathers & Daughters Nevada, Inc. v. Zhang*, 284 F. Supp. 3d 1160 (D. Or. 2018) (dismissing infringement claims for lack of standing where plaintiff had assigned away rights to copyrighted work).

**B.    The BMI License authorized the RNC's allegedly infringing activity.**

Plaintiffs also have no substantial likelihood of succeeding on any claims of infringement against the RNC because the RNC had a license to perform the Song at the Convention—a fact that precludes liability even under Plaintiffs' own pleadings.  Doc. 6, Amended Complaint, ¶¶ 86, 91 (describing basis for alleged liability: "Defendants … allowed the … Song to be performed during Trump Campaign events without exercising due diligence and searching for authorization to use the composition embodied by the Copyrighted Work, *and or obtaining their own authorization to use the Copyrighted Work*." (emphasis added)).   *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 961 (11th Cir. 2009) (holding infringement claim failed as a matter of law where the defendant had a license); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1275-77 (11th Cir. 2001) (holding movant failed to show likelihood of success on the merits due to defense); *Ga. Television Co. v. TV News Clips of Atlanta, Inc.*, 718 F. Supp. 939, 947 (N.D. Ga. 1989) ("On motion for preliminary injunction, plaintiffs must demonstrate a likelihood of success of the merits at trial as to affirmative defenses, as well as to the

element of the plaintiffs' *prima facie* case." (quotation marks and citation omitted)).

Specifically, the RNC (through Alongi Media) obtained the BMI License that gave

the RNC the right to perform the Song at the Convention and to transmit that

performance via the internet.  Plaintiffs' request to preliminarily enjoin the RNC

thus fails at the outset.

1.     **The BMI License authorized performance of the Song at The**

**Republican National Convention.**  Because it occurred in the past, the performance

of the Song at the Convention cannot support Plaintiffs' request for preliminary

injunctive relief.  *See Murthy v. Missouri*, 144 S. Ct. 1972, 1993 (June 26, 2024).

But the performance at the Convention was in any event licensed because it occurred

on July 18, 2024—after BMI granted the RNC "a non-exclusive license to … cause

the live and/or recorded performance" of the Song.  *See* Exh. 1, Declaration of Elise

Dickens, Attachment A, Music License for Political Entities or Organizations,

Paragraph 2(a) ("BMI hereby grants to LICENSEE a non-exclusive license to

perform, present or cause the live and/or recorded performance during Events or

Functions … of all musical works of which BMI shall have the right to grant public

performance licenses during the Term hereof."); *id.* Paragraph 19 (noting initial term

of agreement from January through December 2024).  Plaintiffs thus have no

likelihood of success on their claims of copyright infringement based on the

performance of the Song at the Convention.  *See Wilchombe*, 555 F.3d at 961.

**2.      Videos of the Convention available on the internet are authorized by the BMI License, and Plaintiffs' withdrawal letter did not abrogate protection of the videos, which in any event constitute fair use.**  In their Amended Brief, Plaintiffs argue that the Court should order removal of "infringing videos" of its "events."  Doc. 6-2 at 6.  In their Amended Complaint, Plaintiffs have identified only a single video of an RNC event: a YouTube video of CBS News' coverage of President Trump's speech during the Convention.  Doc 6, ¶ 61.  Plaintiffs do not appear to base their claims on that video.  Nor could they:  Because CBS News—and not the RNC—is responsible for that video, its availability online can support neither a request for injunctive relief nor a claim of infringement against the RNC.  *See, e.g.*, *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024) (holding that a plaintiff generally cannot preliminarily enjoin a defendant based on the actions of another entity); *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978) (liability for copyright infringement generally requires copying by the defendant).

**a.**      To the extent Plaintiffs seek removal of videos of the Republican National Convention from the RNC's websites—which is not explicitly sought in the motion—such request is improper because any use of the Song in such videos is licensed.[5]  As with the performance of the Song at the Convention, these videos are

---

[5] The RNC has made videos of the Convention available on its websites—namely, its homepage and the official YouTube channel of the RNC.  *See* The Republican National Committee, gop.com; The official Republican National

authorized by the BMI License.  That License authorizes the RNC to "perform, present or cause the live and/or recorded performance" of the Song "by means of internet … transmissions from LICENSEE's website."  Exh. 1, Declaration of Elise Dickens, Attachment A, Music License for Political Entities or Organizations, Paragraph 2(a) ("BMI hereby grants to LICENSEE a non-exclusive license to perform, present or cause the live and/or recorded performance during Events or Functions, or by means of internet or intranet transmissions from LICENSEE's website, of all musical works of which BMI shall have the right to grant public performance licenses during the Term hereof.").  And in the next subsection, the License confirms that it includes "the right to broadcast, telecast, or otherwise transmit … via the internet" performances of the Song.  *Id.*, Paragraph 2(b) ("This license does not include … the right to broadcast, telecast or otherwise transmit, *other than via the internet or intranet*, the performances licensed hereunder to persons outside the premises at which an Event or Function occurs.") (emphasis added).

Because the BMI License authorizes the RNC to transmit performances of the Song through the internet, Plaintiffs cannot show a substantial likelihood of success on their copyright infringement claims against the RNC.  *See Wilchombe*, 555 F.3d

---

Committee YouTube Channel, https://www.youtube.com/@GOP.  The video on the homepage constitutes over 6 hours of Night 4 from the historical Convention.  *Id.*

at 961; *see also Thompson v. Looney's Tavern Prods., Inc.*, 204 F. App'x 844, 850 (11th Cir. 2006) (determining copyright infringement claims were barred by license and on the basis of estoppel); *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753 (11th Cir. 1997) (finding "[w]hat [plaintiff] waived was any right to sue for breach of copyright on account of the playing of the song while the license was in effect.").

      **b.**      The August 14, 2014 Withdrawal Letter does not render unlicensed the RNC's online videos of the earlier Convention.  By that letter, BMI (at the request of Plaintiffs' publisher) invoked Paragraph 2(a) of the BMI License.  Exh. 1, Declaration of Elise Dickens, Attachment B, Letter from BMI to Alongi Media (August 14, 2024).

      Paragraph 2(a) provides that BMI may provide notice to the Licensee (here, the RNC) "exclud[ing]" the song of an objecting artist "from th[e] license" on a *prospective* basis, so that it may not be performed "at any Event or Function following receipt of such notice."  Exh. 1, Declaration of Elise Dickens, Attachment A, Music License for Political Entities or Organizations, Paragraph 2(a).  Consistent with the ordinary meaning of "event" and "function," the BMI License defines those terms to reach only gatherings occurring in real time and lasting for a limited duration.  Exh. 1, Declaration of Elise Dickens, Attachment A, Music License for Political Entities or Organizations, Paragraph 1(a), (b).  By its own terms, then, Paragraph 2(a) does not allow BMI to yank the rug from underneath a licensee by

withdrawing the license to transmit via the internet *videos* of licensed events—after those events have already occurred and cannot be changed.  It does not, in other words, allow what Plaintiffs are attempting in this lawsuit.

    **c.**    Even if RNC's continued displays of videos from the Republican National Convention were not properly licensed, Plaintiffs still could not show a substantial likelihood of succeeding on a claim of infringement against those videos because they constitute fair use.  The videos include the Song as background music for a few minutes of a six-hour video documenting an important historical event, which constitutes fair use of the Song that could not possibly harm the market for or value of the Song.  *See* 17 U.S.C. § 107(1); *Katz v. Google Inc.*, 802 F.3d 1178, 1184 (11th Cir. 2015) (discussing "central question" of fair use factor of "whether, assuming that everyone engaged in the conduct of the defendant," such use would cause substantial economic harm and frustrate purposes of copyright); *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013) (finding that television clip used in musical performance was transformative because it was not used for "its own entertainment value"); *Monster Commc'ns, Inc. v. Turner Broad. Sys.*, 935 F. Supp. 490, 493-94 (S.D.N.Y. 1996) (denying motion for preliminary injunction and finding film footage used in documentary about Muhammed Ali was fair use because Ali's biography is a subject of public interest).  Moreover the videos record part of a noncommercial political campaign, which confirms that they

constitute fair use—and thus cannot support infringement liability. *See Keep Thomson Governor Comm. v. Citizens for Gallen Comm.*, 457 F. Supp. 957, 961 (D.N.H. 1978) (in applying fair use doctrine, holding "political campaign message … noncommercial in nature"); *accord Peterman v. Republican National Committee*, 369 F. Supp. 3d 1053, 1062 (D. Mont. 2019) (collecting cases).

\* \* \*

As the performance of the Song at the Convention was pursuant to a valid license and RNC's videos of that Convention remain licensed and fairly used following the Withdrawal Letter, Plaintiffs cannot of succeed as a matter of law on their claims of copyright infringement against the RNC—and certainly have not shown a likelihood of doing so.

## II.   PLAINTIFFS IMPROPERLY ASK THIS COURT TO PRESUME IRREPARABLE HARM, WHICH THEY OTHERWISE HAVE NOT ATTEMPTED TO SHOW.

To obtain a preliminary injunction, Plaintiffs must show "imminent irreparable harm"—irreparable harm that will occur "before [the case] can be resolved on the merits." *Wreal*, 840 F.3d at 1248. Plaintiffs have not even tried to make that showing, relying instead on a purported presumption of irreparable harm. No such presumption applies here, and Plaintiffs' failure to show irreparable harm independently "dooms" Plaintiffs' request for a preliminary injunction. *Id.*

### A.   Plaintiffs' may not rely on a presumption of irreparable harm.

Plaintiffs' argument concerning irreparable injury consists of two conclusory sentences, based on a twenty-year old unpublished order, asking this Court to presume irreparable injury because Plaintiffs have (they claim) shown copyright infringement.  Doc. 6-2, Amended Brief, at 5 (relying on *Am. Family Life Ins. Co. v. Assurant, Inc.*, No. 1:05-CV-1462-BBM, 2006 WL 4017651, at *12 (N.D. Ga. Jan. 11, 2006)).  The Court should reject that argument for at least four independent reasons.

*First*, the Court should not presume irreparable harm because the Supreme Court's decision in *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), forecloses the presumption.  In *eBay*, the Supreme Court explained that it "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows the determination that a copyright has been infringed"—and that "traditional equitable principles do not permit such broad classifications."  *Id.* at 392-93.  Like the other seven Circuits to address the issue,[6] the Eleventh Circuit has held that *eBay* abrogates any presumption of irreparable harm.  *See Peter Letterese And Assocs., Inc. v. World Inst. of Scientology*

---

[6] *See Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010); *TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019);  *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007); *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011); *Trial Lawyers Coll. v. Gerry Spene Trial Lawyers Coll. At Thunderhead Ranch*, 23 F.4th 261, 1270 (10th Cir. 2022); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011)

*Enterprises*, 533 F.3d 1287, 1323 (11th Cir. 2008) ("As the Supreme Court [in *eBay*] has observed, a permanent injunction does not automatically issue upon a finding of copyright infringement"); *see also Commodores Entm't Corp. v. McClary*, 648 F. App'x 771, 777 (11th Cir. 2016) ("In light of the Supreme Court's holding in *eBay*, a presumption of irreparable harm cannot survive.").  It could have not done otherwise given the Supreme Court's clear direction in *eBay*.  Thus, no presumption of irreparable injury applies.[7]

*Second*, Plaintiffs' own authority acknowledges that any presumption of irreparable harm disappears where, as here, the plaintiffs have unduly delayed in seeking an injunction.  *See  Am. Family Life Ins. Co.* , 2006 WL 4017651, at *13-14; *see also Richard Feiner & Co. v. Turner Entm't Co.*, 98 F.3d 33, 34 (2d Cir. 1996) ("The presumption may be rebutted, if the defendant is able to demonstrate that the plaintiff delayed in bringing an action requesting preliminary injunctive relief.").  Plaintiffs' Amended Complaint makes clear that they have known since at least 2020 that the Song was being played in connection with President Trump's campaign events.  *See* Amended Complaint, Doc. 6 at ¶¶ 9, 44.  And yet, Plaintiffs waited four years to file this lawsuit, during which time Plaintiffs allege the song

---

[7] To the extent Plaintiffs seek to argue that the balance of harms and the public interest automatically favor a preliminary injunction following a showing of substantial likelihood of success on the merits of a copyright infringement claim, those arguments are also foreclosed by *eBay* for the reasons stated in the text.  *See Peter Letterese And Assocs.*, 533 F.3d at 1323.

was repeatedly played during events supporting President Trump's candidacy that were filmed, including the National Convention. *Id.*, ¶ 61. Plaintiffs' delay shows that their harm is not irreparable, and it should preclude Plaintiffs' request for an injunction requiring Defendants to pull down videos of campaign events during the crucial stretch of a presidential election. *Id.*, Prayer for Relief.

*Third*, even when courts presumed irreparable harm, they recognized that the presumption does not apply "if the unauthorized use of the copyright material is for a noncommercial purpose"; in that situation, "the likelihood of future harm must be demonstrated." *National Football League v. McBee's & Bruno's, Inc.*, 792 F.2d 726, 729 (8th Cir. 1986) (quotation marks and citation omitted). Here, the RNC—a not-for-profit corporation (Exh. 1, Declaration of Elise Dickens, ¶ 3)—played the Song at the Convention, a political rally at which it promoted its presidential candidate. The RNC thus did not use the song for a commercial purpose, such as the sale of goods or services. *See Keep Thomson Governor Comm.*, 457 F. Supp. at 961; *accord Peterman*, 369 F. Supp. 3d at 1062. The presumption does not apply, *id.*, and Plaintiffs must "demonstrate[ ]" the "likelihood of future harm." *National Football League*, 792 F.2d at 729 (quotation marks and citation omitted).

*Finally*, as already discussed, Plaintiffs have not shown that they are likely to succeed on the merits of their copyright infringement claims against the RNC. Without a valid claim of copyright infringement, there is no basis to presume

irreparable injury.

### B.   Plaintiffs present no evidence of imminent irreparable harm.

Without the presumption, Plaintiffs must carry their burden of showing that the RNC's alleged infringement threatens "imminent irreparable harm"—irreparable harm that will occur "before [the case] can be resolved on the merits." *Wreal*, 840 F.3d at 1248.

Plaintiffs have not even tried to carry that burden.  Plaintiffs have identified only a single instance of alleged infringement by the RNC: a noncommercial performance of the Song at the Convention.  Doc. 6, Amended Complaint, ¶ 61. That use was licensed, and given the Withdrawal Notice, RNC will not use the Song in its future events.  Exh. 1, Declaration of Elise Dickens, ¶ 9-10.  While Plaintiffs have pointed to a third party's online video of the brief performance of the Song during the Convention (Doc. 6, Amended Complaint, ¶ 61), Plaintiffs have offered no evidence or even explanation that the continued availability of a video of that single noncommercial use of the Song during the pendency of this lawsuit will somehow irreparably harm them—a fact only underscored by Plaintiffs' failure to prove an ownership interest in the mark.  *See Wreal*, 840 F.3d at 1248.

Plaintiffs, in short, have not shown irreparable injury.  In fact, their own actions confirm that they face no threat of irreparable injury.  As noted, Plaintiffs delayed for four years before filing this lawsuit seeking injunctive relief.  That four-

year delay "militates against" and "necessarily undermines" a finding of irreparable harm, because a plaintiff that actually faced irreparable harm would not have delayed in seeking relief. *Wreal*, 840 F.3d at 1248-49; *see, e.g.*, *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) (vacating preliminary injunction for lack of irreparable harm, where plaintiff delayed in filing suit for ten weeks after learning of defendant's planned conduct and nine months after that plan was publicly revealed). Plaintiffs' delay highlights the obvious: Plaintiffs have not shown irreparable harm.

## III. PLAINTIFFS' REQUESTED INJUNCTION WOULD INEQUITABLY HARM DEFENDANTS AND DISSERVE THE PUBLIC INTEREST.

At least two additional, closely related but independently sufficient reasons exist for refusing Plaintiffs' proposed preliminary injunction, through which Plaintiffs seek to force the RNC and other Defendants to pull down videos of campaign events—including, presumably, the Convention—during which the Song was played or performed. *See* Doc. 6, Amended Complaint, Prayer for Relief ¶¶ 5-6; Doc. 6-2, Amended Brief at 3, 6 (arguing that "infringing videos" should be "removed"). *First*, Plaintiffs have not shown and cannot show that they are threatened with an injury that "outweighs" the damage that the proposed injunction would inflict on the RNC—that is, interference with the RNC's ability to communicate with its supporters and the general public during the run-up to a presidential election. *Eknes-Tucker*, 80 F.4th at 1219. *Second*, and for similar

reasons, Plaintiffs have not shown and cannot show that an injunction would not be adverse to the public interest.  *Id*.

**A.    Plaintiffs' requested injunction threatens the RNC with injuries that vastly outweigh any injury Plaintiffs would suffer in the absence of a preliminary injunction.**

As already discussed, Plaintiffs have failed to show that, without a preliminary injunction, they would suffer between now and the conclusion of this litigation an injury that could not be remedied by monetary relief—assuming (among other things) that they ultimately prove ownership of the copyright and a viable claim of infringement.  In contrast, the RNC would suffer grave—indeed, irreparable—injury if this Court were to grant Plaintiffs' requested preliminary injunction.

Context matters.  Plaintiffs seek to force the RNC to pull down videos of its Convention—a key event for rallying the RNC's supporters and "set[ing] forth" for the general public "the aims and political objectives of the" RNC.  *Ripon Soc., Inc. v. National Republican Party*, 525 .2d 567, 592 (D.C. Cir. 1975) (MacKinnon, J., concurring);  "political convention," *Brittanica* ("In practice, [political conventions] … act as rallies for the election campaigns that follow."), *available at* https://tinyurl.com/59xkftd3.  Plaintiffs' requested preliminary injunction would thus interfere with the RNC's ability to make its "core political speech" available to the voting public—speech for which "the importance of First Amendment protections is at its zenith."  *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988)

(quotation marks omitted).   That "loss of First Amendment freedoms" would "unquestionably constitute[ ] irreparable injury" to the RNC.   *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion).

Moreover, that irreparable harm is exacerbated by the fact that Plaintiffs' proposed injunction would restrict the RNC's political speech during the crucial leadup to the 2024 presidential election—when the RNC most needs to reach the public with its message.   *See Elrod*, 427 U.S. at 374 n.29 (plurality opinion) ("The timeliness of political speech is particularly important.").   Plaintiffs have only themselves to blame for this timing:   Had Plaintiffs not waited four years, until the final months of a presidential election, before seeking to enjoin use of the Song in support of President Trump's candidacy, the Song would not have been played at the RNC's Convention and thus would not have been included in the videos of that event, which Plaintiffs apparently now seek to make unavailable to the public. Laches therefore should bar Plaintiffs' request for injunctive relief.   *See United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005) (listing elements of laches, including (1) delay in asserting rights, (2) lack of excuse for the delay, and (3) prejudice to the opposing party).   But with or without laches, the bottom line remains that Plaintiffs' proposed injunction would irreparably harm the RNC by interfering with its political speech in the final days of a presidential election.   *Cf. Citibank*, 756 F.2d at 276 (holding that delay can preclude injunctive relief even if

it does not trigger the doctrine of laches).  That harm easily outweighs whatever (unproven) harm Plaintiffs might suffer in the absence of a preliminary injunction.

**B.    The requested injunction would harm the public interest.**

"[F]ree political speech" is in the public interest.  *Shrink Missouri Gov't PAC v. Adams*, 151 F.3d 763, 765 (8th Cir. 1998); *see Nader 2000 Primary Committee, Inc. v. Hechler*, 112 F. Supp. 2d 575, 580 (2000) ("Public interest always comes down on the side of protecting core political speech."); *Fla. Committee for Liability Reform v. McMillan*, 682 F. Supp. 1536, 1543 (1988) ("All citizens have an interest in robust debate on public issues.").  That is true not only for the sake of speakers, but also because the public has an interest in being able to receive the speakers' messages.  *See, e.g.*, *Buehrle v. City of Key West*, 813 F.3d 973, 977 (11th Cir. 2015) ("The right of freedom of speech and press includes not only the right to utter or print, but the right to distribute, the right to receive, the right to read." (quotation marks and citation omitted)); *Chappel v. Montgomery Cnty. Fire Protection Distr. No. 1*, 131 F.3d 564, 574 (6th Cir. 1997).  The public interest in political speech is obviously heightened during a presidential election.  *See Elrod*, 427 U.S. at 374 n.29 (plurality opinion).

Plaintiffs' requested preliminary injunction would damage these public interests by making videos of the Convention unavailable to the public during the final days of the presidential election.  *See Keep Thomson Governor Comm.* 457 F.

Supp. at 960 (refusing injunction that would interfere with political campaign). While Plaintiffs suggest that denial of a preliminary injunction will result in continued infringement of the copyright to the Song during the pendency of this litigation (Doc. 6-2, Amended Brief at 7), Plaintiffs could have easily avoided that risk had they not waited until the eve of an election—and after the Convention—to file this lawsuit. Plaintiffs' delay in asserting their claimed rights cannot justify a preliminary injunction that would harm the paramount public interest in the free availability of political speech during the home stretch of a presidential election. For this reason, too, the Court should deny Plaintiffs' motion for a preliminary injunction.

## <u>CONCLUSION</u>

For these reasons, the Court should deny Plaintiffs' Motion for an Emergency Preliminary Injunction (Doc. 6-1).

Date: August 30, 2024

Respectfully submitted,

/s/ *Brian C. Lea*

BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
Telephone: (404) 581-8528
Facsimile: (404) 581-8330
E-mail: blea@jonesday.com

ANNA E. RAIMER
(*pro hac vice forthcoming*)

JONES DAY
717 Texas Street, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3786
Facsimile: (832) 239-3600
E-mail: aeraimer@jonesday.com

JOHN G. FROEMMING
(*pro hac vice forthcoming*)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20007
Telephone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jfroemming@jonesday.com

*Counsel for Defendant Republican National Committee*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), counsel hereby certifies that this document has been prepared using Times New Roman 14 point font, as approved  by Local Rule 5.1(C).

*/s/ Brian C. Lea*
Brian C. Lea

*Attorney for Defendant Republican*
*National Committee*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 30, 2024, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court via CM/ECF.

/s/ *Brian C. Lea*
Brian C. Lea

*Attorney for Defendant Republican*
*National Committee*