DocuSign Envelope ID: BBD58AAC-6CDD-405A-A47B-A23C8C27D8FC



# Music License for Political Entities or Organizations

## 1. DEFINITIONS

(a) **"LICENSEE"** shall mean the entity or organization described on Page 4 herein which sponsors political Events.

(b) **"Event"** shall mean a convention that includes an assemblage of delegates, representatives and/or members of an organization(s) convened for a common purpose, a meeting which includes individuals assembled together for purposes of communicating information to each other (i.e. panels, seminars, symposiums, convocations, conferences, caucuses, forums, assemblies, congresses, and institutes) or otherwise transacting the business of LICENSEE. An Event shall not last for more than fourteen (14) consecutive days. An Event may include a concert which is sponsored, conducted, endorsed or approved by LICENSEE, unless the concert is open to members of the general public who are not affiliated with the LICENSEE.

(c) **"Function"** shall include any activity conducted, sponsored, endorsed or approved by LICENSEE occurring in connection with an Event, including, but not limited to, meals, plenary sessions, breakouts, meetings, receptions, concerts, cocktail parties, dinners, dances, dinner-dances, seminars, or any other similar spectator or participatory activity.

(d) **"Attendees"** shall mean the number of persons present where any live, recorded or audio-visual music is performed or played at each of LICENSEE's Events or Functions whether or not any admission charge, registration fee or other payment is required to be made in connection with the attendance. Attendee shall not include those required to produce the Event or Function, such as LICENSEE's employees working at the Event or Function, exhibitor personnel, administrative, service contractor and temporary personnel, or credentialed members of the press. In the case of a political campaign or convention where live or recorded music is performed on the exhibit floor, the number of Attendees shall be the total number of persons registered at the political campaign / convention. If no music is performed on the exhibit floor, the number of Attendees shall mean the total attendance at each Event or Function held during the political campaign or convention at which music is performed. In the case of a meeting which does not have an exhibit floor and consists only of a series of Events or Functions, the number of Attendees shall be the total attendance at each Event or Function at which music is performed, with the number not to exceed the total registered attendance of the entire meeting.

## 2. BMI GRANT

(a) BMI hereby grants to LICENSEE a non-exclusive license to perform, present or cause the live and/or recorded performance during Events or Functions, or by means of internet or intranet transmissions from LICENSEE's website, of all musical works of which BMI shall have the right to grant public performance licenses during the Term hereof. Notwithstanding the foregoing, one or more work(s) or catalog(s) of works by one or more BMI songwriter(s) may be excluded from this license if notice is received by BMI that such BMI songwriter(s) objects to the use of their copyrighted work(s) for the intended uses by LICENSEE. BMI shall provide written notice to LICENSEE of any such exclusion. Any performance by LICENSEE of any excluded work(s) or catalog(s) of works at any Event or Function following receipt of such notice shall not be covered by the grant under, and shall be deemed a material breach of, this Agreement, even if the venue or establishment at which the Event or Function takes place is separately licensed to publicly perform the work(s) or catalog(s) of works. LICENSEE shall not rely on, or use as a defense, any such separate license in any legal action or claim arising out of any performance of such excluded work(s).

(b) This license does not include: (i) dramatic rights, the right to perform dramatico-musical works in whole or in substantial part, the right to present individual works in a dramatic setting or the right to use the music licensed hereunder in any other context which may constitute an exercise of the "grand rights" therein; or (ii) the right to broadcast, telecast or otherwise transmit, other than via the internet or intranet, the performances licensed hereunder to persons outside of any premises at which an Event or Function occurs.

(c) This license grants permission for the public performance of musical works in the BMI repertoire. LICENSEE may be responsible for securing other rights including, but not limited to, synchronization, master use and mechanical rights, particularly if a specific musical work is used frequently or in a manner by which it becomes associated with the campaign (i.e. theme song).

## 3. CUSTOMER OUTREACH

LICENSEE agrees to accept from time to time pre-recorded telephone messages from BMI that may contain information regarding LICENSEE's account.

## 4. FEES

LICENSEE agrees to pay BMI for each Contract Year of the Agreement a license fee based upon LICENSEE's actual total number of Attendees for that calendar year as set forth on the report required pursuant to Paragraph 5 as follows:

| Calendar Year | Per Attendee Rate |
|---|---|
| 2022 | $.06 |

(a) For each year after 2022, the per Attendee rate shall be an adjustment of the rate for the previous calendar year based upon the percentage increase in the United States Consumer Price Index (National, All Items) ("CPI") between September of the year which is two years before such year and September of the preceding year, rounded to the nearest penny (for example, the rate for the year 2023 shall be an adjustment of the rate for the year 2022, based upon the percentage increase in the CPI between September 2021 and September 2022).  BMI shall inform LICENSEE of the annual per Attendee rate for the upcoming Contract Year by the end of the prior Contract Year.

(b) The Minimum Annual Fee billed and payable for 2022 shall be $170.00. The Minimum Annual Fee for each year after 2022 shall be an adjustment of the Minimum Annual Fee for the previous calendar year based upon the percentage increase in the CPI between September of the year which is two years before such year and September of the preceding year, rounded to the nearest dollar.

5. **REPORTING OF EVENTS**

(a) Upon signing this Agreement, LICENSEE shall pay the Minimum Annual Fee.  For each subsequent Contract Year, LICENSEE shall pay the Minimum Annual Fee for that Contract Year by January 20th.  LICENSEE shall also submit quarterly reports and payments for Events or Functions which were presented during the current calendar quarter. For each quarterly period, reports and payments shall be due on the twentieth (20th) day of January, April, July and October of each year of this Agreement for all Events or Functions presented by LICENSEE during the prior calendar quarter. Should LICENSEE fail to report and submit payments to BMI within thirty (30) days after the specified date, then BMI will apply estimated billings to the account based on either LICENSEE's prior year's corresponding quarter figures, or reports from a reliable, published, third-party industry source, whichever is higher.  BMI shall give written notice to LICENSEE of the estimated fee calculated.  LICENSEE shall have thirty (30) days after such written notice by BMI to submit the report.  If BMI does not receive the report from LICENSEE within those thirty (30) days, BMI and LICENSEE agree that BMI's Estimated License Fee shall then be established as the Actual License Fee for the period unreported by LICENSEE.  BMI and LICENSEE further agree that such established Actual License Fee (subject to adjustment by audit) shall also become the Estimated License Fee for the following contract period.  LICENSEE agrees to waive its right to file its report for any period in which BMI's Estimated License Fee becomes the Actual License Fee. Any differences between the estimated and the actual reported fee shall be payable by LICENSEE when the report is submitted.  If BMI's estimated fee is greater than the actual reported fee, then LICENSEE's account shall be credited with the difference, provided however that LICENSEE's Annual License Fee shall not fall below the Minimum Annual Fee.

(b) Upon payment of license fees to BMI, LICENSEE shall furnish to BMI a statement, on forms available from BMI, signed by an officer or auditor of LICENSEE, setting forth all performances of *all* Events or Functions occurring during the applicable calendar quarter. Such statement shall include the location of each Event or Function, the number of Attendees for each Event or Function, and the dates of each Event or Function. A statement shall be furnished to BMI by LICENSEE for each calendar quarter during the Term of the Agreement, regardless of whether or not any performances occurred during that calendar quarter.

6. **STATE OR LOCAL TAX**

In the event that the payment of any license fee to BMI by LICENSEE pursuant to this Agreement causes BMI to become liable to pay any state or local tax which is based upon the license fees received by BMI from LICENSEE, LICENSEE agrees to pay to BMI the full amount of such tax together with license fee payment(s) as invoiced by BMI; provided, however, that BMI shall make reasonable efforts to be exempted or excused from paying such tax, and BMI is permitted by law to pass through such tax to LICENSEE.

7. **LATE PAYMENT CHARGE**

BMI may impose a late payment charge of one and one half percent (1½%) per month from the date any payment or report was due on any payment that is received by BMI more than thirty (30) days after the due date.

8. **VERIFICATION OF / FAILURE TO REPORT**

(a) BMI is entitled to verify the information submitted by LICENSEE in its report under Paragraph 5, by any source, including the examination of LICENSEE's books and records.  As such, LICENSEE is required to retain such books and records for a period of not less than three (3) years after the calendar year contained in LICENSEE's report, copies of which books and records shall be turned over to BMI upon its request.  If after such examination, BMI is still unable to verify said information, BMI shall be entitled to unilaterally assess LICENSEE a reasonable annual fee using any source.

(b) In the event LICENSEE fails to submit a report as required under Paragraph 5 within thirty (30) days after BMI has given LICENSEE written notice of its failure to do so, BMI shall be entitled to unilaterally assess LICENSEE a reasonable annual fee using any source, including an examination of LICENSEE's books and records as set forth above.

9. **OKLAHOMA RATE CHANGE NOTICE**

BMI shall notify LICENSEE of any rate change thirty (30) days prior to the expiration date of this Agreement.

## 10. COLORADO 3 BUSINESS DAY REVIEW
LICENSEE shall have the right to rescind the Agreement for a period of three (3) business days after the execution of the Agreement.

## 11. OFFER OF COMPARABLE AGREEMENT
In the event that BMI, at any time during the Term of this Agreement, shall, for the same class and category as LICENSEE, issue licenses granting rights similar to those in this Agreement on a more favorable basis, BMI shall, for the balance of the Term, offer LICENSEE a comparable agreement.

## 12. CANCELLATION OF ENTIRE CATEGORY
BMI shall have the right to cancel this Agreement along with the simultaneous cancellation of the agreements of all other licensees of the same class and category as LICENSEE, as of the end of any month during the Term, upon sixty (60) days advance written notice.

## 13. WITHDRAWAL OF WORKS
BMI reserves the right at its discretion to withdraw from the license granted hereunder any musical work as to which any legal action has been instituted or a claim made that BMI does not have the right to license the performing rights in such work or that such work infringes another composition.

## 14. INDEMNITY BY BMI
BMI agrees to indemnify, save harmless and defend LICENSEE, its officers and employees, from and against any and all claims, demands or suits that may be made or brought against them or any of them with respect to the performance of any musical works licensed under this Agreement. Such indemnity shall be limited to musical works which are licensed by BMI at the time of LICENSEE's performances. BMI will, upon reasonable written request, advise LICENSEE whether particular musical works are available for performance as part of BMI's repertoire. LICENSEE shall provide the title and the writer/composer of each musical composition requested to be identified. LICENSEE agrees to give BMI immediate notice of any such claim, demand or suit, to deliver to BMI any papers pertaining thereto, and to cooperate with BMI with respect thereto, and BMI shall have full charge of the defense of any such claim, demand or suit.

## 15. BREACH OR DEFAULT/WAIVER
Upon any breach or default of the terms and conditions of this Agreement, BMI shall have the right to cancel this Agreement, but any such cancellation shall only become effective if such breach or default continues for thirty (30) days after the date of BMI's written notice to LICENSEE thereof. The right to cancel shall be in addition to any and all other remedies which BMI may have. No waiver by BMI of full performance of this Agreement by LICENSEE in any one or more instances shall be a waiver of the right to require full and complete performance of this Agreement thereafter or of the right to cancel this Agreement in accordance with the terms of this Paragraph.

## 16. ARBITRATION
All disputes of any kind, nature or description arising in connection with the terms and conditions of this Agreement shall be submitted to the American Arbitration Association in the City, County and State of New York for arbitration under its then prevailing arbitration rules. The arbitrator(s) to be selected as follows: Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and judgment may be, but need not be, entered in any court having jurisdiction. Such award shall include the fixing of the costs, expenses and attorneys' fees of arbitration, which shall be borne by the unsuccessful party.

## 17. NOTICES
Unless otherwise stated herein, all notices, if any, under this Agreement shall be in writing and deemed given upon "mailing," when sent by ordinary first-class U.S. mail to the party intended, at its mailing address herein stated, or any other address which either party may designate. Any such notices sent to BMI shall be to the attention of the Vice President, Licensing Department at 10 Music Square East, Nashville, TN 37203. Any notice sent to LICENSEE shall be to the attention of the person signing this Agreement on behalf of LICENSEE or such other person as LICENSEE may designate to BMI in writing.

## 18. MISCELLANEOUS
This Agreement constitutes the entire understanding between the parties, shall not be binding until signed by both parties, and cannot be waived or added to or modified orally, and no waiver, addition or modification shall be valid unless in writing and signed by the parties. The rights of LICENSEE are not assignable. This Agreement, its validity, construction and effect, shall be governed by the laws of the State of New York. The fact that any provisions contained herein are found by a court of competent jurisdiction to be void or unenforceable shall not affect the validity or enforceability of any other provisions. All headings in this Agreement are for the purpose of convenience and shall not be considered to be part of this Agreement.

DocuSign Envelope ID: B8D58AAC-6CDD-405A-A47B-A23C8C27D8FC

### 19. TERM OF AGREEMENT

The initial Term of this annual Agreement shall begin on the first day of (month/year) __11/2022__ and end on the last day of December __2023__, and shall continue on a year-to-year basis thereafter for a period not to exceed four (4) years unless cancelled earlier by either party as of the end of the initial Term or any subsequent one (1) year Term (herein sometimes referred to as a "Contract Year") upon thirty (30) days advance notice to the other party. Notwithstanding the foregoing, in the event that LICENSEE is obtaining this license for political Events and Functions during a political campaign (e.g., candidate for specific government office), or during a term of office, this Agreement shall automatically expire upon expiration, termination or dissolution of such political campaign or term.

## AGREEMENT

November 30, 2022

THIS AGREEMENT, made at New York, N.Y. on (Date Will Be Entered by BMI Upon Execution) November 23, 2022 | 4:09 P between BROADCAST MUSIC, INC. (hereinafter called BMI), a state of New York corporation with its principal offices at 7 World Trade Center, 250 Greenwich Street, New York, N.Y. 10007-0030 and the entity described below and referred to thereafter as "LICENSEE" or "You."

**LEGAL NAME:** Donald J. Trump for President 2024, Inc.
(Name of Individual, Corporation, LLC, LLP, Partnership, or Government Entity, etc.)

**TRADE NAME:**
(Doing business under the name of)

**PLEASE COMPLETE LEGAL INFORMATION BELOW**

Legal Structure: __527 Political Organization__
(Individual, Corporation, LLC, LLP, Partnership, Government Entity or Other)

State of Incorporation: __DE__   Federal Tax ID No.: __92-1042779__

Partners' Names (if Partnership):
1.
2.
3.

**IF LEGAL STRUCTURE IS A GOVERNMENT ENTITY, PLEASE INDICATE BELOW**

Local, State, or Federal:
Municipality Name:
(City/State)

**BUSINESS ADDRESS**
(Street Address) P.O. Box 13570
(City) Arlington   (State) VA   (Zip) 22219
(Phone) 202.341.9950   (Phone 2)
(Contact Name)   (Title)
(Email Address) sgast@compasslegal.org   (Web Address)

**MAILING ADDRESS**
(If different from Licensed Premises)
(Street Address)
(City)   (State)   (Zip)
(Contact Name)   (Title)
(Contact Phone)   (Contact Phone 2)
(Email Address – if different from above)

**TO BE COMPLETED BY LICENSEE**
By signing this Agreement, you represent that you have the authority to bind LICENSEE and that you have read, understood and agree to all of the terms and conditions herein.

Signature: /s/ Bradley Crate
Bradley Crate, Treasurer
Print Name / Title
bcrate@redcurve.net
Signatory Email Address (if different from above)

Please Sign & Return this **Entire** License Agreement & Payment to:
BMI, Licensing Dept
10 Music Square E., Nashville, TN 37203
Or Online at www.bmi.com/licensing

**FOR ADMINISTRATIVE USE ONLY**
**TO BE COMPLETED BY BMI**
**BROADCAST MUSIC INC.**

Signature: /s/ David Levin
David Levin
Senior Vice President, Licensing

| FOR BMI USE ONLY | POL1 | LI-2021/DEC |

**81142912**
Customer Number

Page 4 of 4