**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **ISAAC HAYES ENTERPRISES, LLC,**<br>**THE ESTATE OF ISAAC HAYES**<br><br><br>Plaintiffs,<br><br>v.<br><br>**DONALD JOHN TRUMP** individually,<br>**DONALD J. TRUMP FOR PRESIDENT,**<br>**2024, INC., REPUBLICAN NATIONAL**<br>**COMMITTEE, TURNING POINT USA,**<br>**INC., NATIONAL RIFLE ASSOCIATION**<br>**OF AMERICA, AMERICAN**<br>**CONSERVATIVE UNION,**<br>**BTC INC,**<br><br>Defendants. | **JURY TRIAL**<br>**DEMANDED**<br>**CASE NO:**<br>**1:24-cv-03639-TWT** |

# <u>PLAINTIFFS' REPLY BRIEF TO DEFENDANTS DONALD J. TRUMP and DONALD J. TRUMP FOR PRESIDENT 2024, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN EMERGENCY HEARING AND PRELIMINARY INJUNCTION</u>

1

# **TABLE OF CONTENTS**

TABLE OF CONTENTS                                                                 2

LIST OF EXHIBITS                                                                  2

INTRODUCTION                                                                      3

FACTUAL BACKGROUND                                                                5

ARGUMENT                                                                          8

   I. PLAINTIFFS' HAVE ADEQUATELY PROVED A LIKELIHOOD OF
     SUCCESS ON THE MERITS.                                      9

     A. DEFENDANTS HAVE IGNORED THE DIRECT EVIDENCE OF PLAINTIFFS'
     OWNERSHIP INTEREST IN THE COPYRIGHTED WORK.                 9

     B. DEFENDANTS PUBLICLY PERFORMED THE COPYRIGHTED WORK AFTER RECEIPT
     AND ACKNOWLEDGEMENT OF A LETTER TERMINATING THEIR LICENSE.   14

     C. FAIR USE WAS NOT DESIGNED TO PROTECT INFRINGEMENT.       15

     D. THE DECLARATION OF MR. MOORE DESCRIBES THE EXACT HARM THAT
     PLAINTIFF'S LANHAM ACT CLAIM IS INTENDED TO ADDRESS.        17

   II. THE IRREPARABLE HARM OF PLAINTIFFS' IS GREATER.             18

   III. DEFENDANTS WILL NOT BE DISPROPORTIONATELY HARMED BY
     AN INJUNCTION.                                              18

   IV. THE PUBLIC INTEREST IS IN FAVOR OF PROTECTING THE RIGHTS
     OF THE PLAINTIFFS.                                          19

CONCLUSION                                                                       21

CERTIFICATE OF COMPLIANCE                                                        22

CERTIFICATE OF SERVICE                                                           23

# **LIST OF EXHIBITS**

EXHIBIT A………**ORIGINAL REGISTRATION OF COPYRIGHTED WORK**

EXHIBIT B………**COPYRIGHT ASSIGNMENT TO PLAINTIFF**

EXHIBIT C ……. **AFFIDAVIT PAMELA WILLIAMS & DOCS (ECF Dkt30)**

EXHIBIT D………**LIST OF POST-TERMINATION INFRINGEMENTS**

EXHIBIT E………**DECLARATION OF ISAAC HAYES III (ECF Dkt29)**

EXHIBIT F………**AFFIDAVIT OF LIZ GARNER**

EXHIBIT G………**PRIMARY WAVE LET. FROM A. ORTNER (ECF Dkt31)**

EXHIBIT H………**SEN. JOHN MCCAIN CASE & ARTICLE**

EXHIBIT I……….**UNIVERSAL PUBLISHING MUSIC GROUP**

**<u>INTRODUCTION</u>**

Now, Comes Plaintiffs the Estate of Isaac Hayes and Hayes Enterprises, LLC (sometimes called "Plaintiffs" hereinafter) and rejects countless fabrications and misleading information in the brief, opposition and response answer filed by the Defendants Donald J. Trump and Donald J. Trump for President 2024, Inc. (hereinafter "Trump"). For purposes of this opposition to Defendants' brief, Plaintiffs adopt the facts and arguments set forth in its Amended Complaint. (ECF Dkt. 28) with regards to this matter and the iconic nature of the Grammy Award winning artist and songwriter Mr. Isaac Hayes, Jr. ("Hayes"), who passed in 2008.

Plaintiff rejects and dismisses any claims by the Trump campaign that extraordinary relief is not necessary and Plaintiffs, as discussed below, do meet the requirements for a preliminary injunction to be granted. It is clear from the facts that Defendants collectively, with the exception of one, cannot produce licenses or any agreement for the copyright violations mentioned in Plaintiffs' Amended Complaint. Thus, Plaintiffs are likely to succeed on the merits of the underlying claims because of Defendants' own admission and clear and convincing evidence. The Trump Defendants license was terminated ninety (90) days ago and they, along with co-defendants, continued to use the copyrighted

work nearly thirty (30) times thereafter without permission.

Plaintiffs will also be able to show the Court that the song was not always "duly licensed" as the Defendants contend. Only the Defendant RNC has shown an actual license for all of its uses, which was solely the Republican National Convention. Every other Defendant has not been able to produce a valid license for the countless uses cited in the Amended Complaint.

Lastly, it is important to note that this issue of using music illegally has been well settled and that it violates copyright laws. Former great Senator John McCain, a true Republican and decent man, actually apologized to Jackson Browne after being sued for using Browne's song at a rally. (See **The Hollywood Reporter,** July 21, 2009 attached hereto as Exhibit H).

In that case, the Court determined that the RNC could not sufficiently demonstrate that the commercial it ran qualified as an artistic work, warranting the application of the artistic relevance test. (*Browne v. McCain*, 612 F.Supp.2d 1118 (C.D. Cal. 2009)).  Furthermore, the RNC failed to prove that the First Amendment and artistic relevance test barred the Plaintiffs' Lanham Act claim simply because the commercial constitutes noncommercial, political speech. *Id*. Here, the Trump Defendants and others seem to think a rally or commercial is a "political" speech or invokes some false protections. Notably, as Plaintiffs discuss below, Courts have applied the Lanham Act to such speech and have

4

repeatedly refused and rejected the notion that claims like the Plaintiffs claims

are barred by the First Amendment and artistic relevance test purely based on the

noncommercial, political nature of the speech.

Below, Plaintiffs flush out and refute all of the claims of the Trump

Defendants and all of the Defendants. The Plaintiffs also provide supporting

documentation from BMI, Inc. (which issues the blank licenses through its agent

Pamela Williams), copyright administrator Elizabeth Garner, Isaac Hayes, III and

a statement from Primary Wave, the publishing administrator of the Estate,

standing with the Hayes family in filing this suit.  For these reasons, and the

countless exhibits attached hereto to support Plaintiffs' Request for An

Emergency Hearing and Injunction, the Court should grant the relief sought.

## **FACTUAL BACKGROUND**

Plaintiff Hayes Enterprises, LLC ("Hayes Enterprises"), is the current

copyright owner of right, title, and interest in and to the 1966 popular, Sam & Dave

song "Hold On, I'm Coming" (hereinafter "Copyrighted Work"), which was assigned

to Plaintiff with the United States Copyright Office under Document Number

V15024D259. (A copy of the Document recording the Assignment for the

Copyrighted Work from the United States Copyright Office is attached hereto as

Exhibit B). Plaintiff Hayes Enterprises owns two live and one pending mark

registration for the name "Isaac Hayes" at the United States Patent and Trademark Office.

The Copyrighted Work was co-written by Hayes. At the time of its release, the Copyrighted Work peaked at number one on the Billboard Hot R&B singles chart and at number 21 on the Billboard Hot 100. At the time of the Copyrighted Work's release, Hayes and co-writer David Porter were the owners of all right, title, and interest in and to the song, including the copyright therein, which was originally registered on March 3, 1968, with the United States Copyright Office under Registration Number EP0000246262, and renewed under Registration Number RE0000734375 on January 11, 1996. (A copy of the Registration for the Copyrighted Work from the United States Copyright Office is attached hereto as Exhibit A). Hayes passed away in 2008, leaving his copyright interest to his Estate, administered by his family. *See Exhibit B.*

Mr. Trump and the Trump Campaign ("Trump Campaign") have publicly performed the Copyrighted Work at all rallies and public appearances starting in 2020. A cease-and-desist letter was sent that year to the Trump campaign by non-parties Universal Music Group and Warner Chappell Music, who are lawful publishers of Plaintiffs' Copyrighted Work. On a letter dated June 5, 2024, non-party Broadcast Music, Inc (BMI), terminated the Defendants' license in a letter. A copy of

the letter is attached along with the Pamela Williams Affidavit. (hereto as Exhibit C (ECF Dkt. #30)).

In that letter, BMI explicitly states that "'Hold On I'm Coming' is excluded from the [Campaign License] effective immediately . . . [and] BMI will consider any performance of the Work by the Donald J. Trump for President 2024 campaign from this date forward to be unlicensed and a material breach of the [Campaign License]". *(See Exhibit C (ECF Dkt. #30)).* Further, the letter was emailed to Justin Caporale ("Caporale"), who according to his own declaration under penalty of perjury, stated that he is responsible for Defendant's use of the Copyrighted Work. (Decl. of Justin Caporale ¶ 2.)

The June 5 letter was sent by Attorney Pamela Williams, who is Vice President of Legal & Business Affairs and the Corporate Secretary at BMI. *(See Exhibit C (ECF Dkt. #30)).* In an affidavit, Attorney Williams states that she sent the letter to Caporale notifying the Defendants that their license was revoked and Caporale acknowledged receipt and responded by adding more Trump lawyers. (*See Exhibit C (ECF Dct. #30)*, *Affidavit of P. Williams, including the conversation with Capoale as Trump's representative*).

Despite this termination letter, Mr. Trump and the Trump Campaign have still unlawfully used the Copyrighted Work in violation of several provisions of Title 17

U.S.C., including § 501, of the Copyright Act of 1976, as amended, since June 6, 2024, nearly three months ago.

For example, Trump Campaign events documenting the infringements are still available on social media and video sharing sites, including but not limited to: YouTube, Rumble, Facebook, and Instagram. Collectively, the Defendants have over 100 million followers on social media. Millions of folks have viewed and/or downloaded the song, which is also infringement.

At the time of the Amended Complaint, Defendants' most recent unlawful public performance was on August 9, 2024, at a Trump Campaign rally in Bozeman, Montana. Since that filing, Defendants have publicly performed the work without a license a known seventeen times; most recently in Atlanta, Georgia on Saturday, August 3, 2024. A document outlining Defendant Trump's post-license infringements are attached hereto as Exhibit D. If the Court does not grant the relief sought, the Plaintiffs will continue to suffer irreparable injury, financial loss, intellectual property loss and a litany of damages before final disposition of this action due to the Defendants' constant violation of the Plaintiffs' Copyright and goodwill. Thus, Plaintiffs offer the argument below and meet the prongs of securing injunctive relief from this Court.

## ARGUMENT

A preliminary injunction is granted in a copyright infringement case when the movant establishes: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002).

### I.   PLAINTIFFS HAVE ADEQUATELY PROVED A LIKELIHOOD OF SUCCESS ON THE MERITS.

To establish a prima facie case of copyright infringement, plaintiffs must show (1) the plaintiffs' ownership of or exclusive license for a valid copyright and (2) that Defendants copied protected elements of that work. *Strike 3 Holdings, LLC v. Doe*, Civil Action No. 1:23-cv-02096-SDG, 2023 U.S. Dist. LEXIS 109354, at *4-5 (N.D. Ga. June 26, 2023) *citing Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008).  Here, as discussed below, Plaintiffs clearly meet the two-prong test as stated herein and with the various exhibits attached. *(See Exhibits B,C, E, and F)*. The referenced affidavits from various representatives of both the Plaintiffs and BMI state that the Defendants' license was revoked on June 6, 2024.

**A. DEFENDANTS HAVE IGNORED THE DIRECT EVIDENCE OF PLAINTIFFS' OWNERSHIP INTEREST IN THE COPYRIGHTED WORK.**

Defendants' entire argument is predicated on their assertion that Plaintiffs do not have a valid interest in the Copyrighted Work. *See generally* (ECF Dkt. #28) Defendants' claim that the Plaintiffs' ownership claim is "conclusory" and "unsupported by the record". *Id at* 3. Plaintiffs reject this notion and falsity and offer ample evidence and testimony, via affidavits attached hereto. *(See Exhibit E (ECF Dkt. #29), the Affidavit of Isaac Hayes, III, Exhibit F, the Affidavit of Liz Garner, as well as the various copyright documents attached hereto*). The Plaintiffs can call witnesses if necessary and instructed by the Court.

Defendants also claim that due to the March 30, 2024 Copyright Assignment from Plaintiff Isaac Hayes Enterprise, LLC to Primary Wave Music IP Fund 3, LP (hereinafter "Primary Wave"); Plaintiffs have no interest upon which to base their claims. *Id at* 6. However, according to Primary Wave themselves, Primary Wave has reverted the right to "prosecute the Claim solely in respect of the Grantor Retained Interest in the Composition." (*See Exhibit H. Primary Wave Letter from A. Ortner)*.

In questioning the Hayes Affidavit, Defendants cite authority that states that there is no requirement "to simply accept the averments in Defendants' Affidavits and Declarations at face value." *(See Exhibit E (ECF Dkt. 28, at p. 6))*.  However, they noted but ignored that this standard is for summary judgment, not the current

10

procedural posture of the present case. *Id citing Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1288 (S.D. Fla. 2005). Therefore, their assertion and dismissal of Mr. Hayes' affidavit is improper.

Due to these considerations, the claim that Plaintiffs have no ownership is incorrect. The second prong of substantial copying is satisfied because Defendants illegally publicly performed the Copyrighted Work fully in stadiums across the United States after the termination of their license effective June 5, 2024 and to this day are still infringing. Thus, Plaintiffs need injunctive relief and a Court order to cease and desist this illegal activity.

1. **Defendants have relied on a falsely written RNC opposition asserting the Plaintiffs' lack of substantial likelihood of success on merits of their claims.**

While it is understood that the Trump Defendants adopt and incorporate the facts and arguments set forth in the submission of Defendant the RNC, it is important to note that the Trump Defendants relied on a falsely written opposition asserting the Plaintiffs lack of substantial likelihood of success on the merits of their claims.

Defendants claim Plaintiffs' allegation of copyright ownership relies on a March 2024 Copyright Assignment Office record from Isaac Hayes Enterprises, LLC to Primary Wave demonstrating a non-continuing ownership interest in the copyright. *See generally* (ECF Dkt. #28). However, this is erroneous as the Copyright Office record clearly states "Copyright Assignment" to "Party 2" which includes among

11

other names both Plaintiffs Isaac Hayes III & Isaac Hayes Enterprises, LLC. (*See Exhibit B)*.

### 2. Defendants falsely rely on the Declaration of Sam Moore.

Copyright ownership "vests initially in the author or authors of the work," 17 U.S.C. § 201(a), and a copyright registration provides prima facie evidence of ownership. *Roberts v. Gordy*, 877 F.3d 1024 (11th Cir. 2017).  Thus, a singer does not have any say on the copyright to a song, despite how much he or she sings it or loves the song. The rights only vests in the actual authors of the work. *(See Roberts)*.

Here, it is established that the Plaintiff is the current owner of right, title, and interest in and to the Copyrighted Work, which was assigned to Plaintiff with the United States Copyright Office. (*See Exhibit B)*. The declaration of Sam Moore's ("Moore") familiarity with the facts and history surrounding a copyrighted song bears little weight on the legal determination of a copyright ownership.

According to Moore, while Hayes and David Porter co-wrote the song, Moore falsely states that the rights to the copyrighted song are now held by Universal Music Group Publishing (UMPG) and Warner Chappell Music Publishing. (See Moore Decl. ¶ 11). Moore fails to address and make light of the recent assignment of the rights to the Plaintiffs. *(*See *Exhibit B)*.

Furthermore, Moore argues that popular music fans do not care about authorship rather associate the music with the artists that perform the work,

completely undermining the criteria needed to have copyright ownership. (See

Moore Decl. ¶ 19). While Moore may possess some knowledge of the copyrighted

song's creation and history, it lacks insufficiency to deny the plaintiff's likelihood of

success on the merits because there isn't ample credible evidence rebutting the

presumption that the Plaintiff is the owner of the copyrighted work. *See, Dellacasa,

LLC v. John Moriarty & Assocs. of Fla., Inc.*, *No. 07-21659-CIV, 2008 WL 299024,

at \*16 (S.D. Fla. Feb. 1, 2008)* (denying injunction in the absence of the Defendant

presenting ample evidence rebutting the presumption that the Plaintiff is the

copyright owner of the registered shop drawings).  And, moreover, Isaac Hayes, III

would be the only party to this action to actually testify to and know the full breadth

of his father's intentions for his music, legacy and any political connections thereof,

if any. It is very insulting to have a third-party, 88-year-old man disrespect the Hayes

family and speak on the thoughts and actions of the late Isaac Hayes, Jr.

### 3.  Defendants misinterpreted and manipulated precedent.

Defendants inaccurately interpret and apply legal precedent in its opposition.

This is very misleading to this Court and an attempt by the Defendants to overlook or

falsely state what has been long standing law.

According to *Eknes-Tucker v. Gov. of Ala.*, 80 F.4th 1205, 1219 (11th Cir.

2023), a district court may grant injunctive relief only if the moving party

demonstrates that: (1) it has a substantial likelihood of success on the merits; 2)

13

irreparable injury will be suffered unless the injunction issues; (3) the threatened

injury to the movant outweighs whatever damage the proposed injunction may cause

the opposing party; and (4) if issued, the injunction would not be adverse to the

public interest." *Eknes-Tucker*, 80 F.4th 1205 at 1219.

Defendants incorrectly cite the fourth element as "(4) that the public interest

favors the issuance of the injunction. Eknes-Tucker, 80 F.4th at 1219."*See* (ECF Dkt.

#28)The Defendants use the verb "favors" while the actual rule in the case law says

"if issued, the injunction would not be adverse to the public interest." Both are

different in which Defendants' opposition expresses a positive benefit to the public

interest, whereas the actual rule in the case law takes a neutral stance and argues that

there will be an absence of harm rather than a public interest.

## B. DEFENDANT'S PUBLICLY PERFORMED THE COPYRIGHTED WORK AFTER RECEIPT AND ACKNOWLEDGEMENT OF A LETTER TERMINATING THEIR LICENSE.

Unauthorized public performances are grounds for both a finding of copyright

infringement, and the granting of a motion for injunctive relief. *Mouse on Tha Track,*

*LLC v. Celcius Nightclub, LLC*, No. 2:24-cv-195-SPC-KCD, 2024 U.S. Dist. LEXIS

95502, at *3 (M.D. Fla. May 29, 2024). In *Mouse*, the defendants continued to

perform copyrighted music at their nightclub after their ASCAP license was

terminated due to non-payment. *Id* at 2. ASCAP identified three unauthorized

performances and filed suit for copyright infringement based on those instances. *Id* at

3. The Court noted that the repeated attempts by ASCAP to warn the defendants about their potential liability was evidence of willful infringement. *Id.*

Like in the *Mouse* case, where a post-termination performance was deemed unauthorized, the Defendants in the present case performed the Copyrighted Work across the country multiple times after they received notice and accepted receipt of a letter that revoked their right to publicly perform the Copyrighted Work. *(See Exhibit C (ECF Dkt. #30)).* This defeats Defendants' claim of a valid license. *(See Exhibit E (ECF Dkt. 28, at pp. 7-8)).*

## C. FAIR USE WAS NOT DESIGNED TO PROTECT INFRINGEMENT

Courts have long held that fair use does not apply to situations such as this instant matter. However, the Defendants, who had no valid license at the time of the infringements, attempt to argue unconvincingly that the use of the song in Campaign videos constitutes fair use. *(See Exhibit E (ECF Dkt. 28, at pg. 8)).* This claim is without merit. The unauthorized use of the song in a high-profile political campaign, particularly one as polarizing as the Defendant' for the presidency, is far from "incidental" use as they claim. *Id.* However, their characterization of the use as "background" music is worth exploring as it is an apt synonym for what is covered by a synchronization license, which the Defendants' license is explicitly not. (*See* (ECF Dkt. 28-2, pg. 2))  We also urge this Court to review the McCain case attached

as Exhibit I dealing with the attempt to mischaracterize use as free and discussed in depth below.

### 1. Defendants' admit to a use that requires synchronization.

According to the BMI license of the Defendants' attached as Exhibit A to the Justin Caporale Declaration, the Defendants "may be responsible for securing other rights including but not limited to, synchronization . . . particularly if a specific musical work is used frequently or in a manner by which it becomes associated with the campaign (i.e. theme song). *Id at ¶ 2(c)*.

BMI's website states that synchronization licenses "pay[] copyright owners when their music is used in combination with visual images such as music in films, TV, videos, computer programs, etc". *See:*[https://www.bmi.com/licensing/entry/business_using_music_bmi_and_performing_rights](https://www.bmi.com/licensing/entry/business_using_music_bmi_and_performing_rights)

The website then further states that BMI does not offer synchronization licenses. If the Defendant's used the Copyrighted Work as "background" music as they claim, then certainly there is at least one example of it due to Defendants' own admission. And, any attempt to extend the former BMI license to cover this use would be moot. Thus, this is infringement as well and an admission by the Defendants who are unaware of how Title 17 U.S.C. treats this use as copyright infringement.

### 2.  The use is not transformative.

Opposing Counsel then suggests that their use was transformative. In the recent fair use landmark case of *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 529 (2023), the Supreme Court stated that "the degree of transformation required to make 'transformative' use of an original must go beyond that required to qualify as a derivative." (Emphasis added).

The Court in *Warhol* stated that derivative work right means that the copyright holder has the right to prepare "any other form in which a work may be recast, transformed, or adapted." *Id* quoting 17 USCS § 106 (2). In this instance, Defendants' use fails to be transformative enough cannot be considered "derivative" work.

The use of the song is clearly designed to evoke specific emotions and associations, directly impacting the market value and perception of the work. The Defendants' assertion that this use is transformative or that it has no effect on the market value of the song is unfounded and should be rejected.

Therefore, despite Defendants' objections, Plaintiffs have a high likelihood of success of the merits of the underlying case due the post-license public performance of Plaintiffs' Copyrighted Work.

**D. The Declaration of Mr. Moore describes the exact harm that
Plaintiff's Lanham Act claim is intended to address.**

To counter the Affidavit of Mr. Hayes, Defendants summon one of the singers

in the original recording embodying the Copyrighted Work, Mr. Sam Moore.

Opposing Counsel submits his belief that "other than specialized music historians

and Isaac Hayes fans" (emphasis added), the nexus between the Copyrighted Work

and Isaac Hayes is minimal. *(See Exhibit E (ECF Dkt. 28, at pp. 4)).*

On this point, we agree with Opposing Counsel and Mr. Moore that

"specialized music historians and Isaac Hayes fans" are likely to associate the

Copyrighted Work with Plaintiffs. It is those consumers that will be misled as to the

endorsement and or association of Defendants by Plaintiffs because of Mr. Trump's

continued unlicensed use of the Copyrighted Work. *See Jackson v. Angela Kogan &*

*Perfection Plastic Surgery, Inc., Civil Action No. 22-22972-Civ-Scola, 2022 U.S.*

*Dist. LEXIS 223577, at \*14 (S.D. Fla. Dec. 12, 2022)* (holding that plaintiffs

evidence of specific photographs defendants used unauthorized and which allegedly

confused viewers about plaintiffs' association with defendant's were dispositive

establishing false endorsement claim). Therefore, the false endorsement claim is

valid, because these sophisticated consumers that are lifelong fans have a high

likelihood to incur a false perception that Plaintiffs endorsed or are associated with

the Defendants. Specifically, the song's lyrics said "Hold On, I'm Coming" as former

president Trump marches to the stage many times indicating his return to campaign

for office.  Clearly, this would appear as a false endorsement by the Estate of Isaac Hayes.

## II.    THE IRREPARABLE HARM OF PLAINTIFFS' IS GREATER.

As we said in our Brief, "In the Northern District of Georgia, it has plainly been held that, 'once a copyright holder has made out a prima facie case of copyright infringement, irreparable injury is presumed.'" *Am. Family Life Ins. Co. v. Assurant, Inc.*, No. 1:05-CV-1462-BBM, 2006 U.S. Dist. LEXIS 8781, at *42 (N.D. Ga. Jan. 11, 2006) *citing Georgia Television Co. v. TV News Clips, Inc*., 718 F. Supp. 939, 948 (N.D. Ga. 1989) (noting that other Circuits agree that irreparable injury is presumed once the copyright holder has proved ownership).

Due to the substantial public evidence of the infringements, and the true and attested ownership of the Copyrighted Work by Plaintiffs as further established by our Amended Complaint and this brief, irreparable harm is presumed. Therefore, this prong is satisfied.

## III.    DEFENDANTS WILL NOT BE DISPROPORTIONATELY HARMED BY AN INJUNCTION

While Courts measure the harm an injunction might have on Defendants' activities, "copyright law . . . dictates that such injury merits little equitable consideration and is insufficient to outweigh the continued wrongful infringement of [Plaintiff's] asserted legal rights." *Am. Family Life Ins. Co. v. Assurant, Inc.*, No.

1:05-CV-1462-BBM, 2006 U.S. Dist. LEXIS 8781, at *56 (N.D. Ga. Jan. 11, 2006) *quoting Ga. TV Co. v. TV News Clips of Atlanta, Inc*., 718 F. Supp. 939 (N.D. Ga. 1989).

Here, the Copyrighted Work in question is an extremely famous and profitable song called "Hold On I'm Coming." The Copyrighted Work is exploited by licensing the song and sound recording for movies, television shows, and covers by other musical artists. Our partners at Universal licenses this song out at hundreds of thousands of dollars. *(See Exhibit I Universal Letter with sample license uses)*.  Most recently Netflix premiered the movie "The Union" featuring Halle Berry and Mark Wahlberg and used the Plaintiffs' song and paid for it properly. *Id.*

Again, the only harm attributable to the Defendants is that they will not be able to continue to infringe on Plaintiffs' rights and ownership of the Copyrighted Work and will have to find other music to publicly perform as defendant Mr. Trump's "exit" song at his rallies or appearances and fundraisers.

Defendants RNC, Turning Point, ACU, NRA, BTC, will all face no real commercial injury once the infringing videos of their events are removed, so the equity analysis still weighs heavily in favor of Plaintiffs. Therefore, this prong is satisfied.

## IV.    THE PUBLIC INTEREST IS IN FAVOR OF PROTECTING THE RIGHTS OF THE PLAINTIFFS.

The Plaintiffs' Copyrighted Work is one of the most iconic and successful songs of the last century. It has been licensed, sampled, and covered by hundreds of parties. The present case for copyright infringement is directly in line with the McCain case. In *Browne v. McCain*, 612 F. Supp. 2d 1125 (C.D. Cal. 2009), the RNC contended that the Plaintiff cannot state a claim under the Lanham Act because the commercial in question is an expressive work, thereby invoking the First Amendment and the artistic relevance test as a defense. However, the Court found otherwise.

In the Ninth Circuit, a Lanham Act claim related to the use of a mark in an artistic work is evaluated using the Rogers artistic relevance test, established by the Second Circuit. This test seeks to balance the First Amendment's protection of artistic expression against the rights provided under trademark law. According to this test, the use of a trademark in an artistic work is not actionable unless (1) it has no artistic relevance to the underlying work or (2) if it has some relevance, it explicitly misleads regarding the source or content of the work.

In that case, the Court determined that the RNC has not sufficiently demonstrated that the commercial qualifies as an artistic work, warranting the

21

application of the artistic relevance test. Furthermore, the RNC failed to prove that the First Amendment and artistic relevance test barred the Plaintiff's Lanham Act claim simply because the commercial constitutes noncommercial, political speech. Courts that have applied the Lanham Act to such speech have implicitly rejected the notion that claims are barred by the First Amendment and artistic relevance test purely based on the noncommercial, political nature of the speech. Therefore, the Court rejects the RNC's argument that the Plaintiffs' Lanham Act claim should be dismissed on these grounds.

Here, the RNC argument that Trump's team used makes the same claims on the use of copyrighted work and under the same legal analysis, said argument should be rejected under the persuasive authority. Former Senator John McCain got it right, settled the case and apologized when a Court told him his campaign's use of a copyrighted work was illegal. Therefore, we feel this Court should see the same conclusion and reject these false claims by the Defendants and team Trump.

## **CONCLUSION**

WHEREFORE, the Plaintiffs respectfully requests that the Court enter a preliminary injunction enjoining all defendants from engaging in the conduct specified above and order the removal of all illegal videos, social media posts, campaign ads and any other unauthorized use.

Respectfully submitted this 1 day of September 2024.

*/s/James L. Walker, Jr.*
James L. Walker Jr.
**J. Walker & Associates, LLC**
Georgia Bar No. 260643
The Walker Building
3421 Main Street Suite A
Atlanta, GA 30337
Telephone: (770) 847-7363
jjwalker@walkerandassoc.com
*Lead Counsel for Plaintiffs*

*/s/Gerald A Griggs*
Gerald A. Griggs
Georgia Bar No. 141643
1479 Brockett Rd Ste 301
Tucker, GA 30084
*Counsel for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using the font type of Times New Roman and a point size of 14.

This 21 day of August, 2024.

*/s/James L. Walker, Jr.*
James L. Walker Jr.
**J. Walker & Associates, LLC**
Georgia Bar No. 260643
The Walker Building
3421 Main Street Suite A
Atlanta, GA 30337
Telephone: (770) 847-7363
jjwalker@walkerandassoc.com
*Lead Counsel for Plaintiffs*

*/s/Gerald A Griggs*
Gerald A. Griggs
Georgia Bar No. 141643
1479 Brockett Rd Ste 301
Tucker, GA 30084
*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 1, 2024, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court via CM/ECF, which shall cause service on all counsel of record.

<u>/s/James L. Walker, Jr.</u>
James L. Walker Jr.
**J. Walker & Associates, LLC**
Georgia Bar No. 260643
The Walker Building
3421 Main Street Suite A
Atlanta, GA 30337
Telephone: (770) 847-7363
jjwalker@walkerandassoc.com
*Lead Counsel for Plaintiffs*

/s/Gerald A Griggs
Gerald A. Griggs
Georgia Bar No. 141643
1479 Brockett Rd Ste 301
Tucker, GA 30084
*Counsel for Plaintiffs*