# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

ISAAC HAYES ENTERPRISES, LLC,

*et al.*,

            *Plaintiffs*,

            *v.*

DONALD JOHN TRUMP, *et al.*,

            *Defendants*.

Case No. 1:24-cv-03639-TWT

## DEFENDANTS DONALD JOHN TRUMP AND DONALD J. TRUMP FOR PRESIDENT 2024, INC. BRIEF IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

### TABLE OF CONTENTS

INTRODUCTION .......................................................................................7

STATEMENT OF FACTS .........................................................................8

LEGAL STANDARD ................................................................................9

LEGAL ARGUMENT ...............................................................................10

  I.  PLAINTIFFS HAVE NOT ALLEGED FACTS WHICH, IF TRUE, WOULD ESTABLISH THEIR OWNERSHIP OF THE COPYRIGHTS IN SUIT. ........................................................ 10

  II.  Plaintiffs have not alleged facts which, if true, would establish that Isaac Hayes III has sufficient ownership rights in the Work to bring this claim. ...................................................... 12

1.  The SAC fails to account for the one-half interest in the author's one-half share of termination rights of the work held by the widow of Isaac Hayes............................................. 13

2.  The SAC fails to account for the shares of the author's one-half share of termination rights of the work held by the ten other children of Isaac Hayes. ............................... 14

3.  The SAC implausibly claims that the copyright termination was effected by Hayes III himself, in contradiction to his own sworn testimony that notice of termination was filed and served by Hayes Enterprises. ......................................... 16

4.  The SAC implausibly claims that Hayes Enterprises acted on behalf of Isaac Hayes' estate and his heirs. ...................................... 17

5.  The SAC implausibly claims that a Notice of Termination was filed with the Copyright Office and served on Warner Chappell Music. ...................................................... 19

III.  PLAINTIFFS HAVE NOT ALLEGED FACTS WHICH, IF TRUE, WOULD ESTABLISH ANY INFRINGING OR TORTIOUS CONDUCT BY DEFENDANT DONALD J. TRUMP. ............................................................... 23

IV.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT. ............................ 25

V.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR UNDER SECTION 43(a) OF THE LANHAM ACT. ............................... 26

VI.  COUNT 3 OF THE SAC, WHICH SEEKS AN "ACCOUNTING," FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED. ............................... 33

# TABLE OF AUTHORITIES

## Cases

*43 N. Broadway LLC v. Essential Media Grp. LLC,*
  No. 17-24518-CV,
  2018 WL 2864014 (S.D. Fla. June 11, 2018) ....................................................20

*Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,*
  29 F.3d 1529 (11th Cir.1994) .............................................................................14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..............................................................................................8

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..............................................................................................8

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.,*
  489 F.3d 1129 (11th Cir. 2007) ..........................................................................19

*Coach, Inc. v. Swap Shop, Inc.,*
  916 F. Supp. 2d 1271 (S.D. Fla. 2012) ..............................................................19

*Donohue v. Reg'l Adjustment Bureau, Inc.,*
  Civil Action No. 12–1460,
  2013 WL 607853 (E.D. Pa. Feb. 19, 2013) .......................................................17

*Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.,*
  40 F.3d 1431 (3d Cir.1994).................................................................................25

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,*
  697 F.2d 27 (2nd Cir.1982) ................................................................................15

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,*
  228 F.3d 56 (2d Cir.2000)...................................................................... 23, 24, 26

*Equal Employment v. STME, LLC,*
  309 F. Supp. 3d 1207 (M.D. Fla. 2018)...............................................................8

*GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.,*
  131 F. Supp. 3d 1291 (M.D. Fla. 2015)..............................................................20

*Great Southern Homes v. Johnson & Thompson,*
    797 F. Supp. 609 (M.D.Tenn.1992) ............................................................. 14, 15

*Henley v. DeVore,*
    733 F. Supp. 2d 1144 (C.D. Cal. 2010) ....................................................... 22, 24

*Hickson Corp. v. N. Crossarm Co.,*
    357 F.3d 1256 (11th Cir. 2004)..........................................................................22

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.,*
    70 F.3d 96 (11th Cir. 1995) ........................................................................ 14, 15

*In re Logan,*
    No. 12-80113-BEM,
    2015 WL 4940041 (Bankr. N.D. Ga. July 1, 2015) ............................................17

*In re Spear & Jackson Securities Litigation,*
    399 F. Supp. 2d 1350 (S.D. Fla. 2005) ..............................................................20

*Johnson v. Pullman, Inc.,*
    845 F.2d 911 (11th Cir. 1988)...........................................................................26

*L.A. Triumph, Inc. v. Ciccone,*
    No. CV 10-06195 SJO JCX,
    2011 WL 5562810 (C.D. Cal. Aug. 31, 2011).....................................................24

*Lil' Joe Recs., Inc. v. Ross,*
    No. 1:21-CV-23727,
    2024 WL 4576445 (S.D. Fla. Sept. 30, 2024).....................................................10

*Merch. One v. TLO,*
    No. 19-23719-BLOOM,
    2020 U.S. Dist. LEXIS 7462 (S.D. Fla. Jan. 16, 2020)......................................18

*Oliveira v. Frito–Lay, Inc.,*
    251 F.3d 56 (2d Cir.2001)......................................................................... 23, 24

*Oppenheimer v. Palange,*
    No. 1:23-CV-20507,
    2023 WL 11916703 (S.D. Fla. Dec. 24, 2023)............................................. 19, 20

*Parks v. LaFace Recs.,*
    329 F.3d 437 (6th Cir. 2003)...................................................................... 21, 22

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ...............................................................17

*Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*,
  533 F.3d 1287 (11th Cir.2008) ..............................................................20

*Playboy Enters., Inc. v. Starware Pub. Corp.*,
  900 F. Supp. 438 (S.D. Fla. 1995) ................................................ 18, 19

*Porter v. Experian Info. Servs., Inc.*,
  No. 121CV00453SDGRGV,
  2021 WL 5068262 (N.D. Ga. Oct. 30, 2021) .....................................17

*Porter v. Experian Info. Servs., LLC*,
  No. 121CV00453SDGRGV,
  2022 WL 887288 (N.D. Ga. Jan. 27, 2022) .......................................17

*Pro. LED Lighting, Ltd. v. AAdyn Tech., LLC*,
  88 F. Supp. 3d 1356 (S.D. Fla. 2015)..................................................15

*Sanchez v. Fed. Bureau of Prisons*,
  493 F. App'x 14 (11th Cir. 2012).........................................................8

*Sinatra v. Goodyear Tire & Rubber Co.*,
  435 F.2d 711 (9th Cir.1970).................................................................24

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ............................................................................25

*SouthState Bank, N.A. v. Qoins Techs., Inc.*,
  720 F. Supp. 3d 1324 (N.D. Ga. 2024)................................................22

*United Drug Co. v. Theodore Rectanus Co.*,
  248 U.S. 90 (1918) ..............................................................................25

*United Feature Syndicate, Inc. v. Sunrise Mold Co., Inc.*,
  569 F. Supp. 1475 (S.D. Fla. 1983) .....................................................20

*Waits v. Frito–Lay, Inc.*,
  978 F.2d 1093 (9th Cir.1992)...............................................................22

*Watkins v. Great S. Wood Preserving, Inc.*,
  No. 4:21-CV-1344-CLM,
  2022 WL 4538833 (N.D. Ala. Sept. 28, 2022) ...................................................17

*Wells Fargo Bank v. Crowley*,
  No. 113CV01427CAPLTW,
  2014 WL 11370437 (N.D. Ga. Feb. 20, 2014) ...................................................26

*White v. Samsung Elecs. Am., Inc.*,
  971 F.2d 1395 (9th Cir.1992)...............................................................................23

**Statutes**

15 U.S.C.A. § 1125(a)........................................................................... 20, 21, 22

17 U.S.C. § 102(a) .............................................................................. 24, 25

17 U.S.C. § 106.........................................................................................25

17 U.S.C. § 204.........................................................................................14

17 U.S.C.A. § 304..........................................................................10, 11, 12, 16

**Other Authorities**

M. Morrison, "Isaac Hayes' Kids Pose With His 'Shaft' Oscar: 'It Was Life-
  Changing for Him,'" *The Hollywood Reporter*, February 24, 2016, ...................12

Trade–Mark Cases, 100 U.S. 82, 94 (1879) ..........................................................25

**Rules**

Fed. R. Civ. P. 12(b)(6) .........................................................................7, 16

**Constitutional Provisions**

U.S. Const. art. I, sect. 8(8)......................................................................25

**Record**

Hayes III Decl. .........................................................................................8

SAC .............................................................................................. passim

## INTRODUCTION

This lawsuit, filed by Isaac Hayes Enterprises, LLC and Isaac Hayes III as the representative of the Estate of Isaac L. Hayes Jr., is against Donald John Trump, Donald J. Trump for President 2024, Inc. (the "Campaign"), Turning Point Action, Inc., and BTC, Inc. for copyright infringement and other related claims. Plaintiffs seek damages arising from Defendants' alleged unauthorized use of a musical composition and trademarks allegedly owned by Plaintiffs, as well as the name and likeness of Isaac Lee Hayes Jr. (SAC ¶¶ 1-2, 8-20). The work at the center of this dispute is "Hold On, I'm Comin'," a rhythm and blues composition co-written by Isaac Hayes—father of Plaintiff Hayes III—and which, after its release in a recording by the soul group Sam & Dave in 1966, achieved great success. The gravamen of the complaint is that Defendants Trump and the Campaign used the work without permission from them at various events and on media platforms since 2020, despite multiple cease-and-desist letters and public statements from Plaintiffs (*Id.* ¶¶ 8-20, 39-42).

Plaintiffs' problem, however, starts—and this lawsuit should end—with the fact that, as demonstrated below, the Second Amended Complaint ("SAC") does not adequately plead facts which, if true, would amount to a prima facie allegation that they even own the rights they claim have been infringed. The record they have submitted, in fact, suggests that they do not, never did, and for all practical purposes

they never could. The factual and legal deficiencies of the SAC are legion, and at this point—well over half a year since Plaintiffs started publicizing their claim and months after they were granted leave to amend their pleadings by filing the SAC—there is no excuse for their failure to close the yawning factual, documentary and legal gaps in their narrative. They have no copyright, much less a copyright claim, whether couched as direct or secondary.  Nor does the SAC provide any reason for this Court to depart from the well-established legal rule that copyright, not the law of trademarks or unfair competition, is the sole remedy for unauthorized use of a musical work. The SAC should be dismissed with prejudice in its entirety.

## STATEMENT OF FACTS

The work in question, "Hold On, I'm Comin'," was co-written by Isaac Hayes and first released in 1966. The copyright was renewed in 1996 and is allegedly managed by Isaac Hayes Enterprises, which purportedly owns 25% of the copyright (*Id*. ¶¶ 2-6). The SAC also alleges that Defendants, particularly Trump and his campaign, used the work without permission at various events and on media platforms since 2020, despite multiple cease-and-desist letters and public statements from Plaintiffs (*Id*. ¶¶ 8-20, 39-42). The SAC seeks relief under the following legal theories;

- Direct Copyright Infringement based on the claim that Defendants publicly performed and published the work without permission (*Id*. ¶¶ 52-59).

- Contributory and/or Vicarious Copyright Infringement: Defendants knew or should have known about the infringement and still enabled it (*Id*. ¶¶ 60-64).

- False Endorsement and Advertising: Unauthorized use of the work likely caused confusion about the affiliation or endorsement by Isaac Hayes (*Id*. ¶¶ 67-71).

- State Right of Publicity: Unauthorized use of Isaac Hayes' name and likeness for commercial purposes (*Id*. ¶¶ 72-76).

Plaintiffs seek statutory and actual damages, attorneys' fees, costs, and an injunction against further unauthorized use of the work. They also claim that the alleged unauthorized use has misled consumers and diminished the commercial value and reputation of Isaac Hayes' trademarks, name, and likeness (*Id*. ¶¶ 34-38).

## LEGAL STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a dismissal, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Sanchez v. Fed. Bureau of Prisons*, 493 F. App'x 14, 15 (11th Cir. 2012) (internal citation omitted). The Court "should not assume that the plaintiff can prove facts that were not alleged." *Equal Employment v. STME, LLC*, 309 F. Supp. 3d 1207, 1211 (M.D. Fla. 2018).

## LEGAL ARGUMENT

### I.    PLAINTIFFS HAVE NOT ALLEGED FACTS WHICH, IF TRUE, WOULD ESTABLISH THEIR OWNERSHIP OF THE COPYRIGHTS IN SUIT.

Plaintiffs' copyright claims rest on the allegation of the Second Amended Complaint ("SAC") that on December 31, 2014, on behalf of Isaac Hayes and his heirs, Hayes Enterprises and Isaac Hayes III terminated the copyright interest of Warner Chappell Music. (SAC ¶ 4). Due to this alleged termination, "as of March 15, 2022, Hayes['s] ownership of 50 percent (%) of the composition, in and to the Work reverted to the Hayes' Estate. That interest was then transferred to Hayes Enterprises, on behalf of and for the benefit of Hayes' heirs." (*Id*. ¶ 5). The SAC goes on to allege that "[o]n March 1, 2023, Hayes Enterprises entered into an agreement which assigned half of its interest to a third-party entity known as Primary Wave, resulting in each owning 25 percent (%) of the copyright. Hayes Enterprises,

on behalf of and for the benefit of Hayes' heirs, manages their 25 percent (%)." (*Id.* ¶ 6).

The problem is that none of these key legal events—the alleged termination of the copyright license based on one-half of the ownership in the Work; the alleged transfer of Isaac Hayes's rights to Hayes Enterprises; or the agreement between the latter and Primary Wave—is documented. There is nothing, not a single document: no termination; no assignment; no agreement. Instead, for each of these claimed transactions, Plaintiffs cite the Declaration of Isaac Hayes III, filed in support of Plaintiffs' initial motion for preliminary relief on August 31, 2024 (ECF No. 29, Hayes III Decl.).

The first—and in and of itself outcome-determinative—missing link in this alleged chain of ownership, of course, is the allegation in ¶ 4 of the SAC that Hayes Enterprises and Hayes III "terminated the copyright interest of Warner Chappell Music in and to the underlying composition for the Work," which cites to Hayes III Decl., ¶ 7. Hayes III's testimony, in turn, reads as follows: "On December 31, 2014, Isaac Hayes Enterprises filed notice to the US Copyright Office, Universal Music Publishing Group and Warner Chappell Music of the termination of several Isaac Hayes copyrights including 'Hold On, I'm Coming'." There is no reference to any documentation of this alleged termination, and none is attached.

But Plaintiffs have an even bigger problem.

II.     **Plaintiffs have not alleged facts which, if true, would establish that Isaac Hayes III has sufficient ownership rights in the Work to bring this claim.**

The starting point for Plaintiff Hayes III's claim is that he has inherited the copyright in the Work co-authored by his father, the author Isaac Hayes, and specifically that he inherited the termination rights in the Work, which were allegedly exercised in 2014. It is not disputed that authors or their heirs may terminate the rights of a grantee, or that the "right to terminate is 'inalienable' for both authors and heirs . . . [and] cannot be contracted away." *Lil' Joe Recs., Inc. v. Ross*, No. 1:21-CV-23727, 2024 WL 4576445, at *9 (S.D. Fla. Sept. 30, 2024) (citations omitted).

But who is an heir?  The Copyright Act provides as follows:

(1) In the case of a grant executed by a person or persons other than the author, termination of the grant may be effected by the surviving person or persons who executed it. In the case of a grant executed by one or more of the authors of the Work, termination of the grant may be effected, to the extent of a particular author's share in the ownership of the renewal copyright, by the author who executed it or, if such author is dead, by the person or persons who, under clause (2) of this subsection, own and are entitled to exercise a total of more than one-half of that author's termination interest.

(2) Where an author is dead, his or her termination interest is owned, and may be exercised, as follows:

(A) The widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest.

(B) The author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower, in which case the ownership of one-half of the author's interest is divided among them.

(C) The rights of the author's children and grandchildren are in all cases divided among them and exercised on a per stirpes basis according to the number of such author's children represented; the share of the children of a dead child in a termination interest can be exercised only by the action of a majority of them.

(D) In the event that the author's widow or widower, children, and grandchildren are not living, the author's executor, administrator, personal representative, or trustee shall own the author's entire termination interest.

(3) Termination of the grant may be effected at any time during a period of five years beginning at the end of fifty-six years from the date copyright was originally secured, or beginning on January 1, 1978, whichever is later.

17 U.S.C.A. § 304(c). The threshold questions for this Court to answer, therefore, are whether the SAC adequately alleges that Hayes III is indeed the "heir" who retains the inalienable right of copyright termination as well as what rights, if any, are owned by Plaintiff Hayes Enterprises and by what instrumentality. The SAC, as demonstrated below, fails to overcome these thresholds.

### 1. The SAC fails to account for the one-half interest in the author's one-half share of termination rights of the work held by the widow of Isaac Hayes.

Plaintiff's first problem is that the SAC is silent regarding the status of Isaac Hayes's wife, because termination may only be effectuated "to the extent of a particular author's share in the ownership of the renewal copyright . . . if such author

is dead, **by the person or persons who, under clause (2) of this subsection, own and are entitled to exercise a total of more than one-half** of that author's termination interest." *Id*. (emphasis added). The SAC does not allege whether the widow of Isaac Hayes is living or not, but there are no grounds for the Court to infer that she is not. Therefore, pursuant to 17 U.S.C.A. § 304(c), Mrs. Hayes is the owner of "one-half of the author's interest." For that matter, the SAC does not allege what, if any, participation the widow Hayes did or did not have in any of the transactions relating to the copyright alleged in the SAC concerning a Work of which she owned one-quarter, i.e., her widow's half share of the copyright shared with the co-author David Porter.

Under the facts alleged, Hayes Enterprises only owns 25% of copyright in the Work, and Hayes III is not a person who owns and is entitled to exercise a total of more than one-half of the original termination interest unless his mother died or conveyed her interest to him at the time of the supposed termination—neither of which is alleged in the SAC. There are no grounds for him to assert any claim here.

    2.    **The SAC fails to account for the shares of the author's one-half share of termination rights of the work held by the ten other children of Isaac Hayes.**

Notwithstanding the foregoing, the SAC alleges that "Plaintiffs are the legal and beneficial owners of 25 percent (%) of the copyright in and to the composition for the Work." (SAC ¶ 54). This appears to be an attempt to elide the alleged

ownership interest of Hayes Enterprises with the ostensible statutory inheritance interest of "Plaintiff Issac Hayes, III . . . a citizen and resident of the state of Georgia, the son and namesake of Hayes, and the owner, President, and CEO of Plaintiff Isaac Hayes Enterprises." (*Id*. ¶ 21). Certainly, there is considerable emotional appeal to the idea of a son and namesake seeking to vindicate his deceased father's rights. And Defendants do not dispute that Hayes III is **a** son of Isaac Hayes or that he may safely be presumed (for purposes of this motion) to be one of his heirs.

The SAC fails, however, to allege—as it must, for Hayes III to even claim that he had the power to file the termination—that Hayes III is the **only** son, or even the only surviving son, of Isaac Hayes. He is not. He has publicly acknowledged that he grew up with siblings[1] and it is widely reported that Isaac Hayes had a total of eleven children.[2] Thus, even if the widow of Isaac Hayes were not alive, the share of Hayes III in the termination rights to his father's Work could only exceed one-half if at least five of his siblings had, at the time of the alleged termination, validly conveyed their termination rights to him (making him an owner of six-elevenths of those

---

[1] See video at found at https://x.com/isaachayes3/status/1809553359524815328?s=48&t=EuTgwwhxF9I9AFzEdzbSBw in which Hayes III discusses his and his siblings' living arrangements when he was a young teenager.

[2] *See*, e.g., M. Morrison, "Isaac Hayes' Kids Pose With His 'Shaft' Oscar: 'It Was Life-Changing for Him,'" *The Hollywood Reporter*, February 24, 2016, found at https://www.hollywoodreporter.com/movies/movie-news/isaac-hayes-kids-pose-his-shaft-oscar-it-was-life-changing-him-867608/ ("His legacy lives on through his 11 children, ages 9 to 53, 14 grandchildren and four great-grandchildren").

rights). The SAC, however, does not so much as allege that **any** heir identified by

17 U.S.C.A. § 304(c) has conveyed an interest in the Work to Hayes III or to Hayes

Enterprises.

And it is the latter, not Hayes III himself, who Hayes III himself testifies as

having filed the termination and served it on the licensees, as explained below.

> 3.   **The SAC implausibly claims that the copyright termination
>       was effected by Hayes III himself, in contradiction to his own
>       sworn testimony that notice of termination was filed and
>       served by Hayes Enterprises.**

According to the SAC, which again cites the Hayes III Decl., Hayes

Enterprises, "on behalf of [the author Isaac] Hayes – and his heirs **and Hayes III**

terminated the copyright interest of Warner Chappell Music in and to the underlying

composition for the Work." (SAC ¶ 4). The Declaration, however, makes no

reference to the filing of a notice of termination by Hayes III, averring only that

"[o]n December 31, 2014, **Isaac Hayes Enterprises** filed notice to the US Copyright

Office, Universal Music Publishing Group and Warner Chappell Music of the

termination of several Isaac Hayes copyrights including 'Hold On, I'm Coming'."

(Hayes III Decl. ¶ 7) (emphasis added).  Hayes III goes on to testify, moreover, that

as a result, "Isaac Enterprises regained control of 50% of the copyright to 'Hold On,

I'm Coming.'" (*Id*. ¶ 8).

Besides undercutting the claim of Hayes III to seek relief in this action, this

raises yet another question the SAC does not answer: What right could Hayes

Enterprise have had to "reclaim" the half portion of rights in a copyright owned, not by the Hayes Foundation—and there is no allegation that Isaac Hayes or anyone empowered to do so ever conveyed any rights to that entity—but, as Exhibit B to the SAC demonstrates, by Isaac Hayes and David Porter?

### 4. The SAC implausibly claims that Hayes Enterprises acted on behalf of Isaac Hayes' estate and his heirs.

The SAC purports to supply the missing link—how it is that Plaintiffs maintain that Hayes Enterprises became empowered to do anything here—by alleging that on the effective date of termination in March 2022, the author "Hayes['s] ownership of 50 percent (%) of the composition, in and to the Work reverted to the Hayes[] Estate. **That interest was then transferred to Hayes Enterprises, on behalf of and for the benefit of Hayes' heirs.**" (SAC ¶ 5) (emphasis added). The highlighted sentence is doing a great deal of work here, especially considering that the only heir of Isaac Hayes who has appeared in this matter or claimed an interest in the Work or has been heard from in these proceedings is Hayes III. Under such circumstances, the SAC's assertion that the Hayes Estate "transferred" its (allegedly) recovered interest in the Work calls for some sort of factual corroboration.

There is none, however. Instead of documentation of the transfer by Isaac Hayes or the Hayes Estate of its interest in the Work to Hayes Enterprises, the SAC again cites the Hayes III Declaration. But the paragraph cited says **nothing** about the

Hayes Estate—not a word.[3] Nor would it help if it did, because under the Copyright

Act an assignment of such rights as Plaintiffs claim here must be in writing, as the

Eleventh Circuit explained in *Imperial Residential Design, Inc. v. Palms Dev. Grp.,*

*Inc.*, 70 F.3d 96 (11th Cir. 1995):

> The Copyright Act provides that "a transfer of copyright ownership ...
> is not valid unless an instrument of conveyance, or a note or
> memorandum of the transfer is in writing and signed by the owner of
> the rights conveyed." 17 U.S.C. § 204(a). We recognize that "17 U.S.C.
> § 204(a) can be satisfied by an oral assignment later ratified or
> confirmed by a written memorandum of the transfer." *See Arthur
> Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532–33
> (11th Cir.1994). Regal claims that Imperial Palms orally transferred
> copyright ownership in the Regency design in 1988, when the drawings
> were completed, and that the written May Agreement memorialized the
> earlier oral transfer. The district court, however, excluded the May
> Agreement as "a self-serving attempt to transfer ownership of the cause
> of action after infringement had occurred."
>
> This court has adopted the reasoning of those courts which have held
> that a copyright owner's later execution of a writing which confirms an
> earlier oral agreement validates the transfer *ab initio. Id.* at 1533. *See
> also Great Southern Homes v. Johnson & Thompson,* 797 F. Supp. 609,
> 611–612 (M.D.Tenn.1992) (Wiseman, J.) (later writing signed by
> copyright owner and transferee memorializing oral agreement cured
> defects in standing, although signed after suit was filed). In addition,
> the chief purpose of section 204(a), (like the Statute of Frauds), is to
> resolve disputes between copyright owners and transferees and to
> protect copyright holders from persons mistakenly or fraudulently
> claiming oral licenses or copyright ownership. *See Eden Toys, Inc. v.
> Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2nd Cir.1982). And,

---

[3] The Declaration's eighth paragraph states in its entirety as follows:

> On March 15, 2022, 56 years after the publication of "Hold On, I'm Coming" written by
> Isaac Hayes and David Porter, Isaac Enterprises regained control of 50% of the copyright
> to "Hold On, I'm Coming" legally terminating ownership by Universal Music Publishing
> and Warner Chappell Music.

Hayes III Decl. ¶ 8

> at least in a case such as this one—where both the original owner and the transferee have joined as plaintiffs in the same lawsuit—we will not let the alleged infringer invoke section 204(a). See *Great Southern Homes*, 797 F.Supp. at 611.

70 F.3d at 99. Here, of course, there is neither a written assignment nor a subsequent ratification of an oral assignment by "the Estate" or even by the other dozen heirs in their personal capacities. Plaintiffs have had more than ample time to find such documentation and may not do so now. *See also*, *Pro. LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1371 (S.D. Fla. 2015) ("While a post-hoc memorialization of an oral assignment can satisfy the section 204 note or memorandum requirement, that later memorialization must still pre-date the litigation asserting the assigned rights in order to confer standing on the assignee.").

For these reasons, the SAC's bare allegations that Hayes Enterprises somehow acquired the rights of the Hayes heirs to the Work is insufficient, as a matter of law, to establish the entitlement of Hayes Enterprises, much less Hayes III, to any relief because they fail to establish ownership of the rights in question.

### 5. The SAC implausibly claims that a Notice of Termination was filed with the Copyright Office and served on Warner Chappell Music.

The Copyright Act provides a specific procedure to effectuate the termination of a copyright interest:

> (4) The termination shall be effected by serving an advance notice in writing upon the grantee or the grantee's successor in title. In the case of a grant executed by a person or persons other than the author, the

notice shall be signed by all of those entitled to terminate the grant under clause (1) of this subsection, or by their duly authorized agents. In the case of a grant executed by one or more of the authors of the work, the notice as to any one author's share shall be signed by that author or his or her duly authorized agent or, if that author is dead, by the number and proportion of the owners of his or her termination interest required under clauses (1) and (2) of this subsection, or by their duly authorized agents.

(A) The notice shall state the effective date of the termination, which shall fall within the five-year period specified by clause (3) of this subsection, or, in the case of a termination under subsection (d), within the five-year period specified by subsection (d)(2), and the notice shall be served not less than two or more than ten years before that date. A copy of the notice shall be recorded in the Copyright Office before the effective date of termination, as a condition to its taking effect.

(B) The notice shall comply, in form, content, and manner of service, with requirements that the Register of Copyrights shall prescribe by regulation.

17 U.S.C.A. § 304. According to the SAC, "On December 31, 2014, on behalf of Hayes – and his heirs – Hayes Enterprises and Hayes III terminated the copyright interest of Warner Chappell Music in and to the underlying composition for the Work." (SAC ¶ 4). Again, the SAC refers to the Hayes III Declaration, specifically to ¶ 7, which essentially says the same thing in almost the same words: "On December 31, 2014, Isaac Hayes Enterprises filed notice to the US Copyright Office, Universal Music Publishing Group and Warner Chappell Music of the termination of several Isaac Hayes copyrights including 'Hold On, I'm Coming'." Hayes III Decl. ¶ 7.

20

The "notice" supposedly filed on December 31, 2014, however, is not attached to either the Hayes III Declaration or the SAC—even though, if it were not already in Plaintiffs' files, it would be readily obtainable from the Copyright Office. The SAC does not even include an abstract or other abbreviated corroboration of such filing, which would be immediately available by an online search, of the type set forth as Exhibit B to the SAC (the 1996 copyright renewal). Nor is there corroboration or memorialization of any such notice having been delivered to the grantee, as required by statute.

It is, of course, well known that the Court is obligated on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) to accept all the "well-pleaded allegations" of a complaint as true. Defendants submit that a lawsuit premised on the filing and service of a single key document—here, the supposed notice of termination—that fails to attach a copy of that document or provide a serial number or other device by which it may be retrieved from the public record; and where that document is required to meet specific statutory requirements, the satisfaction of which cannot be determined without reference to the paper itself; and where there are critical questions raised by the allegations themselves as to the identity of the party that filed the document, and under what claim of right . . . does not meet the definition of "well-pleaded." Indeed, courts have consistently found that a plaintiff's otherwise defective complaint should not be allowed to "survive a motion to dismiss simply

by failing to attach a dispositive document on which he relied." *Porter v. Experian Info. Servs., Inc.*, No. 121CV00453SDGRGV, 2021 WL 5068262, at *6 (N.D. Ga. Oct. 30, 2021), *report and recommendation adopted sub nom. Porter v. Experian Info. Servs., LLC*, No. 121CV00453SDGRGV, 2022 WL 887288 (N.D. Ga. Jan. 27, 2022) (quoting *Donohue v. Reg'l Adjustment Bureau, Inc.,* Civil Action No. 12–1460, 2013 WL 607853, at *6 n.10 (E.D. Pa. Feb. 19, 2013)) (cleaned up).[4]

It is, in other words, implausible that a notice of termination was ever filed and served given the absence of any proof of its existence or, prior to the political activities of Defendants, enforcement by Plaintiffs of rights consistent with its valid filing.

For these reasons, and all the foregoing ones, Plaintiffs have failed as a matter of law to plead—plausibly—valid ownership of the rights in the Work alleged to have been infringed, and the copyright claims in the SAC should be dismissed with prejudice.

---

[4] *See also In re Logan*, No. 12-80113-BEM, 2015 WL 4940041 (Bankr. N.D. Ga. July 1, 2015) (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993)) (stating that documents central to a complaint must be considered on dismissal because doing otherwise "would enable a plaintiff 'with a legally deficient claim [to] survive a motion to dismiss simply by failing to attach a dispositive document on which it relied," and that "[w]hen the complaint relies on the document in question, 'the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.'"); *Watkins v. Great S. Wood Preserving, Inc.*, No. 4:21-CV-1344-CLM, 2022 WL 4538833 (N.D. Ala. Sept. 28, 2022) (holding similarly).

### III.    PLAINTIFFS HAVE NOT ALLEGED FACTS WHICH, IF TRUE, WOULD ESTABLISH ANY INFRINGING OR TORTIOUS CONDUCT BY DEFENDANT DONALD J. TRUMP.

"The Eleventh Circuit has repeatedly and unequivocally condemned shotgun pleadings as a waste of judicial resources." *Merch. One v. TLO*, No. 19-23719-BLOOM, 2020 U.S. Dist. LEXIS 7462 (S.D. Fla. Jan. 16, 2020) at *6. Here the SAC commits the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. . . ." *Id*. at *7-8. The SAC continuously refers to Mr. Trump—a billionaire former President of the United States running for reelection as the nominee of one of the two major parties—as "performing" the Work himself. The SAC does not, of course, claim that Mr. Trump sang "Hold On I'm Coming." Rather, it alleges that the Work was "publicly performed by him at all of his campaign related rallies between 2020 and September 11, 2024 as [his] exit/outro song" and that he "selected" the Work. (SAC ¶ 39).

But the SAC fails to meet either of the Eleventh Circuit's two tests to impose personal liability on a corporate officer. *See*, *Playboy Enters., Inc. v. Starware Pub. Corp*., 900 F. Supp. 438, 440–41 (S.D. Fla. 1995). The first is the personal involvement test: a corporate officer can be held liable for copyright infringement "based on his personal involvement and participation in the infringing activity." *Id*. at 441 The SAC alleges that Mr. Trump "performed" the Work but does not explain

how the playing of the music, while he exited the stage of a rally, was a "performance" by him **of the Work**.

Alternatively, liability may be imposed under the vicarious liability test. Under this standard, a corporate officer is liable if he (1) "had the ability to supervise the infringing activity" **and** (2) "had a financial interest in that activity." *Id*. The SAC does not actually allege anywhere that Mr. Trump had the ability to supervise the infringing activity, though for the sake of this motion it may be a reasonable inference that he did. But to successfully allege a direct financial interest, which is an additional requirement under the vicarious liability test, the plaintiff must allege that the defendant profited directly from the infringing activity. *Oppenheimer v. Palange*, No. 1:23-CV-20507, 2023 WL 11916703, at *3 (S.D. Fla. Dec. 24, 2023).

While the SAC does recite, formulaically, that Mr. Trump's alleged infringement "worked to the financial advancement of Defendants," it does not say how **he** benefited financially. Even if the Campaign benefited by not paying a licensing fee, it does not follow that Mr. Trump **himself** benefited financially. Nor is there any reasonable ground to infer that he did.

And the cases are clear that to establish a claim that a principal received a direct financial interest from infringement by an entity, a plaintiff must allege that the individual defendant profited directly from the infringing activity. *Coach, Inc. v. Swap Shop, Inc*., 916 F. Supp. 2d 1271, 1282 (S.D. Fla. 2012); *see BUC Int'l Corp.*

*v. Int'l Yacht Council Ltd*., 489 F.3d 1129, 1138 n.19 (11th Cir. 2007). A court "cannot infer that [a principal] was personally liable based on the general allegations that he made most of [the] decisions" of the entity he heads and was its "dominant influence." *Oppenheimer*, 2023 WL 11916703 at *4. For these reasons, the claims against Defendant Donald J. Trump for direct, vicarious and contributory copyright infringement, as well as false advertising—the last of which suffers from the same deficiencies in terms of vicarious infringement—should be dismissed with prejudice.

## IV.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT.

"To prove contributory infringement, a plaintiff must show that one with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc*., 131 F. Supp. 3d 1291, 1299 (M.D. Fla. 2015) (cleaned up). Because, as set out in Section (I) above, the SAC fails to allege facts sufficient to establish Plaintiffs' ownership in the copyright of the Work and thus does not state a claim for direct copyright infringement, it is axiomatic that they cannot state a claim for contributory copyright infringement. *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1298 n. 11 (11th Cir.2008).

In any event, no claim for contributory copyright infringement could lie here because such liability only applies when "a defendant is held responsible for a *third*

*party's* acts of infringement, even though the defendant did not engage in direct infringement themselves. Because any actions undertaken by [an officer, employee or agent] would be directly imputed to [the employer], and a corporation only acts through its officers, employees, or agents," such parties cannot be third party infringers. *Oppenheimer*, supra, 2023 WL 11916703 at *3 n.2 (citations omitted) (emphasis in the original). *See also 43 N. Broadway LLC v. Essential Media Grp. LLC*, No. 17-24518-CV, 2018 WL 2864014, at *3 (S.D. Fla. June 11, 2018) (quoting *In re Spear & Jackson Securities Litigation*, 399 F. Supp. 2d 1350, 1361 (S.D. Fla. 2005)) ("Courts have uniformly held that acts of a corporate officer that are intended to benefit a corporation to the detriment of outsiders are properly imputed to the corporation.") and *United Feature Syndicate, Inc. v. Sunrise Mold Co., Inc*., 569 F. Supp. 1475, 1480-81 (S.D. Fla. 1983) ("Knowledge of officers, directors, employees and agents of the corporation is imputed to the corporation itself.").

## V.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR UNDER SECTION 43(a) OF THE LANHAM ACT.

Count 4 of the SAC seeks relief under the Lanham Act under 15 U.S.C.A. § 1125(a), also known as Section 43(a), which provides as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The SAC alleges that by playing "Hold On I'm Coming" at Trump Campaign Rallies, Defendants were "likely to or did cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs; or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities." (SAC ¶¶ 68–69). Presumably Plaintiffs seek relief under for "false association" under § 43(a), which allows for recovery where a celebrity alleges that "use of his or her name is likely to cause confusion among consumers as to the 'affiliation, connection, or association' between the celebrity and the defendant's goods or services or as to the celebrity's participation in the 'origin, sponsorship, or approval' of the defendant's goods or services," as described in *Parks v. LaFace Recs.*, 329 F.3d 437, 445–46 (6th Cir. 2003).

On the other hand, although 15 U.S.C.A. § 1125(a)(1)(A) is the statutory provision cited in ¶ 68 of the SAC, the heading of Count 4 refers to "False Advertising," a cause of action created by 15 U.S.C.A. § 1125(a)(1)(B). "A claim

for false advertising requires a false or misleading description or representation of fact in commercial advertising or promotion. To succeed on a false advertising claim under § 43(a)(1)(B) of the Lanham Act, a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *SouthState Bank, N.A. v. Qoins Techs., Inc.*, 720 F. Supp. 3d 1324, 1339 (N.D. Ga. 2024) (quoting, *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004)) (citations omitted). As *Parks* demonstrates, however, it is not uncommon for parties and courts to use the term "false advertising" to refer to false association claims under § 43(a)(1)(A).

Either way, it appears that Plaintiffs seek to establish and recover under a theory of "endorsement" rights in a manner analogous to the trademark rights successfully asserted in the groundbreaking Ninth Circuit case of *Waits v. Frito–Lay, Inc*., 978 F.2d 1093, 1106 (9th Cir.1992). In that case, the singer Tom Waits asserted a false endorsement claim under the Lanham Act against an advertiser who hired a "soundalike" singer to imitate Waits's distinctive voice in a television commercial for the defendant's product. The Ninth Circuit recognized that a Lanham Act claim was cognizable for a vocal imitation of an individual if Waits could prove

a likelihood that consumers would be confused as to whether he actually sang in the advertisement. *Id.* at 1111.

Seeking to build on that precedent, the musician Don Henley sought, in *Henley v. DeVore*, 733 F. Supp. 2d 1144 (C.D. Cal. 2010), to hold a politician and his campaign manager liable on both copyright and trademark grounds based on the campaign's unauthorized use of the musician's songs. Unlike here, the claim was by a musician, not a writer; the artist was still alive; and there was no dispute concerning the plaintiff's rights in the work. On a full record, the plaintiff was granted summary judgment on the claim of copyright infringement, but the Second Circuit rejected the Lanham Act claim based on a persona's purported association with a musical performance by analogy to *Waits*, explaining as follows:

> The Defendants argue that Henley's musical compositions do not constitute protectable trademarks as they are not "distinctive attributes" of Henley [in contrast to Waits's distinctive singing voice]. . . . In a false endorsement case involving a celebrity, the "mark" is the celebrity's "persona." *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1400 (9th Cir.1992).
> . . .
> However, in *Oliveira v. Frito–Lay, Inc.,* 251 F.3d 56 (2d Cir.2001), the Second Circuit questioned whether a musician could ever assert a false endorsement claim based on the use of that musician's performance of a song. *See id.* at 62. In that case, musician Astrud Gilberto sued the defendant for using the recording of her performance of "The Girl from Ipanema" in an advertisement. *Id.* at 57–58. She argued that, as a result of the success of the song, she became closely associated with the song, even becoming known as The Girl from Ipanema. *Id.* at 59. The district court dismissed the claim on summary judgment and the Second Circuit affirmed. *Id.* at 60, 62.

While recognizing that musical compositions in general are worthy of trademark protection, as they could become associated with a particular product, the court noted the absence of any precedent permitting a *performer* to hold a trademark in his or her own musical performance:

> Plaintiff has not cited a single precedent throughout the history of trademark supporting the notion that a performing artist acquires a trademark or service mark signifying herself in a recording of her own famous performance. The "signature performance" that a widespread audience associates with the performing artist is not unique to Gilberto. Many famous artists have recorded such signature performances that their audiences identify with the performer. Yet in no instance was such a performer held to own a protected mark in that recording.

*Id.* at 62; *cf. EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 64 (2d Cir.2000) (holding that a musical composition could not serve as a trademark for itself). The court also noted the widespread reasonable commercial expectations regarding music licensing and the potential disruption if performers were allowed to sue under a trademark theory. *Id.* at 63. The court distinguished *Waits* and other cases involving the use of look-alikes and sound-alikes, finding that the use of Gilberto's performance did not borrow her "persona," as in those cases. *Id.* at 62.

Thus, the distinction between *Waits* and *Oliveira* is that in *Waits,* the defendants imitated Waits's voice in a manner leading consumers to believe that Waits was actually singing and endorsing their product, whereas in *Oliveira,* the defendants simply used a recording of a prior musical performance. Where an advertisement mimics a celebrity's voice to endorse a product, a customer may be understandably confused as to whether the celebrity is actually endorsing the product. However, **the mere use of the celebrity's prior performance does not present the same sort of confusion**.
. . .
The Court recognizes that *Oliveira* is not binding here, but finds the decision persuasive. *Oliveira* notes the absence of any precedent granting a performer trademark protection for their performances and the resulting reasonable expectation of licensees who wish to use

> copyrighted works. 251 F.3d at 63; *cf. Sinatra v. Goodyear Tire & Rubber Co.,* 435 F.2d 711, 716–18 (9th Cir.1970) (affirming summary judgment against Nancy Sinatra on her state law "passing-off" claim where defendants used an imitation of her song because such a claim would impinge on copyrights). This Court also recognizes this absence of authority for the Plaintiffs' theory and declines to create a new trademark right that "would be profoundly disruptive to commerce." *See Oliveira,* 251 F.3d at 63.
>
> Accordingly, the Court finds that the Plaintiffs cannot maintain a Lanham Act claim based purely on the use of Henley's songs.

*Henley*, 733 F. Supp. 2d at 1166–68. Similarly, the singer Madonna failed to establish exclusive "persona" or trademark-like rights in her song "Material Girl" in *L.A. Triumph, Inc. v. Ciccone*, No. CV 10-06195 SJO JCX, 2011 WL 5562810, at *3 (C.D. Cal. Aug. 31, 2011). "Defendants' argument that Madonna created the 'Material Girl' mark through her performances fails as a matter of law," wrote the court. "This Court and other courts have recognized that the singing of a song does not create a trademark." *Id*. at *3.

These decisions establish the proper standard here with regard to singers of songs, despite the fact that in many cases such performers may indeed enjoy a close public association with the works they have made famous. The reasoning underlying that standard doubtless applies *a fortiori* to the **writers** of songs, whose identities are seldom known to the general public. Thus, Plaintiffs' Lanham Act claim would fail as a matter of law even if the SAC adequately alleged secondary meaning or some other quantum of public association connecting "Hold On I'm Coming" with

Isaac Hayes: a singer of other songs who nonetheless did not popularize this one, and whose voice is not heard on the recording allegedly played at the Trump Campaign rallies.

In fact, the SAC fails to establish such an association. To be fair, however, that failure is not one of pleading, but arises from the conceptual impossibility of doing so. For, as the Second Circuit has explained, creative works are protected by copyrights—not trademarks:

> Copyright law, not trademark law, is the primary vehicle for protecting the rights of a song's composer or her successor in interest in the musical composition. Musical works "fixed in any tangible medium of expression" are protected by 17 U.S.C. § 102(a). Ownership of a copyright gives the owner exclusive rights to reproduce the work in copies or phonorecords, prepare derivative works, and to distribute copies or phonorecords of the copyrighted work. See *id*. § 106.

> The Supreme Court has stressed that there are "fundamental differences between copyright law and trademark law." *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 439 n. 19 (1984). Copyright law has its roots in the Constitution. U.S. Const. art. I, sect. 8(8). It protects "fruits of intellectual labor," such as literary or dramatic works, musical compositions, motion pictures, sound recordings, architectural works, and other similar original works of authorship. Trade–Mark Cases, 100 U.S. 82, 94 (1879); *see* 17 U.S.C. § 102. A trademark, by way of contrast, grows out of the adoption and use of a distinctive symbol by the party using it. Its function "is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his." *United Drug Co. v. Theodore Rectanus Co*., 248 U.S. 90, 97 (1918).

> Applying these principles to a musical composition, a trademark must be derivative of the original work, used to identify that work or its source. The creation and expression of an original work is protected by copyright law, and once an original work has been produced trademark

law is not the proper means of protecting the rights in this originality. See *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd*., 40 F.3d 1431, 1446 (3d Cir.1994) ("[I]t is not the purpose of unfair competition law, under the guise of either consumer protection or the protection of business good will, to implement a policy of encouraging innovative designs by protecting them once designed.... Those issues are the province of copyright and patent laws."). The work itself is protected from misappropriation by the copyright laws. The different, source-identifying function of trademarks requires that a trademark in a musical composition not be coextensive with the music itself. Rather, the trademark serves to identify the copyrighted music.

We hold therefore that a musical composition cannot be protected as its own trademark under the Lanham Act.

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 63–64 (2d Cir. 2000).

For these reasons, Count 4 should be dismissed with prejudice.

## VI.  COUNT 3 OF THE SAC, WHICH SEEKS AN "ACCOUNTING," FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

The third count of the SAC seeks an "accounting," which is a form of relief and not a cause of action. *Johnson v. Pullman, Inc.*, 845 F.2d 911, 913 (11th Cir. 1988) ("Although plaintiffs' complaint contained a count in which an accounting was sought, that relief would not be available here absent some independent cause of action."). Furthermore, "under Georgia law, even if an equitable accounting is understood to be a separate cause of action, when a party does not allege or otherwise demonstrate that the account in question is either complicated or intricate, or allege that remedies at law are inadequate, a claim for accounting must fail." *Wells Fargo*

*Bank v. Crowley*, No. 113CV01427CAPLTW, 2014 WL 11370437, at \*6 (N.D. Ga. Feb. 20, 2014).

Such is the case here, and for these reasons the Court should dismiss Plaintiffs' claim for an accounting with prejudice.

Date: January 8, 2025                    Respectfully submitted,

Ronald D. Coleman                        */s/ William Bradley Carver, Sr.*
Dhillon Law Group, Inc.
*Admitted Pro Hac Vice*                  William Bradley Carver, Sr.
Dhillon Law Group, Inc.                  Georgia Bar No. 115529
50 Park Place                            HALL BOOTH SMITH, P.C.
Suite 1105                               191 Peachtree Street NE
Newark, NJ 07102                         Suite 2900
973-298-1723                             Atlanta, GA 30303
rcoleman@dhillonlaw.com                  (404) 954-5000
                                         BCarver@hallboothsmith.com

Jacob W. Roth
Dhillon Law Group, Inc.                  Baxter D. Drennon
*Admitted Pro Hac Vice*                  GA Bar No. 241446
1601 Forum Place                         HALL BOOTH SMITH, P.C. 200
Suite 403 West Palm Beach,               River Market Ave., Suite 500 Little
Florida 33401                            Rock, AR 72201 (501) 214-3499
415-682-6827                             bdrennon@hallboothsmith.com
jroth@dhillonlaw.com


*Counsel for Defendants
Donald J. Trump and Donald J. Trump for President 2024, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), counsel hereby certifies that this document has been prepared using Times New Roman 14-point font, as approved by Local Rule 5.1(C).

Submitted this <u>8th</u> day of <u>January</u>, 2025

<u>/s/William Bradley Carver, Sr.</u>
William Bradley Carver, Sr.
GA Bar No. 115529
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, Georgia 30303
404-954-6967
bcarver@hallboothsmith.com

*Counsel for Defendants Donald John Trump and Donald J. Trump for President 2024, Inc.*

## CERTIFICATE OF SERVICE

I certify that on January 8, 2025, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court via CM/ECF.

Submitted this <u>8th</u> day of <u>January</u>, 2025

<u>/s/William Bradley Carver, Sr.</u>
William Bradley Carver, Sr.
GA Bar No. 115529
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, Georgia 30303
404-954-6967
bcarver@hallboothsmith.com

*Counsel for Defendants Donald John Trump and Donald J. Trump for President 2024, Inc.*