## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTIC DIVISION

|  |  |
|---|---|
| **ISAAC HAYES ENTERPRISES, LLC**, a Georgia Domestic Limited Liability Company, and **THE ESTATE OF ISAAC HAYES** <br><br> Plaintiffs, <br><br> v. <br><br> **DONALD JOHN TRUMP, individually, DONALD J. TRUMP FOR PRESIDENT 2024, INC., TURNING POINT ACTION, INC., erroneously sued as TURNING POINT USA, INC., and BTC, INC.,** <br><br> Defendants. | Civil Action No. 1:24-cv-03639 |

## DEFENDANT TURNING POINT ACTION, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM AND MEMORANDUM OF LAW IN SUPPORT

Defendant Turning Point Action, Inc. ("TPA") respectfully moves for dismissal of all claims against it by Plaintiffs Isaac Hayes Enterprises, LLC and The Estate of Isaac Hayes pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). As set forth below, all claims against TPA must be dismissed for lack of personal jurisdiction and failure to state a claim for which relief can be granted.

## I.    <u>INTRODUCTION</u>

Plaintiffs Isaac Hayes Enterprises, LLC and The Estate of Isaac Hayes ("Plaintiffs") attempt to assert claims against TPA—an Indiana corporation with a principal place of business in Arizona—for copyright infringement, accounting, false endorsement, and violation of the right of publicity based exclusively on allegations that Donald Trump, without authorization, played the song *Hold On, I'm Coming* at political events hosted or sponsored by TPA in the states of Florida and Michigan. On its face, the Second Amended Complaint demonstrates that none of the events giving rise to Plaintiffs' claims occurred in the State of Georgia or were in any way connected to any activities carried out in the State of Georgia. Accordingly, the Second Amended Complaint fails to set forth a prima facie case for jurisdiction over non-resident defendant TPA under Georgia's long-arm statute, and the claims against TPA must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

Even setting aside the blatant defect with respect to personal jurisdiction, each of Plaintiffs' claims against TPA are independently defective for failure to state a plausible claim upon which relief can be granted. As to Plaintiffs' copyright infringement claims, the allegations in the SAC fail to plausibly allege that Plaintiffs own a valid copyright to the musical composition *Hold on I'm Coming*, co-written by Isaac Hayes (the father of Isaac Hayes III ("Hayes III"). Absent plausible

-2-

allegations of ownership, Plaintiffs' claims for direct copyright infringement (Count I) and contributory/vicarious copyright infringement (Count II) must be dismissed.

Further, Plaintiffs' copyright infringement claims against TPA are also independently defective because there are no allegations in the SAC from which the Court could infer that _**TPA**_ engaged in any wrongful conduct. Each of Plaintiffs' allegations concerning TPA allege wrongful conduct on the part of **Donald Trump**, without further factual allegations suggesting that TPA induced, caused or materially contributed to the alleged infringement, as is necessary to state a claim for contributory copyright infringement, or had the right and ability to supervise the infringing conduct, as is required to state a claim for vicarious copyright infringement. Plaintiffs' remaining claims against TPA for accounting, false endorsement, and violation of the right of publicity—which are all based on the same allegations that form the basis of Plaintiffs copyright infringement claim—are not cognizable under applicable law. Accordingly, the SAC fails to state cognizable claims against TPA, and Plaintiffs' claims should be dismissed for failure to state a claim upon which relief can be granted.

## II.    RELEVANT FACTUAL ALLEGATIONS

Plaintiffs assert claims for copyright infringement, accounting, false endorsement, and violation of the right of publicity against TPA and three other defendants arising out of defendants' allegedly unauthorized use of the musical

composition "Home On, I'm Coming" co-written by Isaac Hayes (the "Work") —
the father of Hayes III—at various campaign events for Donald Trump. *See*
*generally* SAC (Dkt. 70). According to the Complaint, the copyright in the Work
was originally registered in March of 1968 and renewed on January 11, 1996. (*Id*. ¶
3.) On December 31, 2014, Hayes Enterprises and Hayes III allegedly terminated
the copyright interest of Warner Chappell Music in and to the composition and, as a
result, Hayes Enterprises came to own fifty (50) percent of the composition. (*Id*. ¶¶
4-5.) Hayes Enterprises subsequently transferred half of its ownership interest to a
third-party, resulting in Hayes Enterprises owning 25 percent of the composition.
(*Id*. ¶ 6.) Hayes Enterprises allegedly owns all right and interest in Hayes' name and
likeness, including two United States trademarks in the name "Isaac Hayes." (*Id*. ¶
7.)

Defendant TPA is an Indiana corporation with a principal place of business in
Arizona. (*Id*. ¶ 25.) The SAC alleges that this Court has jurisdiction over defendants
collectively because "Defendants, Defendants' agents, and/or Defendants' personal
representatives either (a) maintain a principal place of business in Georgia or have a
substantial presence in Georgia with offices located in Georgia; or (b) regularly
conduct business in the State of Georgia, including conducting such business
through performing rights organizations located in Georgia and by entering contracts
that are consummated and/or performed in Georgia." (*Id*. ¶ 31.) Aside from these

-4-

conclusory allegations, the SAC does not include any jurisdictional allegations specifically directed at TPA or that concern TPA's specific contacts with the State of Georgia.

Like the jurisdictional allegations, the specific factual allegations against TPA in the SAC are sparse. Indeed, every factual allegation against TPA expressly alleges unlawful conduct *by Trump* at events hosted by TPA. In particular, the SAC alleges that "*Trump* unlawfully performed the Work" (emphasis added) at six events held or sponsored by TPA:

1. A July 23, 2022 summit in Tampa, Florida. (Dkt. 70 ¶ 43.)
2. A July 15, 2023 summit in West Palm Beach, Florida. (Dkt. 70 ¶ 44.)
3. A June 6, 2024 town hall in West Palm Beach, Florida. (Dkt. 70 ¶ 45.)
4. The June 15, 2024 People' Convention in Detroit, Michigan. (Dkt. 70 ¶ 46.)
5. The July 15, 2024 Turning Point Action Conference in West Palm Beach, Florida. (Dkt. 70 ¶ 47.)
6. The July 26, 2024 Faith Believers' Summit in West Palm Beach, Florida. (Dkt. 70 ¶ 48.)

The SAC also alleges that recordings of these events are available through various online platforms, including Rumble, C-SPAN, and YouTube. (*Id*. ¶¶ 43-48.) The SAC is devoid of any factual allegations that suggest TPA had any role in the decision to play the Work at any of the events or facilitated the playing of the Work at any event or is responsible for recording and posting the event online. (*See generally id*.)

III.    **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(2) allows a court to dismiss a matter for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Where the allegations in the complaint are deficient and fail to set forth a prima facie case of jurisdiction, dismissal is appropriate. *Diulus v. Am. Express Travel Related Srvs. Co., Inc.*, 823 Fed. Appx. 843, 849 (11th Cir. 2020) (holding that the district court "properly reviewed the allegations in the complaint, found them to be deficient, and dismissed the complaint" where defendant's motion to dismiss argued only that the complaint did not allege a prima facie case of personal jurisdiction).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," and the Court must dismiss the complaint where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-

unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). While the Court must accept all well-pled factual allegations in a complaint as true, unsupported factual allegations and legal conclusions are entitled to no such deference. *Id*. at 679.

## IV.    ARGUMENT

### A.    <u>This Court Lacks Personal Jurisdiction Over Defendant TPA</u>

The Court must dismiss Plaintiffs' claims against TPA because the SAC fails to allege facts sufficient to state a prima facie case of jurisdiction.

The court undertakes a two-step inquiry in determining whether personal jurisdiction exists: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Mazer*, 556 F.3d at 1274.[1] Pursuant to Georgia's long-arm statute, a Court may exercise jurisdiction over any nonresident, "as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated" in the statute if he or she: "(1) [t]ransacts any business within this state;" "(2) Commits a tortious act or omission within this state;" or "(3) Commits a tortious injury in this state caused by an act or omission

---

[1] As the SAC alleges that TPA is an Indiana corporation with a principal place of business in Arizona, general jurisdiction cannot exist over TPA. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Thus, TPA addresses only the specific jurisdiction inquiry.

outside this state if the tort-feasor regularly does or solicits business, or engaged in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91. Notably, Georgia's long-arm statute is not coextensive with procedural due process but instead "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010).

Here, the SAC does not allege sufficient facts to make a prima facie case that jurisdiction is proper under Georgia's long-arm statute. Aside from conclusory allegations lodged collectively at "Defendants," there are no allegations concerning TPA's contacts with Georgia, and the alleged wrongful conduct (which Plaintiffs notably attribute to Trump, not TPA) took place outside the state at events hosted in Florida and Michigan. As such, the factual allegations in the SAC fail to state a prima facie case that TPA transacts business within Georgia or committed a tortious act within Georgia, as is required under the long arm statute. To the extent Plaintiffs contend that jurisdiction is proper because these events injured Plaintiffs, who are Georgia residents, this is not sufficient under Georgia's long-arm statute because the SAC is devoid of any factual allegations to demonstrate that TPA solicits business, engaged in persistent conduct, or derives substantial revenue from Georgia. *See Tradeband Int'l, Inc. v. Barter/Trade, Inc.*, 2010 WL 11552956, at *6 (N.D. Ga.

DMS_US.368925823.2

Aug. 31, 2010) (allegation that defendant's infringement caused harm to Plaintiff in Georgia insufficient to support exercise of personal jurisdiction absent allegations that defendant solicits business, engages in president conduct, or derives substantial revenue from Georgia). Accordingly, the Court lacks personal jurisdiction under Georgia's long-arm statute.

Nor does the exercise of personal jurisdiction over TPA satisfy the due process inquiry. Due process requires that "the defendant's suit-related conduct must create a substantial connection with the forum state." *Mason v. Sony Pictures Ent., Inc.*, 2021 WL 1663492, at *3 (N.D. Ga. Apr. 28, 2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). To guide the due process inquiry, the Eleventh Circuit has formulated a three-part test:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quotation marks omitted). Here, Plaintiffs do not allege a sufficient connection between their claims against TPA—which arise out of alleged unauthorize use of the Work at events that occurred in Florida and Michigan—and the state of Georgia. (Dkt. 70 ¶¶ 43-48.) In fact, the SAC does not contain a single factual allegation concerning TPA's specific contacts with Georgia, let alone allegations that would

suggest those contacts bear any connection whatsoever with Plaintiffs' infringement claims. This necessitates dismissal. *Mason*, 2021 WL 1663492, at *4 (dismissing copyright infringement claims for lack of personal jurisdiction where allegedly infringing work was developed and produced in California, filmed in California and British Columbia, and complaint failed to allege any connection between defendants' contacts with Georgia and infringement).

**B.    The SAC Fails to State a Claim Upon Which Relief Can be Granted**

Even if the Court could exercise personal jurisdiction over TPA (and it cannot), Plaintiffs' claims for copyright infringement (Count 1), contributory and/or vicarious copyright infringement (Count 2), accounting (count 3), false endorsement and false advertising (Count 4), and right of publicity (Count 5) must be dismissed because the SAC fails to state a claim for which relief can be granted.

1.    The Second Amended Complaint Fails to State Claims for Copyright Infringement and Contributory Copyright Infringement[2]

a.    ***The SAC Does Not Allege Ownership of a Copyright***

---

[2]Plaintiffs' accounting claim is a form of relief, not an independent cause of action, and therefore fails because Plaintiffs copyright infringement claims fail. *Johnson v. Pullman, Inc.*, 845 F.2d 911, 913 (11th Cir. 1988) ("Although plaintiffs' complaint contained a count in which an accounting was sought, that relief would not be available here absent some independent cause of action."). To the extent Georgia law recognizes an independent accounting claim, Plaintiffs' claim must be dismissed because the SAC fails to allege that the account in question is complicated or intricate. *See Anderson v. First Tenn. Bank, Nat'l Assn.*, 2018 WL 6818661, at *8-9 (N.D. Ga. Dec. 7, 2018).

Plaintiffs' copyright infringement claims must be dismissed because the allegations in the SAC fail to plausibly allege the most fundamental element of copyright infringement: ownership of a valid copyright. To state a claim for direct copyright infringement, a complaint must plausibly allege "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original."[3] *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 111 S. Ct. 1282, 1296 (1991).

Plaintiffs claim to own a 25 percent interest in the copyright to the Work based on the following chain of events:

- The copyright of the Work was originally registered in March of 1968 and renewed on January 11, 1996. SAC ¶ 3.
- Warner Chappell Music held a copyright interest in the Work. On December 31, 2014, Plaintiffs, on behalf of Hayes' heirs, allegedly terminated that copyright interest. *Id*. ¶ 4.
- Pursuant to the termination, Hayes' ownership of 50 percent of the composition in and to the Work reverted back to Hayes' Estate, and that interest was then transferred to Hayes Enterprises. *Id*. ¶ 5.
- Hayes Enterprises assigned half of its interest to a third-party entity known as Primary Wave, resulting in each owning 25 percent of the copyright. *Id*. ¶ 6.

---

[3] Notably, and as already discussed above, every factual allegation against TPA expressly alleges unlawful conduct by *Trump* at events hosted by TPA. In particular, the SAC alleges that "Trump unlawfully performed the Work" (emphasis added) at six events held or sponsored by TPA. (Dkt. 70 ¶¶ 43-48.) As the SAC is devoid of any factual allegations that suggest TPA had any role in the decision to play the Work at any of the events or facilitated the playing of the Work at any event or is responsible for recording and posting the event online, the claim for copyright infringement must be dismissed against TPA for this independent basis as well. (*See generally id*.)

In other words, Plaintiffs' copyright ownership claim rests on Plaintiffs' assertions that (1) Plaintiffs validly terminated Warner Chappell Music's copyright interest in the Work pursuant to Section 304 of the Copyright Act, such that Hayes' 50 percent ownership interest reverted back to Hayes' Estate, and (2) Plaintiffs transferred Hayes' 50 percent ownership interest to Plaintiff Hayes Enterprises.

The problem with Plaintiffs' claim is that the Copyright Act sets forth specific requirements for the termination of transfers and licenses, including with respect to who may terminate such transfers and how such terminations are to be effectuated, and the SAC is devoid of factual allegations from which the Court could plausibly infer a valid termination by Plaintiffs. Specifically, Section 304 of the Copyright Act, which applies to termination of transfers and licenses granted before January 1, 1978 for copyrights secured before January 1, 1978, provides as follows:

> (1) In the case of a grant executed by a person or persons other than the author, termination of the grant may be effected by the surviving person or persons who executed it. In the case of a grant executed by one or more of the authors of the Work, termination of the grant may be effected, to the extent of a particular author's share in the ownership of the renewal copyright, by the author who executed it or, **if such author is dead, by the person or persons who, under clause (2) of this subsection, own and are entitled to exercise a total of more than one-half of that author's termination interest.**
>
> (2) Where an author is dead, his or her termination interest is owned, and may be exercised, as follows:
>
> (A) The widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren

of the author, in which case the widow or widower owns one-half of the author's interest.

(B) The author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower, in which case the ownership of one-half of the author's interest is divided among them.

(C) The rights of the author's children and grandchildren are in all cases divided among them and exercised on a per stirpes basis according to the number of such author's children represented; the share of the children of a dead child in a termination interest can be exercised only by the action of a majority of them.

(D) In the event that the author's widow or widower, children, and grandchildren are not living, the author's executor, administrator, personal representative, or trustee shall own the author's entire termination interest.

17 U.S.C. § 304(c)(1)-(2) (emphasis added). A termination is affected by serving an advance notice in writing upon the grantee, signed by all of those entitled to terminate the grant, stating the effective date of the termination, and the notice must be filed with the Copyright Office as a condition to it taking effect. *Id*. § 304(c)(4)(A).

Here, the allegations in the SAC do not plausibly allege that (1) Plaintiffs were entitled to exercise a total or more than one-half of Hayes' termination interest or (2) the grant was terminated in accordance with the written notice provisions of Section 304. With respect to Plaintiffs' entitlement to terminate the grant, the SAC simply alleges that "[o]n December 31, 2014, on behalf of Hayes - and his heirs -

-13-

Hayes Enterprises and Hayes III terminated the copyright interest of Warner Chappell Music in and to the underlying composition for the Work." SAC ¶ 4. But there are no allegations as to who these unspecified "heirs" are, nor are their allegations from which the Court can infer that these unspecified "heirs" validly conveyed their termination rights to Plaintiffs such that Plaintiffs were entitled to exercise more than one half of Hayes' termination interest. For example, the SAC is silent as to whether Hayes' widow was alive at the time of the termination, such that she would own half of Hayes' copyright in the Work pursuant to Section 304(c)(2)(A). The SAC is likewise silent as to whether Hayes had other children[4] and whether those other children validly conveyed their termination rights to Plaintiffs. Accordingly, the SAC does not include factual allegations from which this Court could plausibly infer that Plaintiffs "own and are entitled to exercise a total of more than one-half of [Hayes'] termination interest" as is required to validly terminate Warner Chappell Music's interest in the copyright. Plaintiffs claim should therefore be dismissed for failure to plausibly allege ownership of a valid copyright.

Separately, the SAC fails to plausibly allege that a notice of termination was filed with the Copyright Office and served on Warner Chappell Music, as is required to effectuate a termination pursuant to Section 304. There is no allegation that the

---

[4] As set forth in President Trump's *Brief in Support of Motion to Dismiss The Amended Complaint for Failure to State a Claim*, it is reported that Hayes had a total of eleven children, 14 grandchildren, and four great-grandchildren. (Dkt. 80-1 at 15.)

termination notice was provided in writing, nor is there any allegation that the notice was filed with the Copyright Office. *See* SAC ¶ 4 (alleging only that Hayes Enterprises and Hayes III terminated the copyright interest). Moreover, Plaintiffs did not attach a written notice to the SAC (or to any of the materials filed in support of their motion for preliminary injunction). (*See* Dkt. 29 ¶ 7 (alleging Isaac Hayes Enterprises filed notice to the US Copyright Office, Universal Music Publishing Group and Warner Chappell Music of the termination of several Isaac Hayes copyrights but failing to attach such notice).) Accordingly, the Court cannot plausibly infer from the allegations in the SAC that Plaintiffs validly terminated Warner Chappell Music's interest in the copyright.

In sum, because the SAC fails to plausibly allege ownership of a valid copyright, Plaintiffs claims for direct, contributory, and vicarious copyright infringement must be dismissed. *See Alwand-Vahand Jewelry Ltd. v. Lustour, Inc.*, 2022 WL 18780114, at *8 (N.D. Ga. Sept. 19, 2022) (noting plaintiff must allege direct infringement to state claims for contributory or vicarious infringement).

b.    ***The SAC Does Not Plausibly Allege any Wrongful Conduct on the Part of TPA***

Plaintiffs' claims against TPA for contributory and vicarious copyright infringement independently fail because the SAC fails to allege facts from which this Court could plausibly infer that TPA induced, caused or materially contributed to the alleged infringement, as is necessary to state a claim for contributory

DMS_US.368925823.2

infringement, or had the right and ability to supervise the infringing conduct, as is required to state a claim for vicarious infringement.

A claim of contributory infringement requires allegations that the defendant, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Casella v. Morris*, 830 F.2d 362, 365 (11th Cir. 1987) (quoting *Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); *see also Sony Corp v. Universal City*, 464 U.S. 417, 437, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) (recognizing that the Supreme Court has defined a contributory infringer as one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner."). Knowledge is an objective standard and requires that the alleged infringer "know, or have reason to know." *Id*. Vicarious liability attaches when the alleged infringer possesses the right and ability to supervise the infringing conduct and has an obvious and direct financial interest in the exploitation of the copyrighted materials. *Shapiro, Bernstein & Co. v. H.L. Green Co*., 316 F.2d 304, 307 (2d Cir. 1963).

Though the lines between contributory infringement and vicarious liability are not clearly drawn, these are two separate and distinct theories of liability adjudicated under different standards. *See Alwand-Vahan Jewelry Ltd. v. Lustour, Inc*., No. 1:21-cv-04615-ELR, 2022 WL 18780114, at *8 (N.D. Ga. Sept. 19, 2022). The SAC

nonetheless lumps these two claims together, alleging that all Defendants are liable for "contributory and/or vicarious copyright infringement of the composition" because "Defendants individually and collectively knew or should have known the use and exploitation of the Work infringed Plaintiffs rights under the Copyright Act, but they nevertheless encouraged, enabled, and or attempted to assist the other in circumventing the rights of Plaintiffs" and "Defendants received a direct financial benefit from the unauthorized use of the work." SAC ¶¶ 61-62. Not only are these allegations conclusory,[5] but this is precisely the type of shotgun pleading decried in the Eleventh Circuit as wreaking havoc on the judicial system, as the allegations combine multiple theories of liability into one cause of action and are aimed at "Defendants" collectively. *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). This alone necessitates dismissal. *See Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1209 (S.D. Fla. 2021) ("Given the Eleventh Circuit's holding that district courts are to dismiss shotgun pleadings as fatally defective, Plaintiffs' failure is dispositive.").

The sparse allegations in the SAC against TPA fail to plausibly support the inference that TPA "intentionally induced or materially contributed" to the alleged

---

[5] Notably, the SAC does not even include a conclusory allegation that any of the defendants had the right or ability to supervise the infringing conduct, as is required to state a claim for vicious liability. Thus, Plaintiffs vicious liability claims must be dismissed.

infringement or that TPA had the right or ability to supervise or control the alleged infringement. *Diaz v. Edi Korta, LLC*, 2024 WL 3425710, at *9-11 (S.D. Fla. July 15, 2024). The SAC alleges that **<u>Trump</u>** "unlawfully performed the Work" at six events hosted or sponsored by TPA and that recordings of these events are available online through third-party platforms, and that is the full extent of the factual allegations against TPA. SAC ¶¶ 43-48. There are no factual allegations suggesting that TPA knew Trump intended to perform the Work or had any role in selecting the Work to be played. There are no allegations that TPA took any affirmative step to encourage the infringement. And there are no allegations that TPA had the right or ability to control what Work was selected to be played during Trump's appearances at these events. At most, the allegations in the SAC suggest that TPA provided a third party with the opportunity to engage in wrongful conduct, but this allegation alone is insufficient to survive a motion to dismiss. *Diaz*, 2024 WL 3425710, at *10 (dismissing contributory infringement claim because the mere allegation that defendant provided a third party with an opportunity to engage in wrongful conduct is insufficient standing alone to survive a motion to dismiss). Thus, even accepting all factual allegations as true, Plaintiffs have failed to state a claim against TPA for contributory or vicarious copyright infringement and Count II should be dismissed.

      2.   <u>The Complaint Fails to State a Claim for False Endorsement and False Advertising</u>

Parroting the language of the Lanham Act, Count 4 alleges that "Defendants individually and collectively knew or should have known that unauthorized use of the Work infringed Plaintiffs rights under Section 43(a)(1)(A) of the Lanham Act . . . in that it is likely to or did cause confusion, mistake or deception as to the affiliation, connection, or association of Defendants with Plaintiffs; or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities." SAC ¶ 68.[6] While Plaintiffs' exact legal theory is unclear, it appears that Plaintiffs attempt to allege a false endorsement claim pursuant to Section 43(a) of the Lanham Act, which requires Plaintiffs to plausibly allege that (1) Plaintiffs hold a protectable trademark in the musical composition *Hold on I'm Coming* and (2) that consumers are likely to believe Plaintiffs sponsored or otherwise approved of Donald Trump's use of the composition as his political events. *See Webster v. Dean Guitars*, 955 F.3d 1270, 1278 (11th Cir. 2020); *Oliveira v. Frito–Lay, Inc.*, 251 F.3d 56 (2d Cir.2001). There are no such allegations in the SAC.

Numerous courts have held that where, as here, a plaintiff attempts to allege a false endorsement claim based on the use of a musical performance or composition, he or she must allege facts from which the Court can infer that the defendants used a distinctive or identifying feature associated with the plaintiff that merits protection

---

[6] While Plaintiffs caption Count 4 as a claim for "False Endorsement, False Advertising, and Contributory False Advertising," the SAC cites to Section 43(a) of the Lanham Act which concerns only false endorsement. SAC ¶ 68.

as a trademark, such as a distinctive voice or persona. *See, e.g.*, *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 64 (2d Cir. 2000) ("[A] musical composition cannot be protected as its own trademark under the Lanham Act. A contrary conclusion would allow any copyright claim for infringement of rights in a musical composition to be converted automatically into a Lanham Act cause of action."); *Oliveira v. Frito-Lay*, 251 F.3d 56, 62-63 (2d Cir. 2001) (holding use of recorded song alone not sufficient to sustain a claim of implied endorsement); *Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1059 (C.D. Cal. 2004) (granting motion to dismiss Lanham Act cause of action with respect to use of musical recording in commercial). In other words, unauthorized use of a musical composition standing alone is not enough to support a Lanham Act claim. *EMI Catalogue*, 228 F.3d at 64; *Butler*, 323 F. Supp. 2d at 1059.

Here, however, Plaintiffs' Lanham Act claim is based on nothing more than Defendants' alleged unauthorized use of the musical composition *Hold On I'm Coming* at various political events. There is no allegation that Defendants used the distinctive voice or persona of Hayes, nor is there any allegation that consumers associate the song *Hold On, I'm Comin*g with Hayes or Plaintiffs. In fact, the SAC alleges that the song was **co-written** by Hayes, not performed by him. Accordingly, there are no allegations in the SAC from which the Court could infer that Defendants used a distinctive characteristic associated with Hayes, such as his voice or persona,

as is required to state a Lanham Act claim for false endorsement. *See Henley v. DeVore*, 733 F. Supp. 2d 1144, 1166-67 (C.D. Cal. 2010) (noting in a false endorsement case, plaintiff must allege that the celebrity's persona was used, not just underlying musical composition); *Mobley v. Fermont-Langlais*, 705 Fed. Appx. 788, 792 (11th Cir. 2017) (dismissing trademark infringement claim where plaintiff failed to allege facts showing that "the names "Lola" and "Daisy," the cover art from her book, or [plaintiff's] outfit and skin color were sufficiently associated with her or her sister in the public mind that consumers were likely to be misled into associating them with the defendant's perfumes."). This claim should therefore be dismissed.

3.    The SAC Fails to State a Claim for Violation of the Right of Publicity

The SAC likewise fails to state a claim for violation of the right of publicity. Georgia has recognized four torts as falling under the right of publicity: intrusion upon the plaintiff's private affairs, public disclosure of embarrassing private facts, false light, and appropriation of plaintiff's name and likeness. *Bullard v. MRA Holding, LLC,* 740 S.E.2d 622, 750 (Ga. 2013). The SAC alleges that "Defendants individually and collectively knew or should have known that unauthorized use and exploitation of the Work infringed Plaintiff's right of publicity," and therefore appears to rely on misappropriation of Hayes' name and likeness as the foundation for the right of publicity claim. *See* SAC ¶ 73. Thus, to state a claim for which relief

-21-

can be granted, Plaintiffs must allege facts from which this Court can plausibly conclude that TPA appropriated Hayes' name and likeness, "whether such likeness be a photograph or other reproduction of the person's likeness," without the Plaintiffs' consent for financial gain. *Bullard*, 740 S.E. 2d at 626 (cleaned up). But as set forth above, the SAC alleges only that Defendants collectively used the Work without authorization; there is no allegation that they used Hayes' name or likeness, nor that consumers associate the Work with Hayes. Accordingly, Plaintiffs' right of publicity claim must be dismissed. *See, e.g.*, *Mobley v. Fermont-Langlais*, 705 Fed. Appx. 788, 791 (11th Cir. 2017) (dismissing complaint for failure to allege facts from which Court could infer that public would associate perfume names with plaintiff).

## V.    CONCLUSION

For the foregoing reasons, TPA respectfully requests that the Court grant this motion and dismiss all claims against TPA pursuant to Rule 12(b)(2) for lack of personal jurisdiction and/or Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

DMS_US.368925823.2

Dated:    February 14, 2025

FAEGRE DRINKER BIDDLE &
REATH LLP


*/Louis T. Perry/*

Louis T. Perry (*pro hac vice*)
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237 0300
Facsimile: (317) 237 1000
Louis.Perry@faegredrinker.com

Alex G. Pisciarino
NELSON MULLINS
alex.pisciarino@nelsonmullins.com
Georgia Bar No. 569773
201 17th Street NW, Suite 1700
Atlanta, GA 30363
404-322-6000
404-322-6050


Attorneys for Defendant TPA

DMS_US.368925823.2

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.


Dated:    February 14, 2025          FAEGRE DRINKER BIDDLE &
                                      REATH LLP


                                      */Louis T. Perry/*
                                      _____
                                      Louis T. Perry

                                      Attorney for Defendant TPA

DMS_US.368925823.2