# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **ISSAC HAYES ENTERPRISES, LLC,** a Georgia Domestic Limited Liability Company, and **ISSAC HAYES, III**, as representative of **THE ESTATE OF ISSAC HAYES**<br><br>**Plaintiffs,**<br><br>v.<br><br>**DONALD J. TRUMP,** individually, **DONALD J. TRUMP FOR PRESIDENT 2024, INC., TURNING POINT ACTION, INC.,** and **BTC, INC.,**<br><br>**Defendants.** | **Civil Action No. 24-CV-03639-TWT** |

## DEFENDANT BTC, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM OF LAW IN SUPPORT

Defendant BTC, Inc. ("BTC") respectfully moves this Court, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, to grant judgment on the pleadings as follows:

# I. INTRODUCTION

Isaac Hayes, III ("Hayes III"), as the representative of the Estate of Isaac L. Hayes, Jr. ("Hayes Estate"), and Isaac Hayes Enterprises, LLC (collectively "Plaintiffs") attempt to assert claims against BTC, a Delaware corporation with a principal place of business in Tennessee, for copyright infringement, accounting, false endorsement and violation of the right of publicity, based solely on Donald John Trump's alleged unauthorized use of the song *Hold On, I'm Coming* at a Bitcoin Conference held in Nashville, Tennessee on July 27, 2024.

Plaintiffs' claims against BTC are defective for failure to state a plausible claim upon which relief can be granted. As to Plaintiffs' copyright infringement claims, the allegations in the Second Amended Complaint ("SAC") fail to plausibly allege that Plaintiffs own a valid copyright to the musical composition *Hold On, I'm Coming*, co-written by Isaac Hayes, Jr. ("Hayes"), the father of "Hayes III". Absent plausible allegations of ownership, Plaintiffs' claims for direct copyright infringement and contributory/vicarious copyright infringement must be dismissed.

Moreover, Plaintiffs' copyright infringement claims against BTC are also defective because there are no allegations in the SAC from which the Court could infer that BTC itself engaged in any wrongful conduct. Each of Plaintiffs' allegations concerning BTC allege wrongful conduct on the part of Defendant Donald John Trump ("Trump"). The only allegation alleged against BTC in the

SAC states that Trump unlawfully performed the Work after his speech at the Bitcoin 2024 Conference in Nashville, Tennessee, on July 27, 2024. There are no additional factual allegations suggesting that BTC induced, caused or materially contributed to the alleged infringement, as is necessary to state a claim for contributory copyright infringement, or had the right and ability to supervise the infringing conduct, as is required to state a claim for vicarious copyright infringement.

Finally, Plaintiffs' remaining claims against BTC for accounting, false endorsement and violation of the right of publicity, which are all based on the same allegations that form the basis of Plaintiffs' copyright infringement claim, are not cognizable under applicable law. Therefore, the SAC fails to state cognizable claims against BTC, and Plaintiffs' claims should be dismissed for failure to state a claim upon which relief can be granted.

## II. FACTUAL ALLEGATIONS

Plaintiffs assert claims for copyright infringement, accounting, false endorsement and violation of the right of publicity against BTC and three other defendants arising out of defendants' allegedly unauthorized use of the musical composition "Home On, I'm Coming" co-written by Hayes (the "Work") at various campaign events for Donald John Trump. *See generally* SAC (Dkt. 70). According to the Complaint, the copyright in the Work was originally registered in March 1968 and renewed on January 11, 1996. *Id.* ¶ 3. On December 31, 2014, Hayes

Enterprises and Hayes III allegedly terminated the copyright interest of Warner Chappell Music in and to the composition and, as a result, Hayes Enterprises came to own 50% of the composition. *Id.* ¶¶ 4-5. Hayes Enterprises subsequently transferred half of its ownership interest to a third-party, resulting in Hayes Enterprises owning 25% of the composition. *Id.* ¶ 6. Hayes Enterprises allegedly owns all right and interest in Hayes' name and likeness, including two United States trademarks in the name "Isaac Hayes." *Id.* ¶ 7.

Defendant BTC is a Delaware corporation with a principal place of business in Tennessee. *Id.* ¶ 26. The SAC alleges that "Trump unlawfully performed the Work" at the Bitcoin 2024 Conference in Nashville, Tennessee on July 27, 2024. *Id.* ¶ 49. The SAC alleges that a recording of this event is available through an online platform on YouTube. *Id.* The SAC is devoid of any factual allegations that suggest BTC had any role in the decision to play the Work at the event or facilitate playing the Work or is responsible for recording and posting the event online. *See generally id.*

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the

substance of the pleadings and any judicially noticed facts." *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1340, 1344 (N.D. Ga. 2015) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) (citing FED. R. CIV. P. 12(c))).

"The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6)." Federal Rule 12(b)(6) allows a Court to "dismiss a pleading for 'failure to state a claim upon which relief can be granted.'" *Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc.*, 173 F. Supp. 3d 1324, 1327 (N.D. Ga. 2016) (citing FED. R. CIV. P. 12(b)(6)), *aff'd*, 708 F. App'x 684 (Fed. Cir. 2018). "A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal *theory*." *Mobile Telecomms. Techs., LLC*, 173 F. Supp. 3d at 1327 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 2002), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). "In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true." *Mobile Telecomms. Techs., LLC*, 173 F. Supp. 3d at 1327-28 (citing *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir. 1993)).

## IV. <u>ARGUMENT</u>

**A. The Second Amended Complaint fails to state a claim upon which relief can be granted.**

Plaintiffs' claims for copyright infringement, contributory and/or vicarious copyright infringement, accounting, false endorsement and false advertising and right of publicity must be dismissed because the SAC fails to state a claim for which relief can be granted.

**1. The Second Amended Complaint fails to state claims for copyright infringement, contributory copyright infringement and accounting.**

Plaintiffs' copyright infringement claims must be dismissed because the allegations in the SAC fail to plausible allege the most fundamental element of copyright infringement – ownership of a valid copyright.

To state a claim for direct copyright infringement, a complaint must plausibly allege "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). The Plaintiffs' claim of 25% ownership of the valid copyright to the Work is based on the following:

1. The copyright of the Work was originally registered in March of 1968 and renewed on January 11, 1996. Dkt. 70 ¶ 3.
2. Warner Chappell Music held a copyright interest in the Work. On December 31, 2014, Plaintiffs, on behalf of Hayes' heirs, allegedly terminated their copyright interest. *Id.* ¶ 4.
3. Pursuant to the termination, Hayes' ownership of 50% of the composition in and to the Work reverted back to the Hayes' Estate, and that interest was then transferred to Hayes Enterprises. *Id.* ¶ 5.
4. Hayes Enterprises assigned half of its interest to a third-party entity known as Primary Wave, resulting in each owning 25% of the copyright. *Id.* ¶ 6.

6

Plaintiffs' copyright ownership claims rests entirely on Plaintiffs' assertions that (1) Plaintiffs validly terminated Warner Chappel Music's copyright interest in the Work pursuant to Section 304 of the Copyright Act, such that Hayes' 50% ownership interest reverted back to Hayes' Estate, and (2) Plaintiffs transferred Hayes' 50% ownership interest to Plaintiff Hayes Enterprises.

However, the Copyright Act specifically states who may terminate transfers and licenses and how such terminations are to be effectuated. The SAC is entirely devoid of factual allegations from which the Court could plausibly infer a valid termination by the Plaintiffs. Specifically, Section 304 of the Copyright Act, which applies to terminations of transfers and licenses granted before January 1, 1978 for copyright secured before January 1, 1978, provides as follows:

(1) In the case of a grant executed by a person or persons other than the author, termination of the grant may be effected by the surviving person or persons who executed it. In the case of a grant executed by one or more of the authors of the Work, termination of the grant may be effected, to the extent of a particular author's share in the ownership of the renewal copyright, by the author who executed it or, if such author is dead, by the person or persons who, under clause (2) of this subsection, own and are entitled to exercise a total of more than one-half of that author's termination interest.
(2) Where an author is dead, his or her termination interest is owned, and may be exercised, as follows:
  (A) The widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest.
  (B) The author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower, in which case the

7

> ownership of one-half of the author's interest is divided among them.
> (C) The rights of the author's children and grandchildren are in all cases divided among them and exercised on a per stirpes basis according to the number of such author's children represented; the share of the children of a dead child in a termination interest can be exercised only by the action of a majority of them.
> (D) In the event that the author's widow or widower, children, and grandchildren are not living, the author's executor, administrator, personal representative, or trustee shall own the author's entire termination interest.

17 U.S.C. § 304(c)(1)-(2). A termination is effected by serving an advance notice in writing upon the grantee, signed by all of those entitled to terminate the grant, stating the effective date of the termination, and the notice must be filed with the Copyright Office as a condition to it taking effect. *Id*. § 304(c)(4)(A).

Here, the allegations in the SAC do not plausibly allege that (1) Plaintiffs were entitled to exercise a total or more than one-half of Hayes' termination interest or (2) the grant was terminated in accordance with the written notice provisions of Section 304. With respect to Plaintiffs' entitlement to terminate the grant, the SAC simply alleges that "[o]n December 31, 2014, on behalf of Hayes – and his heirs – Hayes Enterprises and Hayes III terminated the copyright interest of Warner Chappell Music in and to the underlying composition for the Work." Dkt. 70 ¶ 4. Yet, there are no allegations as to who these unspecific "heirs" are, nor are there allegations from which the Court can infer that these unspecified "heirs" validly

conveyed their termination rights to Plaintiffs such that Plaintiffs were entitled to exercise more than one-half of Hayes' termination interest.

The SAC fails to mention whether Hayes' widow was alive at the time of the termination, such that she would own half of Hayes' copyright in the Work pursuant to Section 304(c)(2)(A). Additionally, the SAC fails to mention whether Hayes had other children and whether those other children validly conveyed their termination rights to Plaintiffs. Accordingly, the SAC does not include factual allegations from which the Court could plausibly infer that Plaintiffs "own and are entitled to exercise a total of more than one-half of [Hayes'] termination interest" as is required to validly terminate Warner Chappell Music's interest in the copyright.

Moreover, the SAC fails to plausibly allege that a notice of termination was filed with the Copyright Office and served on Warner Chappell Music, as is required to effectuate a termination pursuant to Section 304. There are only bare conclusory allegations that Hayes Enterprises and Hayes III terminated the copyright interest. Dkt. 70 ¶ 4. Plaintiffs also failed to attach a written notice to the SAC or to any of the subsequent materials filed in support of its various motions and pleadings. *See* Dkt. 29 ¶ 7 (alleging Isaac Hayes Enterprises filed notice to the US Copyright Office, Universal Music Publishing Group and Warner Chappell Music of the termination of several Isaac Hayes copyrights but failing to attach such notice). Thus, the Court cannot plausibly infer from the Plaintiffs' allegations that Plaintiffs validly

9

terminated Warner Chappel Music's interest in the copyright. Therefore, Plaintiffs' claims should be dismissed for failure to plausibly allege ownership of a valid copyright.

Plaintiffs' claims against BTC for contributory and vicarious copyright infringement fail because Plaintiffs fail to allege facts from which the Court could plausibly infer that BTC induced, caused or materially contributed to the alleged infringement, as is necessary to state a claim for contributory infringement, or had the right and ability to supervise the infringing conduct, as is required to state a claim for vicarious infringement.

A claim of contributory infringement requires allegations that the defendant, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Casella v. Morris*, 830 F.2d 362, 365 (11th Cir. 1987) (quoting *Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); *see also Sony Corp v. Universal City*, 464 U.S. 417, 437 (1984) (recognizing that the Supreme Court has defined a contributory infringer as one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner."). Knowledge is an objective standard and requires that the alleged infringer "know, or have reason to know." *Id*. Vicarious liability attaches when the alleged infringer possesses the right and ability to supervise the infringing conduct and has an obvious

10

and direct financial interest in the exploitation of the copyrighted materials. *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963).

Though the lines between contributory infringement and vicarious liability are not clearly drawn, these are two separate and distinct theories of liability adjudicated under different standards. *See Alwand-Vahan Jewelry Ltd.*, 2022 WL 18780114, at *8. Yet, the Plaintiffs lump these two claims together, alleging that all Defendants are liable for "contributory and/or vicarious copyright infringement of the composition" because "Defendants individually and collectively knew or should have known the use and exploitation of the Work infringed Plaintiffs rights under the Copyright Act, but they nevertheless encouraged, enabled, and or attempted to assist the other in circumventing the rights of Plaintiffs" and "Defendants received a direct financial benefit from the unauthorized use of the work." Dkt. 70 ¶¶ 61-62.

Not only are these allegations conclusory, but this is precisely the type of shotgun pleading decried in the Eleventh Circuit as wreaking havoc on the judicial system, as the allegations combine multiple theories of liability into one cause of action and are aimed at "Defendants" collectively. *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). This alone necessitates dismissal. *See Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1209 (S.D. Fla. 2021) ("Given the Eleventh Circuit's holding that

11

district courts are to dismiss shotgun pleadings as fatally defective, Plaintiffs' failure is dispositive.").

The sparse allegations in the SAC against BTC fail to plausibly support the inference that BTC "intentionally induced or materially contributed" to the alleged infringement or that BTC had the right or ability to supervise or control the alleged infringement. *Diaz v. Edi Korta, LLC*, 2024 WL 3425710, at *9-11 (S.D. Fla. July 15, 2024).

Plaintiffs allege that Trump "unlawfully performed the Work" at the Bitcoin 2024 Conference in Nashville, Tennessee and that is the only factual allegation of BTC's alleged infringement. Dkt. 70 ¶ 49. There are no factual allegations suggesting that BTC knew Trump intended to perform the Work or materially contributed to selecting the Work to be played. There are no factual allegations that BTC took any affirmative step to encourage the infringement or that BTC had the sole right and ability to control what Work was selected to be played during Trump's appearance at the event in Nashville, Tennessee.

At most, the allegations in the SAC suggest that BTC provided a third-party with the opportunity to engage in wrongful conduct, but this allegation alone is insufficient to survive a motion to dismiss. *Diaz*, 2024 WL 3425710, at *10 (dismissing contributory infringement claim because the mere allegation that defendant provided a third party with an opportunity to engage in wrongful conduct

12
SGR/80001845.1

is insufficient standing alone to survive a motion to dismiss). Therefore, even after accepting all factual allegations as true, Plaintiffs have failed to state a claim against BTC for contributory or vicarious copyright infringement, and these claims should be dismissed.

Finally, Plaintiffs' accounting claim is a form of relief, not an independent cause of action, and therefore fails because Plaintiffs' copyright infringement claims fail. *Johnson v. Pullman, Inc.*, 845 F.2d 911, 913 (11th Cir. 1988) ("Although plaintiffs' complaint contained a count in which an accounting was sought, that relief would not be available here absent some independent cause of action.") To the extent Georgia law recognizes an independent accounting claim, Plaintiffs' claim must be dismissed because the SAC fails to allege that the account in question is complicated or intricate. *See Anderson v. First Tenn. Bank, Nat'l Assn.*, 2018 WL 6818661, at *8-9 (N.D. Ga. Dec. 7, 2018).

**2. The Second Amended Complaint fails to state a claim for false endorsement and false advertising.**

Plaintiffs allege that:

> Defendants individually and collectively knew or should have known that unauthorized use of the Work infringed Plaintiffs' rights under Section 43(a)(1)(A) of the Lanham Act … in that it is likely to or did cause confusion, mistake or deception as to the affiliation, connection, or association of Defendants with Plaintiffs; or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities.

13

Dkt. 70 ¶ 68. A false endorsement claim pursuant to Section 43(a) of the Lanham Act requires Plaintiffs to plausibly allege that (1) Plaintiffs hold a protectable trademark in the musical composition of the Work and (2) that consumers are likely to believe Plaintiffs sponsored or otherwise approved of Trump's use of the composition at his political events. *See Webster v. Dean Guitas*, 955 F.3d 1270, 1278 (11th Cir. 2020). As expected, there are no such allegations in the SAC.

Additionally, numerous courts throughout the country have held that where, as here, a plaintiff attempts to allege a false endorsement claim based on the use of a musical performance or composition, he or she must allege facts from which the Court can infer that the defendants used a distinctive or identifying feature associated with the plaintiff that merits protection as a trademark, such as a distinctive voice or persona. *See, e.g., EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000) ("[A] musical composition cannot be protected as its own trademark under the Lanham Act. A contrary conclusion would allow any copyright claim for infringement of rights in a musical composition to be converted automatically into a Lanham Act cause of action."); *Oliveira v. Frito-Lay*, 251 F.3d 56, 62-63 (2d Cir. 2001) (holding use of recorded song alone not sufficient to sustain a claim of implied endorsement); *Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1059 (C.D. Cal. 2004) (granting motion to dismiss Lanham Act cause of action with respect to use of musical recording in commercial). Unauthorized use of a

musical composition standing alone is not enough to support a Lanham Act claim. *EMI Catalogue*, 228 F.3d at 64; *Butler*, 323 F. Supp. 2d at 1059.

Plaintiffs' Lanham Act claim is based on nothing more than an alleged unauthorized use of the musical composition by the Defendants at the Bitcoin 2024 Conference. The SAC fails to allege that Defendants used the distinctive voice or persona of Hayes, nor is there any allegation that consumers now associate the Work with Hayes or Plaintiffs in relation to Defendants. The SAC does not contain any allegations that consumers now associate the Work with the Defendants. Additionally, the SAC alleges that the song was co-written by Hayes, not performed by him. Dkt. 70 ¶ 2. There are no allegations in the SAC that the Court could infer that Defendants, and specifically BTC, used a distinctive characteristic associated with Hayes, such as his voice or persona, as required to state a Lanham Act claim for false endorsement. *See Henley v. DeVore*, 733 F. Supp. 2d 1144, 1166-67 (C.D. Cal. 2010) (noting in a false endorsement case, plaintiff must allege that the celebrity's persona was used, not just underlying musical composition); *Mobley v. Fermont-Langlais*, 705 Fed. Appx. 788, 792 (11th Cir. 2017) (dismissing trademark infringement claim where plaintiff failed to allege facts showing that "the names 'Lola' and 'Daisy,' the cover art from the book, or [plaintiff's] outfit and skin color were sufficiently associated with her or her sister in the public mind that consumers were likely to be misled into associating them with the defendant's perfumes.").

15

Thus, Plaintiffs' claim for false endorsement, false advertising and contributory false advertising should be dismissed.

### 3. The Second Amended Complaint fails to state a claim for violation of the right of publicity.

The SAC also fails to state a claim for violation of the right of publicity. Georgia has recognized four torts as falling under the right of publicity: intrusion upon the plaintiff's private affairs, public disclosure of embarrassing private facts, false light, and appropriation of plaintiff's name and likeness. *Bullard v. MRA Holdings, LLC*, 740 S.E.2d 622, 750 (Ga. 2013).

The Plaintiffs allege that "Defendants individually and collectively knew or should have known that unauthorized use and exploitation of the Work infringed Plaintiff's right of publicity," and therefore appears to rely on misappropriation of Hayes' name and likeness as the foundation for the right of publicity claim. *See* Dkt. 70 ¶ 73. To survive a motion to dismiss, Plaintiffs must allege facts from which the Court can plausibly conclude that BTC appropriated Hayes' name and likeness, "whether such likeness be a photograph or other reproduction of the person's likeness," without the Plaintiffs' consent for financial gain. *Bullard*, 740 S.E.2d at 626. But the SAC only alleges that Defendants collectively used the Work without authorization and fails to mention how BTC used Hayes' name or likeness or that consumers associate the Work with Hayes and Defendants. Therefore, since

16

Plaintiffs fail to allege facts from which the Court could infer that the public would associate the Work with Defendants, Plaintiffs' right of publicity claim against BTC must be dismissed. *See, e.g. Mobley*, 705 Fed. Appx. at 791.

## V. CONCLUSION

For the foregoing reasons, BTC respectfully requests that the Court grant this Motion for Judgment on the Pleadings and dismiss all claims against BTC pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*/s/ Jeremey R. Goolsby*
Jeremey R. Goolsby (*Pro Hac Vice*)
FROST BROWN TODD LLP
150 3rd Ave. South, Suite 1900
Nashville, TN 37201
(615) 251-5583 (Direct)
(615) 251-5551 (Fax)
jgoolsby@fbtlaw.com

Daniel A. Murray
Georgia Bar No. 443852
FROST BROWN TODD LLP
2101 Cedar Springs Rd., Suite 900
Dallas, Texas 75201
(214) 580-5853 (Direct)
(214) 545-3473 (Fax)
dmurray@fbtlaw.com

*and*

Matthew P. Warenzak
Georgia Bar No. 624484

        SMITH, GAMBRELL & RUSSELL, LLP
1105 West Peachtree Street, NE, Suite 1000
Atlanta, Georgia 30309
Telephone: (404) 815-3564
Facsimile: (404) 685-6864
mwarenzak@sgrlaw.com

*Attorneys for Defendant BTC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using 14-point Times New Roman font.

*/s/ Jeremey R. Goolsby*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2025, I electronically filed a true and correct copy of the foregoing with the Clerk of Court via CM/ECF, which shall cause service on all counsel of record.

*/s/ Jeremey R. Goolsby*

0134810.0793895  4905-4691-6383v2