## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ISAAC HAYES ENTERPRISES, LLC,** a Georgia Domestic Limited Liability Company, and **ISAAC HAYES, III**, as representative of the **ESTATE OF ISAAC L. HAYES, JR.** | **JURY TRIAL DEMANDED** **CASE NO:** 1:24-cv-03639-TWT |
| **Plaintiffs,** v. | |
| **DONALD JOHN TRUMP**, individually, **DONALD J. TRUMP FOR PRESIDENT 2024, INC.**, **TURNING POINT ACTION, INC.**, and **BTC, INC.,** | |
| **Defendants.** | |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TURNING POINT ACTION, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COME Plaintiffs, Isaac Hayes Enterprises, LLC and The Estate of Isaac L. Hayes, Jr. (collectively, "Plaintiffs"), who by and through their representative, Isaac Hayes, III, and counsel of record, file this Memorandum in Opposition to Defendant Turning Point Action, Inc. (hereinafter "TPA")'s Motion to Dismiss Plaintiffs' Second Amended Complaint, showing the Court as follows:

### I.     INTRODUCTION AND DEFENDANTS' MOTION TO DISMISS

As discussed in detail within Plaintiffs' response to the Trump Defendants' Motion to Dismiss, this is not a complicated case. The question before the Court is a simple one, did the defendants, including but not limited to TPA, use the Plaintiffs'

property without permission. If the defendants could properly defend themselves against these actions, they could do so with the simple introduction of a valid license to use the property at issue. Instead, the defendants in this action are being stubbornly litigious and wasting the time and resources of both this Court and the Plaintiffs by needlessly increasing the cost of litigation by papering the Plaintiffs with meritless procedural motions, that do nothing more than deflect from the obvious merits of this case, **that they have violated Plaintiffs' property rights**. TPA has done this by filing a nearly identical motion to that of the Trump Defendants, and the addition of a baseless challenge to personal jurisdiction that cannot be legally granted, under Georgia law. In filing and proceeding with the instant motion, TPA has declined to litigate this case, they have not served any discovery to address the alleged "issues," and they have outright ignored the developing record in this matter, the copyright offices' public records regarding the property at issue, and repeated requests that they withdraw their motion pursuant to Federal Rule of Civil Procedure, Rule 11.

TPA brings their Motion to Dismiss (hereafter "Motion") pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Similar to the motion filed by the Trump defendants, TPA is seeking dismissal of all of Plaintiffs' claims arising under 17 U.S.C. §§ 101 et seq. (The Copyright Act), and under 15 U.S.C. 1125(a)(1)(A)/Section 43(a) of the Lanham Act, and or dismissal based on a lack of personal jurisdiction. In effect, this motion is another attempt by the Defendants to avoid liability and obtain dismissal based on technicalities rather than let the

discovery process, which is open, fill in the details, **<u>contradictory to what the law proscribes</u>**.[1]

## II.    <u>PROCEDURAL POSTURE</u>

Plaintiffs filed their original complaint with this Court on August 16, 2024, alleging Copyright and Lanham act infringement, as well as a common law right of publicity violation. On the same day, Plaintiffs filed a request for an emergency preliminary injunction against <u>all defendants</u>, to stop them from using Plaintiffs' property without permission.

On August 19, 2024, Plaintiffs filed forms AO 120 and AO 121 to notify the Patent and Trademark Office and the Copyright Office, respectively, of claims related to the property mentioned thereon. The copyright mentioned on form AO 121 was RE0000734375, which is a version of the work that was registered in 1968, which is NOT the initial or first registration.

Plaintiffs filed their first amended complaint and amended motion for an emergency preliminary injunction on August 21, 2024, asserting largely the same allegations.

On September 3, 2025, the Court held a hearing on the emergency motion and granted the parties request with respect to Defendants Donald John Trump and Donald J. Trump for President 2024, Inc., and barring them from all future use of the copyrighted work without a valid license. In its Opinion and Order, the Court concluded, based upon unrebutted evidence, that Plaintiffs had met their burden of

---

[1] (*Edelschick v. Blancfhard*, 177 Ga. App. 410, 339 S.E.2d 628 (1985).)

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TPA'S MOTION TO DISMISS

demonstrating a valid ownership interest in "Hold On, I'm Comin." [Id. at pg. 4-5.]
That same evidence is incorporated by reference into the SAC. (SAC at ¶¶ 3-4.)

On December 11, 2025, Plaintiffs filed their second amended complaint
asserting the same causes of action, dismissing parties, updating the identities of
Plaintiffs' counsel (due to a change in and addition of new counsel), and correcting
known errors regarding the claimed copyright, specifically removing claims therein
related to the sound recording.

On January 8, 2025, Defendant BTC, Inc. filed an answer to the second
amended complaint ("SAC"). The same day Defendants Donald John Trump and
Donald J. Trump for President 2024, Inc., filed a motion to dismiss the SAC. The
motion to dismiss challenged Plaintiffs' standing under the Copyright Act on the
basis of ownership, and it sought the dismissal of Plaintiffs' Copyright and Lanham
act claims, as well as their claim for an equitable accounting on the grounds the same
is not permitted under Georgia law.

On February 3, 2025, Plaintiffs filed their Certificate of Interested Persons and
Corporate Disclosure Statement disclosing the identities of each owner/member of
Plaintiff Isaac Hayes Enterprises, LLC – which happen to be all the known heirs to
the estate of Isaac Hayes, Jr. (Plaintiff). The same day Plaintiffs filed an updated/new
form AO 121, to reflect the correct copyright registration number for the first
registration of the work in 1966 (EU0000928718), and its related 1994 renewal
registration number (RE0000654638). Plaintiffs likewise filed a request that the
Court take judicial notice of all public records related to the correct registrations,
including but to limited to the records of the termination of all interests of various

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TPA'S MOTION TO DISMISS

grantees in and to the copyrighted work. Records that show the who, what, when, and where related to the termination, including but not limited to who signed the same – which included Hayes, Jr.'s, case specific, infamous Widow.

On February 5, 2025, Plaintiffs filed a memorandum in opposition to the Trump Defendants' motion to dismiss, setting forth in detail therein the substance and location of the relevant public records, including but not limited to how to navigate the public database so that all defendants and the Court could individually dispel any further questions regarding the chain of title and Plaintiffs' ownership. Plaintiffs' memorandum further informed the Court of the fact that a Lanham Act claim rooted in a writer's persona is a matter of first impression for the Court, and thus, not a proper subject suitable for disposition on a procedural motion; and, it dispels the argument asserted by the Trump Defendants in relationship to Plaintiffs' request for an equitable accounting, <u>as a matter of Georgia law</u>.

On February 14, 2025, TPA filed a motion to dismiss the SAC, that despite the developing record, asserts the same Copyright and Lanham act arguments as the Trump Defendants, and that challenges the Court's Jurisdiction over TPA. Specifically, TPA challenges the Plaintiffs' ownership despite the public records, and all the undisputable and undisputed information within the Court's Record related thereto. TPA challenges the Court's jurisdiction, despite undisputed and undisputable allegations of it conducting business in Georgia, and undisputable knowledge that this Court MUST take those allegations as true; and TPA attempts to dispose of a matter of first impression on an improper procedural basis, rather than properly via a ruling based on the merits.

On February 17, 2025, **Plaintiffs' Motion for Judicial Notice went unopposed by all defendants <u>and may now be granted on that basis alone</u>**.[2] Further, Plaintiffs informed all parties at their Rule 26(f) Conference of their intent to seek sanctions for Turning Points' frivolous motion to dismiss and any others later filed that continued to assert baseless challenges to ownership and or the SAC, as a whole. As for TPA, Plaintiffs stated expressly therein the specific basis for rule 11 sanctions. TPA declined to discuss the issue at the conference and demanded to speak about the issue on a separate call.

On February 21, 2025, the Plaintiffs and Turning Point had a call to discuss their believed basis for sanctions:

1) <u>Personal Jurisdiction</u>. Plaintiffs believe Turning Point Action's challenge to personal jurisdiction lacks merit and has been improperly asserted merely for purposes of delay and or harassment. First, on a motion to dismiss based on jurisdiction, in the 11th circuit and Northern District of Georgia, the Court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony. Second, Plaintiffs allege within the complaint at paragraph thirty-one (31), that Turning Point regularly conducts business in Georgia. This fact was not contradicted by Turning Point byway of any affidavits; therefore, the Court must construe those facts as true and deny Turning Points' motion. Third, even where an affidavit had been provided, under Georgia's Long Arm Statute personal jurisdiction may be exercised over a non-resident defendant where the defendant transacts <u>any</u> business in Georgia, the business need not be related to the alleged injury. As we have said multiple times now, Plaintiffs know and it is public knowledge that Turning Point conducts business in GA. Likewise, that same business activity (grassroots political activity within the state of Georgia, such as college coalition chapters, canvassing, and various political events)

---

[2] (*See Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 2012 U.S. Dist. LEXIS 171600 (N.D. Ga. 2012).)

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TPA'S MOTION TO DISMISS

will satisfy the federal due process requirements for general jurisdiction over Turning Point because that business is continuous and systematic. Further, it is settled in our Court that a plaintiff can establish minimum contacts through a defendant's contacts within the forum state that are unrelated to the litigation. (*See Moon v. Williams*, No. 1:23-CV-4193-MHC, 2024 U.S. Dist. LEXIS 160113, at *13-14 (N.D. Ga. Apr. 2, 2024).)

2) <u>Ownership</u>. Plaintiffs believe challenges to ownership based on the termination rights, lack merit and have been improperly asserted merely for purposes of delay and or harassment. The termination records are public documents, and they establish that the termination was lawfully conducted and recorded as required by the applicable statutes. Hayes Enterprises and Hayes Jr. 's Widow were the individuals that signed the termination, but as alleged Hayes Enterprises had the sole legal right to terminate because the entity is owned by the beneficiaries of Hayes Jr.'s Estate. (*See* Plaintiff's Request for Judicial Notice).

3) <u>Plaintiffs' False Endorsement Claim.</u> This claim cannot be disposed of by way of a motion to dismiss because it is a matter of first impression for this Court. Further, paragraph thirty-eight (38) of the second amended complaint contains the factual allegations that Turning Point falsely asserts have not been pleaded within the complaint.

Thereon Plaintiffs indicated that discovery was open and that they were happy to provide any documents TPA needed, upon request that would facilitate its withdrawal of its motion to dismiss and or any basic questions it may have regarding ownership. Plaintiffs likewise asked, if TPA was asserting that it did not do business in Georgia, contrary to what was alleged within the SAC. TPA refused to respond or attest to the same and merely sated it did not believe Plaintiffs asserted enough facts <u>to prove a prima facie</u> case for jurisdiction, something that is legally, under established law, <u>NOT Plaintiffs' burden</u>.

On February 27, 2025, TPA expressly declined to withdraw its motion to dismiss, and agreed to an additional 14-day extension, in addition to that agreeable to all parties as reflected in the parties' joint consent motion filed on <u>February 20, 2025</u>. Turning Point granted this extension as a shield to "accommodate" the drafting of a sanctions motion, and the 21-day safe harbor provisions. It is important to note that this is deemed a shield and strategic delay because TPA has, at the time of the drafting of that motion – that was delivered to it on <u>March 6, 2025</u>, already had the benefit of at least <u>21 days</u> to consider the specific grounds set forth by the motion, and they will receive far more than the required 21 days provided for in the statue, because of their strategic unwillingness to operate in good faith.

On March 10, 2025, Plaintiffs served requests for admission on TPA regarding its known business presence in Georgia, and the copyright offices' public records. TPA's responses to the same are due on or before <u>April 9, 2025</u>, **after the hearing on this matter**.

TPA has not taken advantage of the benefit of the investigation procedures available to it, discovery, and or the available public records, to resolve the "issues" presented by their motion to dismiss. As such, Plaintiffs are needlessly burdened by the necessity to file and draft the instant response in opposition to TPA's meritless motion to dismiss. As such, Plaintiffs motion for sanctions will follow on <u>March 20, 2025</u>, **unless the instant motion to dismiss is withdrawn**.

[CONTINUED ON NEXT PAGE]

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TPA'S MOTION TO DISMISS

### III.   <u>STATEMENT OF LAW</u>

#### A.  <u>*Federal Rule 12(b)(2)*</u>

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." (*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted).) A prima facie case exists where the plaintiff presents <u>enough evidence to survive a motion for a directed verdict</u>. (*Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (emphasis added).)

"The district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." (*Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).) If the nonresident defendant challenges jurisdiction and supports the challenge with affidavit evidence, <u>the burden shifts back to the plaintiff to produce evidence supporting jurisdiction</u>. (*Diamond Crystal*, 593 F.3d at 1257.) "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." (*See Moon v. Williams*, No. 1:23-CV-4193-MHC, 2024 U.S. Dist. LEXIS 160113, at *5 (N.D. Ga. Apr. 2, 2024).) "Additionally, the plaintiff enjoys a "qualified" right to jurisdictional discovery if the motion is timely filed and the plaintiff explains how discovery would bolster its case." (*Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982).)

"If a complaint contains facts giving rise to a reasonable inference that the court has jurisdiction over the defendant, a motion to dismiss pursuant to Rule

12(b)(2) generally [must] be denied." (*See Weinstock v. Gannett, Inc*., CIVIL ACTION NO. 1:00-CV-2935-ODE, 2001 U.S. Dist. LEXIS 17916, at *4 (N.D. Ga. June 20, 2001).)

### B. *Federal Rule 12(b)(6)*

As stated in Plaintiffs' response to Trump's Motion, a plaintiff need not prove any facts to survive a 12(b)(6) motion to dismiss, rather the plaintiff merely needs to persuade the court that the facts set forth within the complaint at issue, are sufficient to state a claim to relief that is facially plausible, <u>if they are taken as true and construed in favor of the plaintiff</u>. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009)(when evaluating a Rule 12(b)(6) motion the court must "[accept] the allegations in the complaint as true and [construe] them in the light most favorable to the plaintiff"). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Belanger,* 556 F.3d at 1155.) Whether a specific count of a complaint "states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense," (*Iqbal*, 556 U.S., at 663.) The Court is not bound, however, to accept legal conclusions as true. (*Iqbal*, 556 U.S. at 678–79.)

At the pleading stage, the controlling case law calls for Plaintiffs <u>to show merely enough facts to raise a reasonable expectation that discovery will reveal evidence of the claims.</u> (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added).) A probability requirement is not imposed at the pleading stage.

(*Id.*) In other words, Plaintiff need not show a likelihood of success on the merits. A "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" (*Id.*)

Once again, a complaint should not be dismissed pursuant to 12(b)(6), unless it appears beyond doubt that Plaintiff can set forth no facts in support of their claim that would entitle them to relief. (*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)(dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action"); *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").) Outright dismissal is only appropriate when proceeding to discovery or beyond would be futile. (*Twombly* at 577.)

### IV.    STATEMENT OF RELEVANT FACTS

#### A. *Personal Jurisdiction*

TPA falsely claims the SAC does not contain any jurisdictional allegations specifically directed at TPA or that concern TPA's specific contacts with Georgia, and that claim is entirely false. ([Doc 92 pg. 4.]) Plaintiffs assert at paragraph 31 of the SAC that Defendants (which includes Turning Point), their agents, and/or their personal representative (which expressly include, by way of paragraph 27 of the SAC, each of the remaining Defendants) **regularly conduct business in Georgia, including conducting such business through performing rights organizations**

**located in Georgia and by entering into contracts that are consummated and/or**

**performed in Georgia**. (*See* [Doc. 70 at ¶¶ 27 and 31.])

B. *Ownership*

Turning Point falsely claims the SAC does not allege a plausible claim of ownership, which as discussed in detail herein and within Plaintiffs' opposition to the Trump Defendants' motion to dismiss, is a standing issue that is entirely false.[3] Regarding statements of facts related to the ownership of the property at issue or the corporate structure of the Hayes Family, Plaintiffs hereby reallege and restate that which is within the response to Trump's Motion [Doc. 90]. Plaintiffs find it a waste of judicial time and resources to restate those arguments fully herein.

In summary, Plaintiffs SAC sets forth a TRUE short and plain statement of ownership, specifically that "[o]n December 31, 2014, on behalf of Hayes - and his heirs - Hayes Enterprises and Hayes III terminated the copyright interest of Warner Chappell Music in and to the underlying composition for the Work." (*See* [Doc. 70 at ¶ 4.]) And "[p]ursuant to the termination of copyright, as of March 15, 2022, Hayes ownership of 50 percent (%) of the composition, in and to the Work reverted to the Hayes' Estate." (*See* [Doc. 70 at ¶ 5.])

Isaac Hayes, III, is a party to this case in his capacity, as the designated representative for the Estate of Isaac Hayes, Jr. (the "Estate"), including but not limited to all known heirs of the same. (SAC at pg. 1.) And, as stated within his

---

[3] When standing is raised by a motion to dismiss it is treated as a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. (*Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278, 1281 (N.D. Ga. 2023).) Whereas here, a motion stands for the proposition that an injury in fact is factually impossible, a district court may consider extrinsic evidence and weigh it to satisfy itself as to the existence of its power to hear the case. (*Hall*, at 1281-82.)

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TPA'S MOTION TO DISMISS

declaration in this matter, which is within the Court record and incorporated into the SAC by reference at paragraph four (4), as the President and CEO for Plaintiff Hayes Enterprises, LLC. (Doc. 29 at ¶ 1.)

C. *Specific Allegations Against Turning Point*

TPA falsely claims that the SAC does not allege any facts from which the court may infer that it induced, caused, materially contributed to, and or supervised the alleged infringement. This is entirely false. As to TPA, the SAC specifically alleges that Turning Point and the Trump Defendants were agents of each other (*see* [Doc. 70 at ¶ 27]), and that based thereon and because of the facts set forth at paragraphs 8 through 18, Turning Point knew or should have known that the use alleged at paragraphs 43 through 48, was unauthorized. More specifically, the temporal facts necessary to state a *prima facie* case against TPA are incontrovertible and clearly established in the SAC.

On June 6, 2024, Defendants Donald J. Trump and Donald J. Trump for President 2024 (and as agents of TPA) received official notice of the termination of their right to use the property at issue at campaign events. (*See* [Doc. 70 at ¶16; *see also* Williams Affidavit, [Doc. 30], Exhibits B and C (incorporated therein).)

That very same day, Defendants Donald J. Trump and Donald J. Trump for President 2024 (agents for TPA), nevertheless unlawfully used the property at issue after a town hall in West Palm Beach, Florida, which was sponsored by Defendant TPA. (*See* [Doc. 70 at ¶ 45.]) In the publicly available videos incorporated into the SAC, TPA's logos are prominently featured in these videos surrounding Defendant Trump while he unlawfully plays the Copyrighted Work.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TPA'S MOTION TO DISMISS

"Any performance by [Trump or his agents] of any excluded works(s) . . . at any Event or Function […] shall not be covered by the grant under, and shall be deemed a material breach of this agreement." (*See Williams Affidavit*, [Doc. 30], Exhibit A ¶2(a).) Whether knowingly or unknowingly, TPA went on to sponsor at least three more rallies where the song was played by Donald J. Trump and the Trump Campaign, without verifying the validity of their license and or obtaining their own valid license. (*See* [Doc. 70 at SAC ¶¶ 46-48].) These specific factual allegations are, at minimum, sufficient to reject even the notion of dismissing the claims against TPA.

## V.    <u>ARGUMENT</u>

### A. <u>This Court May Exercise Personal Jurisdiction Over TPA, and TPA's Jurisdictional Motion CANNOT be Granted as a Matter of Law</u>

Personal Jurisdiction over TPA is proper in this case because Plaintiffs have met their burden. There are two ways to establish personal jurisdiction: (1) <u>general jurisdiction</u>, **where the defendant has continual and systematic contact with the state**, *OR* (2) specific jurisdiction, where there is a substantial connection between the conduct at issue and the state where the lawsuit was filed. (*See Moon v. Williams*, No. 1:23-CV-4193-MHC, 2024 U.S. Dist. LEXIS 160113, at *11-12 (N.D. Ga. Apr. 2, 2024).) General jurisdiction requires continuous and systematic contact between the defendant and the forum state. (*See Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002).)

Federal Courts exercise a two-part analysis in determining whether it may exercise personal jurisdiction over a nonresident defendant: (1) a court must have

jurisdiction under the forum state's long-arm statute, and (2) the exercise of jurisdiction over the defendant must comport with the Due Process Clause of the Fourteenth Amendment. (*Id*. a*t* 8.)

Pursuant to Georgia's long-arm statute, personal jurisdiction may be exercised over a non-resident defendant through specific jurisdiction where it (1) transacts any business in Georgia; (2) commits a tortious act or omission in Georgia; (3) commits a tortious injury in Georgia caused by an act or omission outside of Georgia if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state," or (4) owns, uses or possesses any real property in Georgia). (*Id*. citing O.C.G.A. § 9-10-91.)

Here, Plaintiffs have specifically alleged that TPA conducts business in Georgia, and or contracts business in Georgia that is performed in Georgia. (*See* [Doc. 70 at ¶ 31.) TPA has offered no affidavits to contradict these facts, thus by law, the Court must construe these factual allegations as true. Thus, they are enough to treat the "transacts business" prong of the long-arm statute as satisfied. (*See Williams*, at *11.)

Further, Plaintiff has alleged that such aforesaid business is REGULAR which supports the inference that it is continuous, and as discussed above - a plaintiff can establish due process minimum contacts through a defendant's contacts within the forum state **<u>unrelated to the litigation</u>, for purposes of general jurisdiction**. As such, TPA's argument regarding personal jurisdiction must fail.

Where the Court is in doubt and otherwise finds TPA's arguments persuasive, Plaintiff requests the opportunity to complete jurisdictional discovery, which they have already started.

**B. Defendants' Claims regarding Ownership are Moot and Should be Disregarded**

TPA bases its (12)(b) argument largely on the claim that the SAC does not prove ownership. (*See* [Doc. 92 at pg. 10].) Here, TPA employed a strategy to confuse the issue regarding the assignment rights and the corporate structure of the Plaintiff to question the ownership of the property in question. As these are indistinguishable from the argument in the Trump Defendants' motion, Plaintiffs incorporate by reference the relevant statement of facts and arguments set forth in its reply brief to the Trump Defendants' motion to dismiss (*See* [Doc. 90 at pg. 3-4; 6-16].)

The same are sufficient for the Court to find that Plaintiffs have both plead and proven ownership of an interest sufficient to bring a claim.

**C. Plaintiffs have Set Forth Cognizable Claims against TPA for Contributory/ and or Vicarious Infringement**

Like the Trump Defendants' motion, TPA unreasonably asserts that "because the SAC fails to plausibly allege ownership of a valid copyright, Plaintiffs' claims for direct, contributory, and or vicarious copyright infringement must be dismissed." In harmony with the Trump motion, this conclusory argument must fail.

First, like the Trump Defendants' motion, Defendants' argument regarding Plaintiffs' ownership fails. Therefore, Defendants cannot rely on it to make their

contributory infringement argument. Second, Plaintiffs can and have stated a sufficient claim for direct, contributory, and/or vicarious infringement, against TPA.

Specifically, Plaintiffs allege that TPA sponsored and or held the events wherein the Trump Defendants were able to publicly perform and later synchronized the work at issue. When construed in Plaintiffs favor, it can be inferred that Trump would not have been able to publicly perform the work at issue without Turning Point's individual actions (byway of holding, facilitating, and or financing the specified uses); and or its willful ignorance, outright refusal, and or flagrant disregard for the need to obtain and or ensure that a valid license to use the copyrighted work had been obtained – a task it had full supervisory control over for purposes of either direct and or contributory infringement. Further, it can logically be inferred that avoiding a licensing fee is financially beneficial to an event sponsor for purposes of vicarious liability. [4] As such, TPA's argument must fail.

**B. <u>As a Matter of First Impression Plaintiffs' False Endorsement Claim Under Section 43(a) of the Lanham Act Must Survive a 12(b)(6) Motion and Turning Point's Argument re the Common Law Right of Publicity must also Fail</u>**

As this argument is indistinguishable from the argument in the Trump Defendants' motion, Plaintiffs incorporate by reference the arguments set forth in its reply brief to the Trump Defendants' motion to dismiss. (*See* [Doc. 90 at pg. 19-22].) Further, the facts TPA falsely alleges are not within the SAC regarding the

---

[4] Plaintiffs further allege that Turning Point received a financial benefit from the unauthorized use of the work, at paragraph 62 of the SAC.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TPA'S MOTION TO DISMISS

protectable trademarks and the likelihood of confusion are specifically asserted at paragraphs 1, 7, 38, and 67-71 of the SAC. (*See* [Doc. 70 at ¶¶ 1, 7, 38, and 67-71].)

Further, Plaintiffs' right of publicity claim is based on the same facts including but not limited to the registered trademarks, for the reasons outlined within Plaintiffs' opposition to the first motion to dismiss. The work cannot be credited without the use of Hayes, Jr.'s name and likeness. (*See* [Doc 90 at pg 21.])

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, there is no good faith meritorious argument within Turning Point's motion to dismiss, and the motion must be denied. Further, having to draft an entire response that largely restates the arguments they already set forth to dispel the Trump Defendants' motion to dismiss, is merely harassment and a waste of time and resources. This is an uncomplicated and straight forward case that Turning Point cannot factually defend, because they failed to obtain a license. Any non-dispositive motion work, under such circumstances, cannot be justified in good faith. As such, Plaintiffs respectfully request that TPA's Motion to Dismiss be denied it its entirety. Further, if TPA's Motion is not properly withdrawn, Plaintiffs will be filing a Motion for Rule 11 sanctions based hereon.

[SIGANTURES ON NEXT PAGE]

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TPA'S MOTION TO DISMISS

*/s/ Brittney Dobbins*
Brittney R. Dobbins
Georgia Bar No. 218051
**DOBBINS LAW**
3379 Peachtree Road NE, Suite 700
Atlanta, GA 30326
Telephone: (310) 285-1730
brittney@bdobbinsesq.com

*/s/James L. Walker, Jr.*
James L. Walker Jr.
Georgia Bar No. 260643
**J. Walker & Associates, LLC**
The Walker Building
3421 Main Street Suite A
Atlanta, GA 30337
Telephone: (770) 847-7363
jjwalker@walkerandassoc.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TPA'S MOTION TO DISMISS

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.


This 10th day of March, 2025.

*/s/ Brittney Dobbins*
Brittney R. Dobbins
Georgia Bar No. 218051
**DOBBINS LAW**
3379 Peachtree Road NE, Suite 700
Atlanta, GA 30326
Telephone: (310) 285-1730
brittney@bdobbinsesq.com

*/s/James L. Walker, Jr.*
James L. Walker Jr.
Georgia Bar No. 260643
**J. Walker & Associates, LLC**
The Walker Building
3421 Main Street Suite A
Atlanta, GA 30337
Telephone: (770) 847-7363
jjwalker@walkerandassoc.com

*Attorneys for Plaintiff*

CERTIFICATE OF COMPLIANCE ISO PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO TPA'S MOTION TO DISMISS

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that on the 10th day of March, 2025, I filed the foregoing with the Clerk of Court through the CM/ECF system which will automatically send electronic mail notification of such filing to the CM/ECF registered participants as identified on the Electronic Mail Notice List.

*/s/ Brittney Dobbins*

Brittney R. Dobbins
Georgia Bar No. 218051
**DOBBINS LAW**
3379 Peachtree Road NE, Suite 700
Atlanta, GA 30326
Telephone: (310) 285-1730
brittney@bdobbinsesq.com

*/s/James L. Walker, Jr.*

James L. Walker Jr.
Georgia Bar No. 260643
**J. Walker & Associates, LLC**
The Walker Building
3421 Main Street Suite A
Atlanta, GA 30337
Telephone: (770) 847-7363
jjwalker@walkerandassoc.com

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE ISO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
TPA'S MOTION TO DISMISS