## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ISAAC HAYES ENTERPRISES, LLC,** a Georgia Domestic Limited Liability Company, and **ISAAC HAYES, III**, as representative of the **ESTATE OF ISAAC L. HAYES, JR.** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **DONALD JOHN TRUMP**, individually, **DONALD J. TRUMP FOR PRESIDENT 2024, INC.**, **TURNING POINT ACTION, INC.,** and **BTC, INC.,** <br><br> **Defendants.** | **CASE NO:** 1:24-cv-03639-TWT |

### PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

NOW COME Plaintiffs, Isaac Hayes Enterprises, LLC and The Estate of Isaac L. Hayes, Jr., by and through their representative, Isaac Hayes, III (collectively, "Plaintiffs"), and they collectively file the following Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure, showing the Court as follows:

[CONTINUED ON NEXT PAGE]

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT ACTION, INC.

## **MOTION**

Pursuant to Federal Rule of Civil Procedure 11(c)(2), Plaintiffs hereby move the Court to determine if Federal Rule of Civil Procedure 11(b) has been violated on the grounds that TURNING POINT ACTION, INC. (hereafter "Turning Point"), by and through counsel, has filed with the Court, in violation of Rule 11(b) of the Federal Rules of Civil Procedure, a Motion to Dismiss that contains claims, factual contentions and arguments that have no legal or evidentiary support, and have not been specifically identified to have such support after a reasonable opportunity for further investigation or discovery; that have been presented to the Court for an improper purpose; and, that Turning Point and its counsel, within 21 days after service of the instant motion, have failed to withdraw.  In support of this motion, the Court is referred to the accompanying memorandum of points and authorities filed herewith.

Plaintiffs are seeking an order granting the motion and imposing sanctions against Turning Point, its counsel, and the law firm of Faegre Drinker Biddle & Reath LLP, for filing a motion to dismiss that is based on misleading and false allegations that have no legal and or evidentiary support before or after a reasonable opportunity for further investigation or discovery, and that as such were asserted for no purpose other than harassment, to cause unnecessary delay, or to needlessly increase the cost of litigation. Plaintiffs also are seeking an award for the reasonable expenses incurred as a result of this immediate motion.

[SIGNATURE ON NEXT PAGE]

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT
ACTION, INC.

*/s/ Brittney Dobbins*
Brittney R. Dobbins
Georgia Bar No. 218051
**Brittney R. Dobbins Attorney at Law**
3379 Peachtree Road NE
Suite 700
Atlanta, GA 30326
Telephone: (877) 274.0646
brittney@bdobbinsesq.com

*/s/James L. Walker, Jr.*
James L. Walker Jr.
Georgia Bar No. 260643
**J. Walker & Associates, LLC**
The Walker Building
3421 Main Street Suite A
Atlanta, GA 30337
Telephone: (770) 847-7363
jjwalker@walkerandassoc.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT
ACTION, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND SUMMARY

The duty of candor is a principle that is essential to preserving public confidence in our system of justice. The duty of candor is the duty imposed on a lawyer to seek to assist the court in reaching the correct result rather than to win at all costs. This duty requires attorneys to be honest and forthright with the courts and requires that they refrain from deceiving or misleading the courts either through direct representations or through silence.

Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") mandates the duty of candor owed to the Court and exists to deter attorneys from presenting arguments that lack any legal or factual support. Turning Point, by and through its counsel, Louis Perry ("Perry"), has filed with the Court a motion to dismiss that violates Rule 11 in this respect and warrants an award of sanctions. Moreover, despite notice under the "safe harbor" provision of Rule 11, Turning Point and Perry have refused to withdraw the Motion, stating – and I quote - that Turning Point was " not persuaded" by Plaintiffs' arguments regarding sanctions, thus, forcing Plaintiffs to delay this matter (due to the safe harbor provisions) and expend needless time and resources to draft both this instant motion and a response to Turning Point's meritless motion to dismiss. As discussed in detail below, because Turning Point's motion to dismiss contains contentions that are factually and legally baseless, the Court should impose appropriate sanctions against Turning Point and/or Perry and his firm, to deter them from engaging in such egregious misconduct in the future. As the attorney who

-4-

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT ACTION, INC.

signed the Motion, Perry certified that "to the best of [his] knowledge, information, and belief, **formed after an inquiry reasonable under the circumstances**…the allegations and other factual contentions [in the Motion] have evidentiary support." (Federal Rules of Civil Procedure 11(b)(3) (emphasis added).) Turning Point's Motion attempts to mislead the Court by making knowingly false claims and or by staying silent about the extent of its business in Georgia, by making knowingly false statements and or staying silent about the public records that definitively establish Plaintiffs' copyright ownership, and by seeking the dismissal of a claim that is undisputably and knowingly a matter of first impression for this Court by way of an improper procedural motion.  These assertions are the gravamen of Turning Point's motion to dismiss and are clearly a violation of Rule 11.

## II.    <u>PROCEDURAL HISTORY</u>

Plaintiffs filed their complaint with this Court on August 16, 2024, alleging Copyright and Lanham act infringement, as well as a common law right of publicity violation. On the same day, Plaintiffs filed a request for an emergency preliminary injunction against all defendants, to stop them from using Plaintiffs' property without permission.

On August 19, 2024, Plaintiffs filed forms AO 120 and AO 121 to notify the Patent and Trademark Office and the Copyright Office, respectively, of claims related to the property mentioned thereon. The copyright mentioned on form AO 121 was RE0000734375, which is a version of the work that was registered in 1968, which is NOT the initial or first registration.

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT ACTION, INC.

Plaintiffs filed their first amended complaint and amended motion for an emergency preliminary injunction on August 21, 2024, asserting largely the same allegations.

On September 3, 2024, the Court held a hearing on the emergency motion and granted the parties' request with respect to Defendants Donald John Trump and Donald J. Trump for President 2024, Inc., and barring them from all future use of the copyrighted work without a valid license.

On December 11, 2024, Plaintiffs filed their second amended complaint asserting the same causes of action, dismissing parties, updating the identities of Plaintiffs' counsel (due to a change in counsel), and correcting known errors regarding the claimed copyright, specifically removing claims therein related to the sound recording.

On January 8, 2025, Defendant BTC, Inc. filed an answer to the second amended complaint ("SAC"). The same day Defendants Donald John Trump and Donald J. Trump for President 2024, Inc., filed a motion to dismiss the SAC. The motion to dismiss challenged Plaintiffs' standing under the Copyright Act on the basis of ownership, and it sought the dismissal of Plaintiffs' Copyright and Lanham act claims, as well as their claim for an equitable accounting on the grounds the same is not permitted under Georgia law.

On February 3, 2025, Plaintiffs filed their Certificate of Interested Persons and Corporate Disclosure Statement disclosing the identities of each owner/member of Plaintiff Isaac Hayes Enterprises, LLC – which happen to be all the known heirs to

the estate of Isaac Hayes, Jr. (Plaintiff). The same day Plaintiffs filed an updated/new form AO 121, to reflect the correct copyright registration number for the first registration of the work in 1966 (EU0000928718), and its related 1994 renewal registration number (RE0000654638). Plaintiffs likewise filed a request that the Court take judicial notice of all public records related to the correct registrations, including but to limited to the records of the termination of all interests of various grantees in and to the copyrighted work. Records that show the who, what, when, and where related to the termination, including but not limited to who signed the same – which included Hayes, Jr.'s, case specific, infamous Widow.

On February 5, 2025, Plaintiffs filed a memorandum in opposition to the Trump Defendants' motion to dismiss, setting forth in detail therein the substance and location of the relevant public records, including but not limited to how to navigate the public database so that all defendants and the Court could individually dispel any further questions regarding the chain of title and Plaintiffs' ownership. Plaintiffs' memorandum further informed the court of the fact that a Lanham Act claim rooted in a writer's persona is a matter of first impression for the Court, and thus, not a proper subject suitable for disposition on a procedural motion; and, it dispels the argument asserted by the Trump Defendants in relationship to Plaintiffs' request for an equitable accounting, <u>as a matter of Georgia law</u>.

On February 14, 2025, Turning Point filed a motion to dismiss the SAC asserting the same Copyright and Lanham act arguments as the Trump Defendants, and challenging the Court's Jurisdiction over Turning Point. Turning Point

challenges the Plaintiffs' ownership despite the public records, and all of the undisputable and undisputed information within the Court's Record related thereto; it challenges the Court's jurisdiction, despite undisputed allegations of its business in Georgia, and undisputable knowledge that this Court MUST take those allegations as true; and it attempts to dispose of a matter of first impression on an improper procedural basis, rather than properly via a ruling based on the merits.

On February 17, 2025, Plaintiffs informed all parties at their Rule 26(f) Conference of their intent to seek sanctions for Turning Point's frivolous motion to dismiss (and any others later filed on the same basis) for purposes of scheduling (specifically for purposes of entering a joint consent motion related to the then two pending motions to dismiss). Plaintiffs stated expressly therein the specific basis for the same. Turning Point declined to discuss the issue at the conference and demanded to speak about the issue on a separate call.

On February 21, 2025, the Plaintiffs and Turning Point had a call to discuss their believed basis for sanctions:

1) <u>Personal Jurisdiction</u>. Plaintiffs believe Turning Point Action's challenge to personal jurisdiction lacks merit and has been improperly asserted merely for purposes of delay and or harassment. First, on a motion to dismiss based on jurisdiction, in the 11th circuit and Northern District of Georgia, the Court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony. Second, Plaintiffs allege within the complaint at paragraph thirty-one (31), that Turning Point regularly conducts business in Georgia. This fact was not contradicted by Turning Point byway of any affidavits; therefore, the Court must construe those facts as true and

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT
ACTION, INC.

deny Turning Points' motion. Third, even where an affidavit had been provided, under Georgia's Long Arm Statute personal jurisdiction may be exercised over a non-resident defendant where the defendant transacts <u>any</u> business in Georgia, the business need not be related to the alleged injury. As we have said multiple times now, Plaintiffs know and it is public knowledge that Turning Point conducts business in GA. Likewise, that same business activity (grassroots political activity within the state of Georgia, such as college coalition chapters, canvassing, and various political events) will satisfy the federal due process requirements for general jurisdiction over Turning Point because that business is continuous and systematic. Further, it is settled in our Court that a plaintiff can establish minimum contacts through a defendant's contacts within the forum state that are unrelated to the litigation. (*See Moon v. Williams*, No. 1:23-CV-4193-MHC, 2024 U.S. Dist. LEXIS 160113, at *13-14 (N.D. Ga. Apr. 2, 2024).)

2) <u>Ownership</u>. Plaintiffs believe challenges to ownership based on the termination rights, lack merit and have been improperly asserted merely for purposes of delay and or harassment. The termination records are public documents, and they establish that the termination was lawfully conducted and recorded as required by the applicable statutes. Hayes Enterprises and Hayes Jr. 's Widow were the individuals that signed the termination, but as alleged Hayes Enterprises had the sole legal right to terminate because the entity is owned by the beneficiaries of Hayes Jr.'s Estate. (*See* Plaintiff's Request for Judicial Notice).

3) <u>Plaintiffs False Endorsement Claim.</u> This claim cannot be disposed of by way of a motion to dismiss because it is a matter of first impression for this Court. Further, paragraph thirty-eight (38) of the second amended complaint contains the factual allegations that Turning Point falsely asserts have not been pleaded within the complaint.

Thereon Plaintiffs indicated that discovery was open and that they were happy to provide any documents Turning Point needed, upon request that would facilitate

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT ACTION, INC.

its withdrawal of its motion to dismiss and or any basic questions it may have regarding ownership. Plaintiffs likewise asked, if Turning Point was asserting that it did not do business in Georgia, as alleged within the SAC. Turning Point refused to respond or attest to the same and merely stated it did not believe Plaintiffs asserted enough facts to prove a prima facie case for jurisdiction, something that is legally, under established law, NOT Plaintiffs' burden, at this time.

On February 27, 2025, Turning Point declined to withdraw their motion to dismiss, and agreed to an additional 14-day extension, in addition to that agreeable to all parties as reflected in the parties' joint consent motion filed on February 20, 2025. Turning Point granted this extension as a shield to "accommodate" the drafting of the instant motion, and the 21-day safe harbor provisions. It is important to note that this is deemed a shield and strategic delay because Turning Point has, at the time of the drafting of this motion, already had the benefit of at least 21 days to consider the specific grounds set forth by this motion, and they will receive far more than the required 21 days provided for in the statue, because of their strategic unwillingness to operate in good faith.

Turning Point has not taken advantage of the benefit of the investigation procedures available to it, discovery and or the available public records to resolve the "issues" presented by their motion to dismiss. This and the aforementioned actions necessitate the filing of the instant motion.

[CONTINUED ON NEXT PAGE]

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT ACTION, INC.

### III.    STATEMENT OF RELEVANT FACTS

Plaintiffs assert within the Second Amended Complaint that the work at issue "Hold On, I'm Comin" was co-written by Issac Hayes, Jr., and first released in 1966. (Second Amended Complaint ("SAC") at ¶ 2.)

Plaintiffs' response in opposition to the Trump Defendants' motion to dismiss makes clear that Plaintiffs have unfortunately and inadvertently misstated the registration number and related renewal date within the SAC. (SAC at ¶ 3.) Regardless, Plaintiffs' opposition and their request for judicial notice make clear that all the information needed to determine the truth of the assertion are a matter of public record and or established law. The correct registration number and renewal information for the applicable registration are a matter of public record, available to Turning Point via the U.S. Copyright Office's online record collection. A simple search of the applicable registration will provide the correct registration number (EU0000928718) and show that the actual renewal date was in 1994. Based thereon and applying the applicable statue (17 U.S.C. § 304(c)), this means the relevant copyright was up for termination in 2022.

Plaintiffs' Certificate of Interested Persons and Corporate Disclosure Statement as well as several declarations filed in this matter by Isaac Hayes, III, show that Hayes, III, is undisputably the designated representative for the Estate of Hayes, Jr. and Hayes Enterprises, the Plaintiffs in this matter (*See* [Docs 7, 29, and 90-1]). The same also shows that the known beneficiaries of the Estate are the

owners/members of Plaintiff Hayes Enterprises, and that they all transferred their respective interests in the Estate's intellectual property to the entity at formation.

The aforementioned facts demonstrate why the allegations within the SAC regarding Hayes, III's termination rights and the related ownership of the copyright at issue are true. As asserted within the SAC, on December 31, 2014, Hayes, III, as authorized representative for both the Estate and Hayes Enterprises, terminated the copyright interests of Warner Chappell Music/Cotillion Music, Inc. in and to the underlying composition for the work "Hold on I'm Comin." (*See* [Doc. 70 at ¶ 4.]) The termination, signed by Hayes, III and Hayes, Jr.'s Widow, was recorded, as required, with the United States Copyright office and are a matter of public searchable record accessible online via the Office's Public Catalog (Document Number: V9930 D260 P1-8). Pursuantly, as of March 15, 2022, Hayes, Jr.'s 50% ownership in and to the composition, indeed reverted to the Estate and by operation of law to Hayes Enterprises. (*See* [Doc. 70 at ¶ 5.]) On March 1, 2023, Hayes Enterprises entered into an agreement transferring 25% of the copyright to Primary Wave, resulting in each owning 25% of the copyright at issue. (Id.) The details of this transfer, its language, and Hayes, III's authority related thereto, are fully detailed within the declaration of Liz Garner at paragraphs 6-10. Garner's declaration is within the court record and referenced within the SAC at ¶ 3. (*See* [Doc. 70 at ¶ 3.])

## IV.    THE FALSE ALLEGATIONS IN TURNING POINT'S MOTION

Turning Point falsely claims the SAC does not contain any jurisdictional allegations specifically directed at Turning Point or that concern Turning Point's

specific contacts with Georgia, and that claim is entirely false. ([Doc 92 pg. 4.]) Plaintiffs assert at paragraph 31 of the SAC that Defendants (which includes Turning Point), their agents, and/or their personal representative (which expressly includes byway of paragraph 27 of the SAC, each of the remaining Defendants) regularly conducts business in Georgia. (*See* [Doc. 70 at ¶¶ 27 and 31.])

Turning Point falsely claims the SAC does not allege ownership, which as discussed in detail above and within Plaintiffs' opposition to the Trump Defendants' motion to dismiss is entirely false. Plaintiffs have set forth a true short and plain statement of ownership, specifically that "[o]n December 31, 2014, on behalf of Hayes - and his heirs - Hayes Enterprises and Hayes III terminated the copyright interest of Warner Chappell Music in and to the underlying composition for the Work." (*See* [Doc. 70 at ¶ 4.]) And "[p]ursuant to the termination of copyright, as of March 15, 2022, Hayes ownership of 50 percent (%) of the composition, in and to the Work reverted to the Hayes' Estate." (*See* [Doc. 70 at ¶ 5.]) Plaintiffs did not lay out with specificity every fact that supports this allegation and or attach documents to the complaint, like they did herein or within their opposition to the Trump Defendant' motion to dismiss, because as stated within their opposition to the first motion to dismiss, Plaintiffs are not legally or procedurally required to factually prove their allegations at the outset. That is what discovery is for, a procedure Turning Point is strategically and willfully ignoring, despite the fact that discovery is open and the record has developed since the filing of the first motion to dismiss, to attempt to dispose of this case on a technicality rather than on its merits. An action

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT ACTION, INC.

that will only delay this matter and significantly increase the burden and expense imposed on Plaintiffs, which is clearly improper.

Turning Point falsely claims that the SAC does not allege any facts from which the court may infer that Turning Point induced, caused, materially contributed to, and or supervised the alleged infringement. This is entirely false. As to Turning Point, the SAC specifically alleges that Turning Point and the Trump Defendants were agents of each other (*see* [Doc. 70 at ¶ 27]), and that based thereon and because of the facts set forth at paragraphs eight (8) through 18, Turning Point knew or should have known that the use alleged at paragraphs 43 through 48, was unauthorized. When construed in Plaintiffs' favor, it can be inferred from these facts that Trump would not have been able to publicly perform the work at issue without Turning Point's assistance (byway of holding, facilitating, and or financing the specified uses); and or its willful ignorance, outright refusal, and or flagrant disregard for the need to obtain and or ensure that a valid license to use the copyrighted work had been obtained – a task it had full supervisory control over. Plaintiffs further allege that Turning Point received a financial benefit from the unauthorized use of the work, at paragraph 62 of the SAC.

Turning Point falsely claims ignorance regarding Plaintiffs' asserted Lanham Act claims, which is disingenuous. The foundation for the Lanham act claims is clear on the face of the SAC, but to the extent there was any genuine doubt it was addressed at section D of the Plaintiffs' opposition to the first motion to dismiss. (*See* [Doc. 90 at pg. 19-22].) Further the facts Turning Point falsely alleges are not within

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT
ACTION, INC.

the SAC regarding the protectable trademarks and the likelihood of confusion are specifically asserted at paragraphs 1, 7, 38, and 67-71 of the SAC. (*See* [Doc. 70 at ¶¶ 1, 7, 38, and 67-71].) Further, Plaintiffs' right of publicity claim is based on the same facts including but not limited to the registered trademarks for the reasons outlined within Plaintiffs' opposition to the first motion to dismiss. The work cannot be credited without the use of Hayes, Jr.'s name and likeness.

For the aforementioned reasons there is no good faith argument within Turning Point's motion to dismiss for Plaintiffs to respond to, and having to draft an entire response that largely restates the arguments they already set forth to dispel the Trump Defendants' motion to dismiss, is merely harassment and a waste of their time and resources. This is an uncomplicated and straight forward case that Turning Point cannot factually defend, because they failed to obtain a license. Any non-dispositive motion work, under such circumstances, cannot be justified in good faith, under the duty of candor to this Court.

## V.    LEGAL ARGUMENT

Turning Point has filed a motion riddled with false statements, and that outright ignores established law, the Court's record, and public records. Further, Defendants are strategically ignoring that fact and staying silent regarding the fact that discovery is open and that any remaining legitimate questions regarding ownership, after the Trump Defendants' motion to dismiss, if any, may be wholly addressed by way of deposition and or another acceptable discovery device. As such, sanctions are warranted.

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT ACTION, INC.

Rule 11 provides, in relevant part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney…is *certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,… the allegations and other factual contentions have evidentiary support*. Fed.R.Civ.P.11 (b)(3) (emphasis added).

Sanctions must be imposed on any party, attorney, or law firm that has violated Rule 11(b) or is responsible for the violation. Fed.R.Civ.P.11(c)(1)(A) ("Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees."); *see also* Rule 11 Advisory Committee Notes (1993) ("Since … a [sanctions] motion may be filed only if the offending paper is not withdrawn or corrected within 21 days after service of the motion, it is appropriate that the law firm ordinarily be viewed as jointly responsible under established principles of agency.")

As described by the Supreme Court, the "central purpose of Rule 11 is to deter baseless filings in District Court and thus … streamline the administration and procedure of the federal courts … Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy … any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 at 393 (1990).

By requiring certification that a pleading's allegations and factual contentions have evidentiary support, Rule 11 imposes three related obligations on counsel.

*First*, counsel must conduct a reasonable investigation into the factual allegations. *See generally Estate of Blue v. County of Los Angeles*, 120 F.3d 982 at 985 (9th Cir. 1997). *Second*, counsel must act reasonably in the face of the results of the investigation. *Schrag v. Dinges*, No. 94-3005, No. 94-3093, No. 94-3102, 1995 U.S. App. LEXIS 31949, at *36-42 (10th Cir. Nov. 14, 1995); *Navarro-Ayala v. Nunez*, 968 F.2d 1421 at 1426 (1st Cir. 1992) ("The duty of reasonable inquiry perforce requires that the signer of a pleading act upon knowledge he acquires"); *see also Schramek v. Jones*, 161 F.R.D. 119, 122 (M.D. Fla. 1995).)

*Third* – and axiomatically – counsel must not misrepresent the results of his investigation to the Court. *Navarro-Ayala v. Nunez*, 968 F.2d at 1421 at 1426 (defendant's signature on pleading "that he had reason to believe was both incorrect and misleading" warranted imposition of sanctions under Rule 11); *Peerless Industries Paint Coatings, Co. v. Canam Steel Corporation*, 979 F.2d 685 at 686-87 (8th Cir. 1992) (upholding Rule 11 sanctions against counsel where pleadings misstated known, relevant facts); *Avirgan v. Hull*, 932 F.2d 1572 at 1581-82 (11th Cir. 1991) (upholding sanctions against counsel who filed affidavit outlining purported testimony of 79 witnesses, where witnesses "later stated under oath that they did not know [plaintiffs' counsel], had never spoken to him, or flatly denied the statements he had attributed to them in his affidavit"); *Methode Electronics v. Adam Technologies, Inc.*, No. 03-C-2971, 2003 WL 21799934 at *11 (N.D. Ill. July 25, 2003), aff'd, 371 F.3d 923 (7th Cir. 2004) (Rule 11 sanctions against counsel warranted where complaint contained false venue allegation in effort to deceive

court and litigate in convenient forum); *Zatko v. Rowland*, 835 F. Supp. 1174 at 1181-82 (N.D. Cal. 1993) (sanctioning pro se plaintiff under Rule 11 for filing a complaint containing untrue factual allegations and material misrepresentations); *Balfour Guthrie, Inc. v. Hunter Marine Transport, Inc.*, 118 F.R.D. 66 at 76 (M.D. Tenn. 1987) (sanctioning plaintiff and its counsel under Rule 11 for filing complaint after pre-filing investigation "disclosed facts that only exculpated defendant"). As the United States Court of Appeals for the Second Circuit has aptly noted, "the creativity of an attorney may not transcend the facts of a given case; counsel in his attempts at creativity concocted "facts" that were not well grounded, and therefore exceeded the bounds of conduct acceptable of members of the bar of this court as well as those incorporated in Fed. R. Civ. P. 11." *Levine v. FDIC*, 2F.3d 476 at 479 (2nd Cir. 1993).

A good faith investigation of the applicable law regarding motions to dismiss based on 12(b)(6) and or 12(b)(2) shows that this Court must take all factual allegations as true and construe them in Plaintiffs' favor. (*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009)(when evaluating a Rule 12(b)(6) motion the court must "[accept] the allegations in the complaint as true and [construe] them in the light most favorable to the plaintiff"); *see also Moon v. Williams*, No. 1:23-CV-4193-MHC, 2024 U.S. Dist. LEXIS 160113, at *13-14 (N.D. Ga. Apr. 2, 2024)(reasoning that the Court must "construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony.")

Regarding jurisdiction, Turning Point has not set forth any affidavits challenging Plaintiffs' factual assertion that it does business in Georgia, and it is now wholly precluded from doing so, procedurally. Thus, the burden of proof on the issue of jurisdiction has not shifted to Plaintiffs and this Court must take such allegations regarding conduct in Georgia as true, and it may not dismiss the Plaintiffs claims on jurisdictional grounds. (*See also Moon v. Williams*, No. 1:23-CV-4193-MHC, 2024 U.S. Dist. LEXIS 160113, at *13-14 (N.D. Ga. Apr. 2, 2024).)

Further, likewise, generally the factual allegations at paragraphs 1, 4-5, 7-13, 27, 31, 38, 43-48, 62, and 67-71 of the SAC must be taken as true and construed in Plaintiffs' not Turning Points favor. After Turning Point was made aware of this fact, they should have withdrawn their motion, if they were acting in good faith. Together, the referenced facts and case law wholly preclude all arguments asserted within its motion to dismiss. Further, where there may have been doubts, the developing Court record, and the now known availability of public records regarding ownership, disclose definitively that Plaintiffs' ownership and standing to assert their claims, cannot be viably challenged procedurally or otherwise.

Ignoring the law in this district and circuit, the facts available by way of a reasonable investigation, and the circumstances of this case, to assert a baseless motion to dismiss for purposes of delay by way of a dismissal on a mere technicality, in the face of a claim it cannot substantively defend, is sanctionable. Without sanctions, these actions operate to do nothing more than allow unreasonably litigious behavior and give the Defendants free rein over the Plaintiffs' case, by allowing them

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AGAINST TURNING POINT ACTION, INC.

to liberally and deceptively challenge the factual basis of the pleadings, until they are plead to Defendants' unreasonable "satisfaction," <u>rather than as required by law</u>. As such, sanctions are warranted under the Federal Rules of Civil Procedure.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully move the Court to sanction Turning Point, its attorney Louis Perry, and his law firm Faegre Drinker Biddle & Reath LLP, for violations of Rule 11(b) of the Federal Rules of Civil Procedure. This 20th day of March, 2025.

*/s/ Brittney Dobbins*
Brittney R. Dobbins
Georgia Bar No. 218051
**Brittney R. Dobbins Attorney at Law**
3379 Peachtree Road NE
Suite 700
Atlanta, GA 30326
Telephone: (877) 274.0646
brittney@bdobbinsesq.com

*/s/James L. Walker, Jr.*
James L. Walker Jr.
Georgia Bar No. 260643
**J. Walker & Associates, LLC**
The Walker Building
3421 Main Street Suite A
Atlanta, GA 30337
Telephone: (770) 847-7363
jjwalker@walkerandassoc.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

This 20th day of March, 2025

*/s/ Brittney Dobbins*
Brittney R. Dobbins
Georgia Bar No. 218051
**Brittney R. Dobbins Attorney at Law**
3379 Peachtree Road NE
Suite 700
Atlanta, GA 30326
Telephone: (877) 274.0646
brittney@bdobbinsesq.com

*/s/James L. Walker, Jr.*
James L. Walker Jr.
Georgia Bar No. 260643
**J. Walker & Associates, LLC**
The Walker Building
3421 Main Street Suite A
Atlanta, GA 30337
Telephone: (770) 847-7363
jjwalker@walkerandassoc.com

*Attorneys for Plaintiffs*

CERTIFICATE OF COMPLIANCE ISO PLAINTIFFS' MOTION FOR RULE 11
SANCTIONS AGAINST TURNING POINT ACTION, INC.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY**, that on the 20th day of March, 2025, I filed the foregoing with the Clerk of Court through the CM/ECF system which will automatically send electronic mail notification of such filing to the CM/ECF registered participants as identified on the Electronic Mail Notice List.

*/s/ Brittney Dobbins*
Brittney R. Dobbins
Georgia Bar No. 218051
**Brittney R. Dobbins Attorney at Law**
3379 Peachtree Road NE
Suite 700
Atlanta, GA 30326
Telephone: (877) 274.0646
brittney@bdobbinsesq.com

*/s/James L. Walker, Jr.*
James L. Walker Jr.
Georgia Bar No. 260643
**J. Walker & Associates, LLC**
The Walker Building
3421 Main Street Suite A
Atlanta, GA 30337
Telephone: (770) 847-7363
jjwalker@walkerandassoc.com

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE ISO PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS
AGAINST TURNING POINT ACTION, INC.