IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ISAAC HAYES ENTERPRISES, LLC**, a Georgia Domestic Limited Liability Company, and **THE ESTATE OF ISAAC HAYES**<br><br>Plaintiffs,<br><br>v.<br><br>**DONALD JOHN TRUMP, individually, DONALD J. TRUMP FOR PRESIDENT 2024, INC., TURNING POINT ACTION, INC., erroneously sued as TURNING POINT USA, INC., and BTC, INC.**,<br><br>Defendants. | Civil Action No. 1:24-cv-03639 |

**DEFENDANT TURNING POINT ACTION, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Nothing in Plaintiffs' Response contradicts the fact that the SAC fails to plausibly establish jurisdiction over Turning Point Action, Inc. ("TPA") and independently fails to state a claim against it. The Court should grant TPA's Motion to Dismiss with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) and/or 12(b)(6).

## I.    <u>STANDARD OF REVIEW</u>

For over 80 years the Supreme Court has admonished lower courts against "exorbitant exercise[s] of all-purpose jurisdiction" since doing so does "not accord with the 'fair play and substantial justice' due process demands." *Daimler AG v. Bauman*, 571 U.S. 117, 140, 142 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Moreover, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals . . . supported by mere conclusory statements do not suffice." *Id.*

Where "future amendments would be futile" dismissal with prejudice is proper. *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1347 (11th Cir. 2017).

## II.    ARGUMENT

The Court should dismiss TPA as a defendant under Fed. R. Civ. P. 12(b)(2) because Plaintiffs fail to plausibly establish the Court's jurisdiction over it and, independently, because Plaintiffs claims against TPA all fail to satisfy Fed. R. Civ. P. 12(b)(6).

### A.    **<u>Plaintiffs Fail to Sufficiently Allege That The Court Has Jurisdiction Over TPA.</u>**

Plaintiffs do not challenge TPA's assertion that the Court lacks specific jurisdiction over it since their claims do not "arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). This is probably because the SAC contains no allegations that would permit the Court to infer that TPA's Georgia contacts bear any connection whatsoever with Plaintiffs' claims, which are each tethered to the Trump Defendants allegedly performing the Work at out-of-state rallies. *Mason v. Sony Pictures Ent., Inc.*, No. 1:20-CV-03616-SDG, 2021 WL 1663492, at *4 (N.D. Ga. Apr. 28, 2021) (dismissing copyright infringement claims for lack of personal jurisdiction where allegedly infringing work was developed and produced in California, filmed in California and British Columbia, and complaint failed to allege any connection between defendants' contacts with Georgia and infringement).

Plaintiffs instead devote their response to arguing that the Court has general jurisdiction over TPA *despite conceding* TPA is neither incorporated in Georgia nor

DMS_US.369950899.5

has its principal place of business there. (Second Amended Complaint ("SAC") ¶ 25.) This argument fails as a matter of law.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint facts to make out a prima facie case of jurisdiction." *Moon v. Williams*, No. 1:23-CV-4193-MHC, 2024 WL 4039985, at *3 (N.D. Ga. Apr. 2, 2024) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). Plaintiffs argue in their Response that they have established a prima facie case for general jurisdiction because they have alleged facts sufficient to establish "continual and systematic contact with the state." (DE 107 at 14) (emphasis removed).

As the Supreme Court has repeatedly explained, to meet general jurisdiction's demanding standard, a defendant's activities must be "so 'continuous and systematic' as to render [the defendant] **essentially at home** in the forum state." *Daimler*, 571 U.S. at 137 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)) (emphasis added). This is because general jurisdiction's "breadth imposes a correlative limit: Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction." *Ford*, 592 U.S. at 358 (quoting *Daimler*, 571 U.S. at 137).

The "paradigm case" for general jurisdiction over "a corporation [is] its place of incorporation and principal base of business." *Id.* Plaintiffs allege TPA "is a

corporation organized under the laws of the state of Indiana with its principal place of business in Arizona." (SAC ¶ 25.) These accusations facially fail to satisfy the "paradigm case" for general jurisdiction.

While the Court has left open "the possibility that in an exceptional case" a corporation might also be "at home" elsewhere, *Ford¸* 592 U.S. at 359 (quoting *Daimler*, 571 U.S. at 139 n. 19), it has *never* recognized such a case, and under the Court's prevailing precedent this one cannot be that exception as a matter of law. Start with *Ford*, where the Supreme Court concluded the Ford Motor Company was *not* subject to general jurisdiction in Montana and Minnesota despite the fact that Ford "[b]y every means imaginable . . . urges Montanans and Minnesotans to buy its vehicles" and the vehicles "are available for sale . . . at 36 dealerships in Montana and 84 in Minnesota." *Ford¸* 592 U.S. at 359, 366.

Similarly, in *Daimler* the Court concluded that Mercedes Benz USA and its parent company Daimler AG were not subject to general jurisdiction in California, explaining:

> Here, neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

-5-

571 U.S. at 139 (quoting *Burger King Corp.*, 471 U.S. at 472). So too here.

Against this authority, Plaintiffs argue the SAC plausibly establishes general jurisdiction since they have "alleged that such aforesaid business is REGULAR which supports the inference that it is continuous, and . . . a plaintiff can establish due process minimum contacts through the defendant's contacts within the forum state unrelated to the litigation, for purposes of general jurisdiction." (Response at 15) (emphasis removed). Plaintiffs point to the following allegation in support:

> 31. Personal jurisdiction over each of the Defendants is proper in this jurisdiction on the grounds that Defendants, Defendants' agents, and/or Defendants' personal representatives either: (1) maintain a principal place of business in Georgia of have a substantial presence in Georgia with offices located in Georgia; or (b) regularly conduct business in the State of Georgia, including conducting such business through performing rights organizations located in Georgia and by entering into contracts that are consummated and/or performed in Georgia.

(SAC at ¶ 31.)

Even taking as true that TPA "regularly conduct[s] business" in Georgia, the Court cannot infer that TPA's contacts *exceed* those in *Ford* or *Daimler*, and so is insufficient to plausibly establish general jurisdiction over TPA. *Daimler*, 571 U.S. at 138 (the inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,'" it is whether the corporations' 'affiliations with the State are *so 'continuous and systematic' as to render [it] essentially at home in the forum State*.'") (emphasis added).

Nor can Plaintiffs bootstrap jurisdiction from Georgia's long-arm statute. O.C.G.A. § 9-10-91. At most, a long-arm statute may "allow[] the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," meaning the ultimate inquiry is still whether exercising jurisdiction "comports with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125. As explained above, the SAC fails this inquiry. The Court should dismiss TPA as a defendant under Rule 12(b)(2) because the SAC does not sufficiently allege that it has personal jurisdiction over TPA.

**B.    The Court Should Dismiss The SAC Under Rule 12(b)(6)**

Even if the Court finds jurisdiction, the SAC fails to state a claim against TPA.

    1.    <u>All Plaintiffs' Claims Against TPA Fail Because the SAC Does Not Allege TPA Did Anything Wrong</u>

The SAC is devoted entirely to what the Trump Defendants did. (*See, e.g.*, SAC ¶ 8 (alleging "Defendants Trump and his Campaign began publicly performing and synchronizing the Work, in 2020, by using it at events."). But besides alleging TPA organized several out-of-state rallies where "Mr. Trump unlawfully performed the Work," (SAC ¶¶ 43–48), the SAC is devoid of allegations that TPA did anything at all.

Plaintiffs argue "it can be inferred that Trump would not have been able to publicly perform the work at issue without Turning Point's individual actions" and "it can logically be inferred that avoiding a licensing fee is financially beneficial to

DMS_US.369950899.5

an event sponsor for purposes of vicarious liability." (DE 107 at 17.) It is not clear how or why the Court can infer that from the skeletal allegations. And in any event "naked assertions devoid of further factual enhancement" do "not suffice" to state a plausible claim. *Iqbal*, 556 U.S. at 678.

Plaintiffs also argue that TPA "and the Trump Defendants were agents of each other," (Response at 8 (citing SAC ¶ 27)), and so presumably were responsible for each other's actions. This argument is based on the SAC's conclusory allegation that:

> [E]ach of the Defendants was acting as an employee, agent, principle, officer, partner, joint venturer, director, alter ego, or other representative of one or more of the remaining Defendants, and in committing the acts and or omissions alleged herein, was acting within the course and scope of such employment, agency, partnership, joint venture, alter ego, or other relationship, and with knowledge and consent of the remaining Defendants.

(SAC ¶ 27.)

This shotgun allegation commits "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). *See also Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1209 (S.D. Fla. 2021) (Shotgun pleadings are condemned by the Eleventh Circuit, which has specifically instructed district courts to dismiss shotgun pleading as fatally defective.") (quotation marks omitted).

-8-

This allegation also perfectly illustrates the conundrums shotgun pleading causes: taken as true, TPA is the alter ego of Mr. Trump *personally*, and vice versa. This absurdity "fails to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *Weiland*, 792 F.3d at 1321, and is also precisely the sort of "[t]hreadbare recitals. . . supported by mere conclusory statements" the Supreme Court has said "do not suffice." *Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks omitted).

The context is also significant: Plaintiffs allege "the Work was *personally selected* by Defendant Trump, and *publicly performed by him* at all of his campaign related rallies," (SAC ¶ 39 (emphasis added)), yet also asks the Court to infer TPA could exercise "full supervisory control over" that decision. (ECF 107 at 18.) TPA offers that it is categorically unreasonable to infer *anyone* could exercise "full supervisory control over" *anything* Mr. Trump does. *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (emphasis added).

At bottom, there is no allegation TPA chose the Work, pressed play, set up the sound equipment, or otherwise had *anything* to do with the Trump Defendants playing the Work beyond organizing various out-of-state rallies where it was played. The SAC's failure to facially plead any volitional conduct by TPA dooms all Plaintiffs' claims against it.

      2.    <u>Plaintiffs Do Not Plausibly Allege Ownership of a Valid Copyright[1]</u>

To state a claim for direct copyright infringement, a complaint must plausibly allege "ownership of a valid copyright." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 111 S. Ct. 1282, 1296 (1991). The SAC does not.

Contrary to the Plaintiffs' mantra that this is an "uncomplicated and straightforward" case (ECF 107 at 18), the Court needs to look no further than the morass of docket-spanning arguments about the relevant copyright to see this is not true. TPA has invested considerable time and effort parsing these documents trying to determine both the "relevant" copyright and how Plaintiffs came to own it. Frankly, it is inscrutable. But this much is clear:

---

[1] As explained in its Motion, Plaintiffs' accounting claim is a form of relief, not an independent cause of action, and therefore fails because the copyright infringement claims fail. *Johnson v. Pullman, Inc*., 845 F.2d 911, 913 (11th Cir. 1988) ("Although plaintiffs' complaint contained a count in which an accounting was sought, that relief would not be available here absent some independent cause of action.").  Plaintiffs do not dispute this in their Response.

-10-

(1)  Whatever the relevant copyright to the Work may be, its original registration number *is not* EP0000246262 as alleged (SAC ¶ 3);

(2)  The relevant copyright *was not* registered on "March of 1968" (*Id.*);

(3)  The relevant copyright *was not* renewed "January 11, 1996," (*Id.*); and

(4)  Warner Chappell Music's copyright interest *could not* have been terminated by the Plaintiffs on "December 31, 2014." (SAC ¶ 3).

Plaintiffs argue the "correct registration and renewal information" is "EU0000928718," the correct registration year was 1966, and the correct renewal year was 1994, and that "[b]ased thereon and applying the applicable statute (17 U.S.C. § 304(c)), this means the relevant copyright was up for termination ***in 2022***." (ECF 90 at 7) (emphasis added).

The problem is the SAC alleges that "[o]n December 31, ***2014***, on behalf of Hayes – and his heirs – Hayes Enterprises and Hayes III terminated the copyright interest of Warner Chappell Music in and to the underlying composition for the Work." (SAC ¶ 4.) But EU0000928718 was not "up for termination [until] 2022". It is not clear how Plaintiffs could terminate Warner Chappell Music's interest in the relevant copyright 8 years before the termination period. 17 U.S.C. § 304(c)(3) ("Termination of the grant may be effected at any time during a period of five years beginning at the end of fifty-six years from the date the copyright was originally secured." 1966 + 56 = 2022.)  Nor does the SAC explain how Plaintiff Isaac Hayes

Enterprises, LLC came to own *any* termination interest in the relevant copyright in the first instance such that it even had the ability to terminate the copyright interest of Warner Chappell Music (ECF 70 at 4). This is because it cannot—termination interests are inalienable under the Copyright Act and can only be exercised by the individuals identified under § 304(c)(2). Termination rights under § 304 cannot be contracted away.[2]  15 USC § 304(c)(5).

The upshot of this is that the SAC does not make clear the relevant copyright, how Plaintiff Isaac Hayes Enterprises, LLC had the ability to terminate any copyright interests, and how Plaintiffs ultimately came to own any interest in the copyright at issue. Plaintiffs only further muddied the waters by stringing together multiple opaque briefs *and* relying on judicial notice to constructively amend the SAC (which still does not resolve the issue and in fact establishes that Warner Chappell Music's copyright interest was never terminated at all)—all while arguing ownership is so obvious that TPA is subject to Rule 11 sanctions for questioning it.

---

[2] Further, the records Plaintiffs point to in their Motion For Judicial Notice contradict this claim as Isaac Hayes Enterprises, LLC is not listed as a terminating party on the supposedly relevant record. The record instead lists "Naa Adjowa Hayes, widow & Isaac Hayes, 3rd". (ECF 111 at 13.) To further throw a wrench in the works, the record does <u>not</u> list Warner Chappell Music as an entity whose copyright interest was terminated. *Id.* To the extent that the Court agrees with Plaintiffs that these records are a source of "constant truth" and "the accuracy of the information therein cannot be reasonably questioned" (ECF 11 at 14), it should dismiss the Plaintiffs' copyright claim with prejudice because the record shows that no termination notice was ever served on Warner Chappell Music—the party Plaintiffs contend owned the copyright interest in the subject work prior to termination.  (ECF 70 at 3).

(ECF 107 at 2.)

The Court should dismiss Plaintiffs' copyright infringement claims under Rule 12(b)(6) with prejudice as any amendments would be futile. *See Smith v. Residential Cap., LLC*, No. 1:14-CV-622-TWT, 2014 WL 1767821, at *4 (N.D. Ga. May 2, 2014) (dismissing Complaint with prejudice because "any amendment would be futile.").

  3. <u>The SAC Fails to State a Claim for False Endorsement and False Advertising</u>

Finally, Plaintiffs argue their False Endorsement claim is a matter of first impression which precludes dismissal under Rule 12(b)(6). There are two faults with this argument.

*First*, there is no rule that issues of first impression cannot be dismissed at the pleading stage.[3] Rather, the rule is that facially implausible complaints cannot survive dismissal—no matter how novel they are. *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint *must* contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.")

*Second*, this is not a matter of first impression. Rather, it is a simple Lanham Act claim based on facially implausible allegations. *Jackson v. Angela Kogan and*

---

[3] *Bivens* claims are a useful analogy. Accepting Plaintiffs' position as true, the Court could not dismiss *Bivens* claims that present a "new context" under Rule 12(b)(6). Yet the Court does so regularly. *See, e.g.*, *Payne v. United States*, 2018 WL 11192916, at *7 (N.D. Georgia 2018) (Thrash, Jr., J.).

*Perfection Plastic surgery, Inc.*, 2022 WL 17582560, at *4 (S.D. Fla. 2022) ("Courts in the Eleventh Circuit treat false endorsement claims as one for trademark infringement."). *See also University of Alabama Bd. of Trustee v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) ("[W]e have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act.").

To succeed on a Lanham Act claim, a plaintiff must show both a valid trademark and a likelihood of confusion "as to the origin, sponsorship, or approval of his goods or services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1). And

> [t]o trigger a false endorsement claim, the accused use *must clearly identify* the plaintiff. This 'identifiability' issue requires that the plaintiff be "identifiable" to an ordinary person when perceiving the defendant's accused use. This is similar to the identifiability issue that arises in some right of publicity cases where it is disputed whether the plaintiff is identifiable in defendant's use.

§ 28:15. Lanham Act § 43(a) and false endorsement, 4 McCarthy on Trademarks and Unfair Competition § 28:15 (5th ed.) (emphasis added).

The first problem is that Plaintiffs have not plausibly alleged an ordinary person would know Isaac Hayes was the co-author of the Work. Instead, they ask the Court to draw this inference based solely on their allegation that Hayes was "inducted into both the Rock and Roll and Songwriters Hall of Fame." (ECF 90 at 21.) It is not reasonable to infer that an ordinary Trump rally attendee (or anyone) in 2020 would know the co-author of a song written in 1966 simply because that co-

author was inducted into both the Rock and Roll and Songwriters Hall of Fame twenty-three years ago.

But even if the Court makes that inference, the claim is still facially implausible. This is because a wall of authority holds that even *performers* of a song cannot bring such a claim based solely on the performance of their song. *See, e.g.*, *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 64 (2d Cir. 2000) ("[A] musical composition cannot be protected as its own trademark under the Lanham Act. A contrary conclusion would allow any copyright claim for infringement of rights in a musical composition to be converted automatically into a Lanham Act cause of action."); *Oliveira v. Frito-Lay*, 251 F.3d 56, 62-63 (2d Cir. 2001) (holding use of recorded song alone not sufficient to sustain a claim of implied endorsement); *Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1059 (C.D. Cal. 2004) (same). If Sam & Dave (the performers) couldn't bring a claim against the Defendants, it is facially implausible the Work's co-author could.

Plaintiffs retreat to their alternative argument that "Issac Hayes" is a registered trademark, (SAC ¶ 7), and so argue the Work "cannot be played or properly credited without reference to or the use of Hayes, Jr.'s name." (Response at 21.) This is simply untrue. Nothing requires a co-lyricist to be publicly credited each time a song is performed. Nor does the SAC allege this ever happened. And even if the Court somehow inferred TPA publicly attributed the Work to Hayes, this would be a

DMS_US.369950899.5

factually "descriptive use" referring to a "characteristic" of the song, and so permitted as fair use. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1363 (11th Cir. 2019).

Plaintiffs' Lanham Act claim does not plausibly allege a relevant protectible mark, confusion as to source or affiliation based on that mark, or TPA's impermissible use of *any* mark. The Court should dismiss this claim.

4.    The SAC Fails to State a Claim for Violation of the Right of Publicity

As set forth above, the SAC alleges only that Defendants collectively used the Work without authorization; there is no allegation that they used Hayes' name or likeness, or that consumers associate the Work with Hayes. Accordingly, Plaintiffs' have not plausibly alleged a right of publicity claim. *See, e.g.*, *Mobley v. Fermont-Langlais*, 705 Fed. Appx. 788, 791 (11th Cir. 2017) (dismissing complaint for failure to allege facts from which Court could infer that public would associate perfume names with plaintiff).

## III.    CONCLUSION

For the foregoing reasons, TPA respectfully requests that the Court grant its Motion and dismiss all claims against TPA with pursuant to Rule 12(b)(2) for lack of personal jurisdiction and/or with prejudice under Rule 12(b)(6) for failure to state a claim.

DMS_US.369950899.5

Dated:    March 24, 2025                FAEGRE DRINKER BIDDLE &
                                        REATH LLP


                                        */s/ Louis T. Perry*
                                        Alex G. Pisciarino
                                        alex.pisciarino@nelsonmullins.com
                                        Georgia Bar No. 569773
                                        201 17th Street NW, Suite 1700
                                        Atlanta, GA 30363
                                        404-322-6000
                                        404-322-6050

                                        Louis T. Perry (*pro hac vice*)
                                        300 N. Meridian Street, Suite 2500
                                        Indianapolis, Indiana 46204
                                        Telephone: (317) 237 0300
                                        Facsimile: (317) 237 1000
                                        Louis.Perry@faegredrinker.com


                                        Attorneys for Defendant TPA

**<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated:      March 24, 2025                    FAEGRE DRINKER BIDDLE &
                                              REATH LLP


                                              <u>/s/ Louis T. Perry</u>

                                              Attorney for Defendant


**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2025, I electronically filed a true and correct copy of the foregoing with the Clerk of Court via CM/ECF, which shall cause service on all counsel of record.

                                              FAEGRE DRINKER BIDDLE &
                                              REATH LLP


                                              <u>/s/Louis T. Perry</u>

-18-