IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ISAAC HAYES ENTERPRISES, LLC, et al.,<br><br>  Plaintiffs,<br><br>     v.<br><br>DONALD JOHN TRUMP, individually, et al.,<br><br>  Defendants. | CIVIL ACTION FILE<br>NO. 1:24-CV-3639-TWT |

**OPINION AND ORDER**

This is a copyright case. It is before the Court on Defendants Donald John Trump ("Trump") and Donald J. Trump for President 2024 ("Campaign")'s Motion to Dismiss [Doc. 80] and Defendant Turning Point Action, Inc. ("TPA")'s Motion to Dismiss [Doc. 92]. For the reasons set forth below, Defendants Trump and Campaign's Motion to Dismiss [Doc. 80] is GRANTED in part and DENIED in part, and Defendant TPA's Motion to Dismiss [Doc. 92] is GRANTED.

I. **Background**[1]

This case involves alleged copyright infringement at campaign events over the course of the 2024 presidential election season. Isaac Lee Hayes Jr. ("Songwriter") was a songwriter who co-wrote "Hold On, I'm Comin'" ("Work"),

---

[1] The Court accepts the facts as alleged in the Second Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

which was first released in 1966. (2d Am. Compl. ¶¶ 1-2). Plaintiff Isaac Hayes Enterprises, LLC allegedly owns and manages 25 percent of the composition in and to the Work. (*Id.* ¶ 22). Plaintiff Isaac Hayes, III is the son of the Songwriter and is the owner, President, and CEO of Isaac Hayes Enterprises. (*Id.* ¶ 21). Defendant Trump is an individual who was running to be President of the United States, and Defendant Campaign is a corporation that was organized to help him get elected. (*Id.* ¶¶ 12, 23-24). TPA is a corporation that held or sponsored events in which Defendant Trump gave a speech. (*Id.* ¶¶ 25, 43–48).[2]

The Plaintiffs allege that Trump and his Campaign began using the Work at public events in 2020. (*Id.* ¶ 8). That same year Warner Chappell Music—the then-owner of the copyright—sent Trump and his Campaign a cease-and-desist letter. (*Id.* ¶ 9). Despite that demand, they continued using the Work at campaign related rallies until September 11, 2024, a total of at least 133 times. (*Id.* ¶¶ 39-40). TPA held or sponsored several events in which the Work was performed after a speech or town hall by Defendant Trump. (*Id.* ¶¶ 43-48). The Plaintiffs allege that Defendant Trump personally selected the

---

[2] BTC, Inc. was also named in the Complaint as a defendant. (2d Am. Compl. ¶ 26). However, at the hearing on April 2, 2025, the Court granted a consent motion to sever BTC from this action and transfer the claims against it to the Middle District of Tennessee. (Dkt. Entry 131). The Court therefore does not address BTC in this Opinion and Order and all references to the "Defendants" excludes BTC.

2

Work to be played at his events. (*Id.* ¶ 39). As a result of the Defendants' use of the Work, the Plaintiffs allege that consumers have been misled "into believing the Hayes brand and his heirs promote Defendant Trump." (*Id.* ¶ 38). The Plaintiffs assert five claims against the Defendants for their allegedly unlawful use of the Work. (*Id.* ¶¶ 52-76). The Defendants now move to dismiss all claims.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); FED. R. CIV. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753

F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

The Defendants argue for dismissal on various grounds. The Court considers each in turn.

### A. Personal Jurisdiction over Defendant TPA

TPA asserts that this Court lacks personal jurisdiction over it. (Def. TPA's Br. in Supp. of Mot. to Dismiss, at 7-10). The Plaintiffs argue that they have sufficiently alleged general jurisdiction. (Pls.' Br. in Opp'n to TPA's Mot. to Dismiss, at 14-16). Establishing general jurisdiction "require[s] a showing of continuous and systematic general business contacts between the defendant and the forum state." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002) (quotation and citations omitted). The Plaintiffs allege that personal jurisdiction is proper over TPA and the other Defendants because

> Defendants, Defendants' agents, and/or Defendants' personal representatives either: (a) maintain a principal place of business in Georgia or have a substantial presence in Georgia with offices located in Georgia; or (b) regularly conduct business in the State of Georgia, including conducting such business through performing rights organizations located in Georgia and by entering into contracts that are consummated and/or performed in Georgia.

(2d Am. Compl. ¶ 31). The Plaintiffs further state in their brief, "[w]here the

Court is in doubt and otherwise finds TPA's arguments persuasive, Plaintiff requests the opportunity to complete jurisdictional discovery, which they have already started." (Pls.' Br. in Opp'n to TPA's Mot. to Dismiss, at 16). At the April 2, 2025, hearing, the Court stated that it will grant the Plaintiffs an opportunity to complete jurisdictional discovery before ruling on this issue. Upon further consideration of Defendant TPA's Motion to Dismiss, the Court finds that the Plaintiffs fail to state any of their claims against Defendant TPA. Therefore, jurisdictional discovery is not necessary.

### B. Ownership

Both of the briefs submitted on behalf of the Defendants argue that the Plaintiffs have not plausibly alleged ownership of the Work's copyright. (Defs. Trump & Campaign's Br. in Supp. of Mot. to Dismiss, at 12-22; Def. TPA's Br. in Supp. of Mot. to Dismiss, at 10-15). The Plaintiffs allege that they are "the legal and beneficial owners of 25 percent (%) of the copyright in and to the composition for the Work." (2d Am. Compl. ¶ 54). The Defendants contend that that allegation is insufficient because there is no factual support for the chain of ownership that led to the Plaintiffs' alleged ownership. (Defs. Trump & Campaign's Br. in Supp. of Mot. to Dismiss, at 12-22; Def. TPA's Br. in Supp. of Mot. to Dismiss, at 10-15). The Court finds at this stage of the litigation that the Plaintiffs have done enough to allege ownership.

The Plaintiffs allege that the copyright was previously owned by Warner

5

Chappell Music. (2d Am. Compl. ¶ 9). However, the Plaintiffs allege that they terminated that copyright interest on behalf of the Songwriter and his heirs. (*Id.* ¶ 4). That termination became effective in 2022, resulting in Hayes ownership of the 50% of the composition's copyright. (*Id.* ¶ 5). "That interest was then transferred to Hayes Enterprises, on behalf of and for the benefit of Hayes' heirs." (*Id.*). Plaintiff Hayes Enterprises subsequently entered into an agreement with an entity called Primary Wave in which both Primary Wave and Plaintiff Hayes Enterprises owned 25% of the copyright. (*Id.* ¶ 6). The Defendants have two general issues with this chain of ownership: (1) that the Plaintiffs have failed to plead a termination that is statutorily compliant, and (2) that the Plaintiffs have failed to adequately plead that the Hayes's ownership interest was transferred to Hayes Enterprises.

Starting with the first issue, a termination of a grant of a copyright may be effected 56 years after the copyright was originally secured. 17 U.S.C. § 304(c)(3). If the author is dead, the termination may be effected "by the person or persons who, under clause (2) of this subsection, own and are entitled to exercise a total of more than one-half of that author's termination interest." 17 U.S.C. § 304(c)(1). Clause (2) states:

> Where an author is dead, his or her termination interest is owned, and may be exercised, as follows:
>
> (A) The widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or

6

      widower owns one-half of the author's interest.

(B) The author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower, in which case the ownership of one-half of the author's interest is divided among them.

(C) The rights of the author's children and grandchildren are in all cases divided among them and exercised on a per stirpes basis according to the number of such author's children represented; the share of the children of a dead child in a termination interest can be exercised only by the action of a majority of them.

(D) In the event that the author's widow or widower, children, and grandchildren are not living, the author's executor, administrator, personal representative, or trustee shall own the author's entire termination interest.

17 U.S.C. § 304(c)(2).

    The Defendants make several arguments for why the alleged termination was defective: (1) that termination requires more than one half of the author's portion and the Plaintiffs fail to allege that the Songwriter's widow or other children exercised their ownership interests, (2) that they contradict themselves as to whether Plaintiff Hayes III effected the termination along with Plaintiff Hayes Enterprises, and (3) that the Plaintiffs do not adequately allege that notice of termination was filed with the Copyright Office. (Defs. Trump & Campaign's Br. in Supp. of Mot. to Dismiss, at 13-17, 19-22; Def. TPA's Br. in Supp. of Mot. to Dismiss, at 13-15). The records that the Copyright

7

Office has answers these concerns.[3]

The copyright of the Work appears in the recorded document entitled "60 minutes of your love & 150 other titles." *Hold on, I'm coming / Reg. EU928718 (1966); Termination date provided:...*, U.S. COPYRIGHT OFF. (last visited Apr. 25, 2025), https://perma.cc/WGV9-2VBF. That document, in turn, is a notice of termination of grant 17 U.S.C. § 304(c). *60 minutes of your love & 150 other titles*, U.S. COPYRIGHT OFF. (last visited Apr. 25, 2025), https://perma.cc/8NP7-G5B5. That indicates that the date and manner of service of the notice of termination was "14Oct16, by first-class certified mail return receipt requested." *Id.* The people who provided notice were "Naa Adjowa Hayes, widow & Isaac Hayes, 3rd, son of deceased author Isaac Lee Hayes, 'Jr." *Id.*

Under the statutory provisions stated above, the widow owns one-half of a deceased author's copyright and the rest is split among the surviving children. Thus, the widow plus one child will constitute "more than one-half of that author's termination interest" and satisfy the ownership requirement under 17 U.S.C. § 304(c)(1). Moreover, since the website states that they provided notice years before the termination became effectuated and did so by first-class certified mail, that plausibly shows they provided advanced notice

---

[3] The Court ruled at the April 2, 2025, hearing that it would take judicial notice of the content of the Copyright Office's website. (Dkt. Entry 131).

in writing. Finally, the website shows that both the widow and Plaintiff Hayes III were parties to the termination and so it is unclear why it matters whether Plaintiffs Hayes Enterprises filed the termination with or without Hayes III.[4] The Court therefore finds that—for purposes of this stage of the litigation—the termination of the copyright grant was proper.

That only leaves the question of whether the Plaintiffs plausibly alleged that the heirs transferred their ownership interest to Plaintiff Hayes Enterprises. The Second Amended Complaint states that after the termination occurred, the copyright interest "was then transferred to Hayes Enterprises, on behalf of and for the benefit of Hayes' heirs." (2d Am. Compl. ¶ 5). Defendants Trump and his Campaign relies on a large block quote from *Imperial Residential Design, Inc. v. Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (per curiam) to argue that the Plaintiffs must provide the assignment in writing to have standing in this case under 17 U.S.C. § 204(a). (Defs. Trump & Campaign's Br. in Supp. of Mot. to Dismiss, at 18-19). However, that quote omits an important sentence from the case: "Therefore, we agree that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid

---

[4] Notably, the relevant statute expressly states that the notice may be signed by a duly authorized agent of the person or persons with a sufficient termination interest. 17 U.S.C. § 304(c)(4).

9

suit for copyright infringement." *Imperial Residential Design, Inc.*, 70 F.3d at 99 (citation omitted).[5] Here, there is no indication that there is any dispute between Hayes's heirs and Hayes Enterprises as to the status of the copyright at issue here. Accordingly, the Court will not permit the Defendants to invoke Section 204(a) at this time. Having considered all of the Defendants' arguments, the Court concludes that the Plaintiffs have plausibly alleged ownership of the copyright in the Work.

### C. Defendant TPA's Involvement

Defendant TPA contends that the Plaintiffs fail to plausibly allege any wrongful conduct done by TPA. (Def. TPA's Br. in Supp. of Mot. to Dismiss, at 15-18). The allegations against TPA are that TPA held or sponsored events at which Defendant Trump unlawfully performed the Work. (2d Am. Compl. ¶¶ 43-48). The Plaintiffs argue,

> [w]hen construed in Plaintiffs favor, it can be inferred that Trump would not have been able to publicly perform the work at issue without Turning Point's individual actions (byway [sic] of holding, facilitating, and or financing the specified uses); and or its willful ignorance, outright refusal, and or flagrant disregard for the need to obtain and or ensure that a valid license to use the copyrighted work had been obtained – a task it had full supervisory control over for purposes of either direct and or contributory infringement. Further, it can logically be inferred that avoiding a licensing fee is financially beneficial to an event sponsor for purposes of vicarious liability

---

[5] Importantly, these Defendants omitted this sentence from the quote without any notation that it was taken out. (Defs. Trump & Campaign's Br. in Supp. of Mot. to Dismiss, at 18). The Court cautions these Defendants against providing misleading quotations in the future.

(Pls.' Br. in Opp'n to Def. TPA's Mot. to Dismiss, at 17). The Court does not agree.

As an initial matter, the Plaintiffs never allege that TPA performed the Work. Each allegation about TPA's infringement state that Defendant "Trump unlawfully performed the Work" after his speech or townhall at each event hosted or sponsored by TPA. (2d Am. Compl. ¶¶ 43-48). Since the Plaintiffs do not allege that TPA took any action itself that infringed on the copyright, the Court sees no basis for holding TPA directly liable for infringement.

The Plaintiffs' argument for contributory infringement does not fare better. "The test for contributory infringement has been formulated as 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987) (citation omitted). "The participation sufficient to establish a claim of contributory copyright infringement may not consist of merely providing the means to accomplish an infringing activity. Instead, the plaintiff must allege that the defendant 'substantially' participated in the infringing act and 'acted in concert with the direct infringer.'" *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *5 (S.D.N.Y. Mar. 21, 2022) (citations and quotation marks omitted); *see also Diaz v. Edi Korta, LLC*, 2024 WL 3425710, at *10 (S.D. Fla. July 15, 2024) ("[A] mere allegation that the defendant provided the third party with the opportunity to engage in

11

wrongful conduct is insufficient to survive a motion to dismiss." (citations omitted)). Here, the Plaintiffs do not allege that Defendant TPA provided Defendant Trump with the Work, encouraged him to use the Work, or played any role in the selection of the Work. They merely allege that Defendant TPA held or sponsored events where Defendant Trump unlawfully performed the Work. That is insufficient.

As for vicarious liability, "[t]he [Eleventh Circuit] in *Southern Bell* set forth a two-part test for finding vicarious liability in copyright infringement actions. First, the individual or corporate officer must have had the ability to supervise the infringing activity and, second, that individual must have had a financial interest in that activity." *Playboy Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 438, 441 (S.D. Fla. 1995) (citation omitted). The Plaintiffs do not allege any facts about the level of control that Defendant TPA maintained over those events and the music performed in them. Therefore, the Court cannot infer that Defendant TPA "had the ability to supervise the infringing activity" and will consequently dismiss the copyright infringement claims against Defendant TPA. *Id.*

### D. Defendant Trump and Campaign's Involvement

Defendant Trump likewise argues that he should be dismissed from this case because the Plaintiffs fail to allege any infringing or tortious conduct done by him. (Defs. Trump & Campaign's Br. in Supp. of Mot. to Dismiss, at 23-25).

However, the Plaintiffs allege that Defendant Trump "personally selected" the work, performed it at least 133 times, and recorded and published those rallies on various media platforms. (2d Am. Compl. ¶¶ 39-42). "[T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following . . . in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 106(6). Defendant Trump fails to explain how the allegations that he "personally selected" the Work to be played at his campaign events do not state that he infringed on this exclusive right. The Court will not dismiss any claims against Defendant Trump on this ground.

Defendants Trump and his Campaign also seek to dismiss the claim for contributory infringement. They first argue that dismissal is warranted for lack of ownership, but that argument fails for the reasons stated above. (Defs. Trump & Campaign's Br. in Supp. of Mot. to Dismiss, at 25). Defendants Trump and his Campaign next assert that actions of corporate officers are directly imputed to the corporation and accordingly a contributory infringement claim may not lie here. (Defs. Trump & Campaign's Br. in Supp. of Mot. to Dismiss, at 25-26). However, as the Plaintiffs point out, they do not allege Defendant Trump is a corporate officer of the Campaign. (Pls.' Br. in Opp'n to Defs. Trump & Campaign's Mot. to Dismiss, at 17). This argument is irrelevant for present purposes, and the Court will permit the claim to proceed

13

against those Defendants.

### E. Accounting Claim

The Defendants move to dismiss the Plaintiffs' accounting claim. (Defs. Trump & Campaign's Br. in Supp. of Mot. to Dismiss, at 33-34; Def. TPA's Br. in Supp. of Mot. to Dismiss, at 10 n. 2). It is questionable whether Georgia law even recognizes an independent cause of action for accounting. *Wells Fargo Bank v. Crowley*, 2014 WL 11370437, at *6 (N.D. Ga. Feb 20, 2014). Moreover, "under Georgia law, even if an equitable accounting is understood to be a separate cause of action, when a party does not allege or otherwise demonstrate that the account in question is either complicated or intricate, or allege that remedies at law are inadequate, a claim for accounting must fail." *Id.* (citations omitted). There is no allegation of a complicated or intricate account in this case.

Rather, the Plaintiffs respond to this argument by discussing constructive trusts. (Pls.' Br. in Opp'n to Def. Trump & Campaign's Mot. to Dismiss, at 22). They make no request for a constructive trust in the Second Amended Complaint. They instead appear to be asserting that they state an accounting claim because they allege sufficient facts to support the fact that a trust was formed. (*Id.*). There are no allegations asserting a trust has been formed in the Second Amended Complaint, and the Plaintiffs provide no case law that even suggests that copyright infringement creates a trust. The Court

14

will therefore dismiss this claim (Count III).

### F. Lanham Act Claim

The Plaintiffs assert a claim for false endorsement under Section 43(a)(1)(A) of the Lanham Act. (2d Am. Compl. ¶¶ 67-71). That provision imposes liability on

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person

15 U.S.C. § 1125(a)(1)(A). This claim has two elements: "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (quotation omitted); *see also Univ. of Ala. Bd. Of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) ("[W]e have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act." (citations omitted)). The Court finds that the Plaintiffs' claim is not based on a cognizable trademark right.

The Plaintiffs allege that "Defendants individually and collectively

15

knew or should have known that unauthorized use and exploitation *of the Work* infringed Plaintiffs rights under Section 43(a)(1)(A) of the Lanham Act." (2d Am. Compl. ¶ 68 (emphasis added)). However, courts have repeatedly rejected the proposition that a musical composition could serve as a trademark in and of itself. *See, e.g., EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 63-64 (2d Cir. 2000); *Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 60-63 (2d Cir. 2001); *Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1058-59 (C.D. Cal. 2004). The Plaintiffs' attempts to get around these cases are unpersuasive.

For starters, the Plaintiffs contend that because this is an issue of first impression in the Eleventh Circuit, dismissal would be inappropriate. (Pls.' Br. in Opp'n to Defs.' Trump & Campaign's Mot. to Dismiss, at 19-20). This misunderstands the pleading standard. The burden is not on the Defendants to find a case that forecloses the Plaintiffs' claim within the relevant jurisdiction. Rather, the burden is on the Plaintiffs to state a plausible claim. *See Iqbal*, 556 U.S. at 678-79. A claim's novelty does not automatically imbue it with plausibility. To the contrary, many novel arguments will be novel *because* they are implausible. If the Court agreed with the Plaintiffs on this ground, that would encourage parties to come up with absurd theories as a means to getting to discovery. The Court will not do so.

The Plaintiffs also argue that this case is distinguishable from those

16

cited above because this involves a songwriter rather than a performer. However, the Plaintiffs do not explain how this distinction makes a difference. The cases above do not depend on the fact that the individuals were performers to arrive at their conclusion. To the contrary, in *EMI*, 228 F.3d at 64, the court held "that a musical composition cannot be protected as its own trademark under the Lanham Act." It did so in part because "[c]opyright law, not trademark law, is the primary vehicle for protecting the rights *of a song's composer or her successor in interest* in the musical composition." *Id.* at 63 (emphasis added). This language is expressly applicable to songwriters, and the Court therefore does not find this case distinguishable on that ground.

*EMI*, 228 F.3d at 64, also states that there are cases in which both copyright and trademark is appropriate. However, "cases involving trademark infringement should be those alleging the appropriation of symbols or devices that identify the composition or its source, not the appropriation or copying or imitation of the composition itself." *Id.* The Plaintiffs point to the fact that they have alleged owning a trademark in the Songwriter's name. (2d Am. Compl. ¶ 7). However, they never allege that the Defendants used the Songwriter's name at any point in time.[6] They allege nothing more than the appropriation of the

---

[6] The Plaintiffs confusingly state in their brief that the Work "cannot be played or properly credited without reference to or the use of Hayes, Jr.'s name." (Pls.' Br. in Opp'n to Defs.' Trump & Campaign's Mot. to Dismiss, at 21). Of course, a person could play the Work without ever stating the Songwriter's name. To the extent that the Plaintiffs are arguing that the Work

17

composition itself. (2d Am. Compl. ¶ 68). That is not enough to plausibly state a claim for false endorsement under the Lanham Act. The Court will accordingly dismiss Count IV.

### G. Right of Publicity Claim

The Plaintiffs assert a claim for a violation of their right to publicity. In Georgia, the right to publicity is violated when there is an appropriation of a public figure's name or likeness for the defendant's benefit without consent. *Martin Luther King, Jr., Ctr. for Social Change, Inc. v. Am. Heritage Prods., Inc.*, 250 Ga. 135, 141-43 (1982); *Cabaniss v. Hipsley*, 114 Ga. App. 367, 377-78 (1966). As stated above, there is no allegation that the Defendants ever used the Songwriter's name or likeness.[7] This claim therefore fails and will be dismissed.

---

and the Songwriter are so closely associated that playing the Work will inherently cause confusion with the trademark in the Songwriter's name, that argument is senseless. For starters, the Plaintiffs provide no caselaw or statute that supports this theory. Moreover, if that theory were true, songwriters would be able to bring false endorsement claims even against a valid copyright license holder. *See Oliveira*, 251 F.3d at 63 (rejecting an argument that an artist's performance may be trademarked in part because "artists who had licensed users under their copyrights and had received fees for the copyright license could bring suits claiming additional compensation for infringement of trademark rights.").

[7] The Plaintiffs double down on the statement that "[t]he work cannot be credited without the use of Hayes, Jr.'s name and likeness." (Pls.' Br. in Opp'n to Def. TPA's Mot. to Dismiss, at 18). Again, this statement is made without any legal authority nor any citation to an allegation that states that the Defendants used the Songwriter's name and likeness to credit the Songwriter during the events. (*Id.*). The Court rejects this statement for the reasons stated in the previous footnote.

## IV. Conclusion

As stated above, Defendants Donald Trump and Donald J. Trump for President 2024's Motion to Dismiss [Doc. 80] is GRANTED in part and DENIED in part and Defendant TPA's Motion to Dismiss [Doc. 92] is GRANTED. Counts I and II are dismissed as to Defendant TPA. Counts III, IV, and V are dismissed in their entirety.

SO ORDERED, this   25th   day of April, 2025.

*[signature]*
THOMAS W. THRASH, JR.
United States District Judge