## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **ISAAC HAYES ENTERPRISES, LLC**, a Georgia Domestic Limited Liability Company, and **ISAAC HAYES, III**, as representative of the **THE ESTATE OF ISAAC HAYES, JR.** <br><br> Plaintiffs, <br><br> v. <br><br> **DONALD JOHN TRUMP**, individually, **DONALD J. TRUMP FOR PRESIDENT 2024, INC.**, **TURNING POINT ACTION, INC.**, erroneously sued as TURNING POINT USA, INC., and **BTC, INC.**, <br><br> Defendants. | Case No. 1:24-cv-03639-TWT |

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND NONTAXABLE COSTS UNDER 17 U.S.C. § 505 AND 15 U.S.C. § 1117</u>

Defendant Turning Point Action, Inc. ("TPA") respectfully submits this brief in support of its Motion for Attorneys' Fees And Nontaxable Costs Under 17 U.S.C. § 505 And 15 U.S.C. § 1117 (the "Motion").

### I.    <u>INTRODUCTION</u>

Plaintiffs Isaac Hayes Enterprises ("Hayes Enterprises") and the Estate of Isaac Hayes, Jr. (the "Estate", and together with Hayes Enterprises, "Plaintiffs") knew—or should have known—their pleadings were fatally flawed and bound for dismissal. They ignored reality, spurned generous settlement offers, and pressed a

baseless case. That choice forced heavy costs and frustration on TPA and drained judicial resources. Plaintiffs' motive was plain: weaponize the Copyright Act to strong-arm an outrageous payout divorced from law or fairness. They propped up their claims with a hollow Lanham Act theory that courts have repeatedly rejected. As the prevailing party, TPA should recover its attorneys' fees and costs under 17 U.S.C. § 505 and 15 U.S.C. § 1117.

## II.    BACKGROUND

In the Second Amended Complaint (the "SAC"), Plaintiffs brought claims for direct and contributory/vicarious copyright infringement, accounting, false endorsement, and right of publicity violations—based solely on allegations that Donald Trump, without permission, played the song "Hold On, I'm Coming" (the "Subject Work") at events hosted or sponsored by TPA. DE 70 at ¶¶ 43-58. TPA moved to dismiss the SAC with prejudice under Rule 12(b)(6) (the "MTD"), citing Plaintiffs' failure to allege any volitional act by TPA to support copyright infringement. DE 92. The remaining claims, all tied to the same allegations, failed under settled law. Plaintiffs responded with threats—demanding TPA withdraw the MTD or face sanctions. TPA stood firm, and Plaintiffs filed a motion seeking sanctions (the "Sanctions Motion"). DE 117. This Court denied the Sanctions Motion for violating Rule 11's safe harbor period at a hearing on April 2, 2025 (DE 131) and granted the MTD on April 25, 2025 (the "Order"). DE 135.

### III.    <u>LEGAL STANDARD</u>

**A.    Fees under the Copyright Act.**

Section 505 of the Copyright Act provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. This Court's discretion is guided by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) and *MiTek Holdings, Inc. v. Arce Engineering Co.*, 198 F.3d 840 (11th Cir. 1999).

In *Fogerty*, the Supreme Court approved a list of "several nonexclusive factors that courts should consider in making awards of attorney's fees to any prevailing party" in a copyright case. 510 U.S. at 534 n.19. These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (internal quotations and citations omitted).

In *MiTek Holdings*, the Eleventh Circuit stated that

> The touchstone of attorney's fees under § 505 is whether the imposition of attorney's fees will further the interests of the Copyright Act, i.e., by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure that the boundaries of

3

copyright law are demarcated as clearly as possible in order to
maximize the public exposure to valuable works.

198 F.3d at 842-43. The Eleventh Circuit also noted that a showing of bad faith or
frivolity is not a requirement of a fees award. *Id.* at 842. Moreover, "[a]lthough
attorney's fees are awarded in the trial court's discretion, they are the rule rather than
the exception and should be awarded routinely." *Controversy Music v. Cato*, No.
1:09-CV-2603-TWT, 2010 WL 11597700, at *2 (N.D. Ga. Aug. 13, 2010) (Thrash,
T.).

### B.    Fees under the Lanham Act.

For Lanham Act claims, a district court "in exceptional cases may award
reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Supreme
Court has emphasized that district courts should exercise discretion on a case-by-
case basis and has favorably cited *Fogerty*'s identification of "frivolousness,
motivation, [and] objective unreasonableness" as relevant considerations in
determining whether a case is "exceptional." *Octane Fitness, LLC v. ICON Health
& Fitness, Inc.*, 572 U.S. 545, 554 n.6 (2014) (construing the identical "exceptional
cases" standard in the Patent Act, 35 U.S.C. § 285).

## IV.    ARGUMENT

### A.    TPA Is Entitled to its Fees and Nontaxable Costs under the
Copyright Act.

As explained below, this action arises out of the Copyright Act, and TPA—as

the prevailing party—is entitled to its reasonable attorneys' fees and nontaxable costs incurred in connection with the entirety of this litigation.[1]

### i.    TPA is the Prevailing Party in this Litigation.

In the Order, the Court granted TPA's MTD on all five counts of the SAC pursuant to Rule 12(b)(6). DE 135 at 19. A "dismissal for failure to state a claim under [Rule 12(b)(6)] is a 'judgment on the merits.'" *Federated Dep't. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981). And such a dismissal is presumptively with prejudice. Fed. R. Civ. P. 41(b) (providing that unless a dismissal order "states otherwise" or is based on a "lack of jurisdiction, improper venue, or failure to join a party under [Rule 19]" it "operates as an adjudication on the merits"). *SE Power Grp. Inc. v. Vision 33, Inc.*, 855 F. App'x 531, 536-37 (11th Cir. 2021) (holding that a dismissal for failure to state a claim is on the merits and presumptively with prejudice). TPA prevailed with respect to every claim in in the SAC, and it is thus the prevailing party in this litigation. This complete success favors an award of attorneys' fees. *See Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008

---

[1] 17 U.S.C. § 505 entitles the prevailing party to recover fees in any action brought under the Copyright Act—not just individual infringement claims. While Plaintiffs dressed their claims in multiple labels, every theory hinged on one allegation: unauthorized use of the Subject Work. That link makes the entire case a copyright action in substance, if not in name. TPA therefore seeks recovery of all fees incurred. Alternatively, it asserts an independent basis for fees under the Lanham Act.

WL 2688117, at *5 (S.D. Fla. July 1, 2008) (resolution of copyright claims in defendant's favor strongly supports fee award).

####        ii.    *Fogerty* Factors 1 and 3: Plaintiffs' Claims Against TPA were Objectively Unreasonable and Frivolous.

Plaintiffs' copyright claims were both objectively unreasonable and frivolous with respect to TPA. In evaluating the objective unreasonableness and frivolousness of a plaintiff's claims, the Court examines both the factual and legal components of a claim throughout the litigation. *See Oravec v. Sunny Isles Luxury Ventures L.C.*, No. 04-CV-22780, 2010 WL 1302914, at *5 (S.D. Fla. Mar. 31, 2010). When a claim lacks merit, fees follow. *See Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1298 (S.D. Fla. Aug. 27, 2015) (noting that "lack of merit" in the claims weighs in favor of a fee award). And when a claim crosses from weak to absurd—when the outcome is obvious or the arguments are groundless—it becomes frivolous. *Victor Elias Photography, LLC v. Ice Portal, Inc.*, No. 19-CV-62173, 2023 WL 2562659, at *4 (S.D. Fla. Mar. 1, 2023).

Plaintiffs never alleged that TPA performed any element of the Subject Work—a basic requirement to plead direct copyright infringement. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir.1999). Plaintiffs had three opportunities to make this basic and threshold allegation against TPA but never did so. DE 1; DE 6; and DE 70. As a result, Plaintiffs had no basis to bring a copyright infringement

claim against TPA in the first instance, and they certainly had no basis to maintain
such a claim through three iterations of their complaint.

Plaintiffs likewise ignored the most basic elements of contributory and
vicarious infringement. To state a claim for contributory infringement, it is well-
settled that a mere allegation that a defendant like TPA provided Donald Trump with
the opportunity to engage in wrongful conduct with respect to the Subject Work is
not enough. *See Diaz v. Edi Korta*, LLC, 2024 WL 3425710, at \*10 (S.D. Fla. July
15, 2024) ("[A] mere allegation that the defendant provided the third party with the
opportunity to engage in wrongful conduct is insufficient to survive a motion to
dismiss." (citations omitted)). *See also* DE 135 at 11-12. To state a claim for
vicarious liability, Plaintiffs must have alleged some facts about the level of control
that TPA maintained over the subject events and music performed in them. *See
Playboy Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 438, 441 (S.D. Fla.
1995) (citation omitted). *See also* DE 135 at 12. Here, too, Plaintiffs had three shots
to make basic and threshold allegations against TPA. They missed every time.

The applicable law is not murky—it is crystal clear. Plaintiffs had every
chance to rethink their case, but they did not. A cursory review of precedent—or
their own allegations—should have exposed these flaws. Instead, they doubled
down, threatened Rule 11 sanctions when TPA filed a meritorious MTD, and wasted
this Court's time. Their claims were not simply weak. They were dead on arrival.

This factor weighs squarely in TPA's favor under *Fogerty*. *See Newborn v. Yahoo, Inc.,* 437 F. Supp. 2d 1, 4-7 (D.D.C. 2006) (fees warranted where plaintiff's failure to allege any facts supporting a conclusion that defendants participated in any act of infringement).

### iii.    *Fogerty* Factor 2: Plaintiffs' Bad Faith Motivation.

Plaintiffs brought and maintained this litigation with improper motives and in bad faith. Courts consider whether the losing party acted in good or bad faith when awarding fees. *Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*, 2011 WL 6097980, at *5 (M.D. Fla. Dec. 7, 2011). Bad faith includes suing for harassment, failing to research the law, and pursuing litigation in an unprofessional manner. *Id.* (citation omitted).

First, Plaintiffs' motive is clear: extract a windfall from TPA. Rather than pursuing resolution of a fairly minor dispute in good faith, they demanded hundreds of thousands of dollars[2] in statutory damages from TPA. See Declaration of Louis T. Perry ("Perry Decl.") at ¶ 2, Ex. 1 at pp. 1, 15-19.  A copy of the Perry Decl. is attached hereto as Exhibit A. They misrepresented the relief available under 17

---

[2] The settlement demands ranged from $375,000 to $750,000, with the most recent demand being $400,000. These demands not only indicate bad faith—they further highlight the unreasonableness of Plaintiffs' claims. A major discrepancy between damages demanded and a claim's reasonable expected value can speak to "the unreasonable nature of [copyright] claims." *Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 358–59 (S.D.N.Y. 2006).

U.S.C. § 504(c)(1), incorrectly claiming they could recover $150,000 <u>per use</u> of the Subject Work. *Id.* at ¶ 3, Ex. 2. But the statute is clear—statutory damages range from $750 to $30,000 <u>per work infringed</u>, with willful infringement possibly increasing the amount to $150,000, as the court deems just. Even if they could prove willfulness, Plaintiffs' demands were unsupported by the Copyright Act. Despite TPA's thorough explanation of the applicable statutory provisions, legislative history, case law, and Eleventh Circuit's Pattern Jury Instructions, Plaintiffs rejected a $60,000[3] settlement offer and instead <u>increased</u> their demand from $375,000 to $400,000.[4] *Id* at ¶ 2, Ex. 1 at pp. 1-2. These actions indicate that Plaintiffs were motivated by the desire to extract an unjustified payment from TPA rather than seek a fair recovery.[5] *See Walsh v. Townsquare Media, Inc.*, No. 19-CV-4958 (VSB), 2022 WL 1302216, at *3 (S.D.N.Y. May 2, 2022) (baseless settlement demands indicate bad faith).

Second, as already discussed above, Plaintiffs failed to adequately research

---

[3] Which is twice the amount of the maximum statutory damages available to Plaintiffs.

[4] Plaintiffs explained this increase as an attempt to account for actual damages and the remaining Lanham Act claims. Perry Decl. at ¶ 2, Ex. 1 at pp. 1-2.

[5] To be clear, TPA has consistently maintained that Plaintiffs' claims were meritless. It engaged in limited settlement discussions to avoid uncertainty and the expense inherent in litigation. These efforts were not an acknowledgement of liability, but a practical attempt to resolve a baseless dispute efficiently.

the law or facts before initiating this lawsuit or in connection with any of their various amendments to their complaint. This failure resulted in additional and unnecessary work for both TPA and this Court.

Third, Plaintiffs pursued this litigation in an improper and bad faith manner. When confronted with TPA's meritorious MTD, Plaintiffs threatened Rule 11 sanctions against TPA and TPA's counsel unless they withdraw the MTD. Perry Decl. at ¶ 4, Ex. 3, pp.1-2. When TPA refused, Plaintiffs filed the Sanctions Motion in clear violation of Rule 11's safe-harbor provision. DE 122 at 12-13. The Sanctions Motion was replete with incorrect statements of the law and misleading characterizations of the MTD, further highlighting Plaintiffs' bad faith and improper motives in pursuing this litigation. DE 122 at 4-10. Rather than address their claims' obvious lack of merit, Plaintiffs misused procedural tools in a misguided attempt to chill TPA's legitimate advocacy and intimidate it into abandoning meritorious (and ultimately successful) legal positions. This conduct speaks directly to bad faith.

This factor favors TPA.

> **iv.** ***Fogerty* Factor 4: An Award of Fees and Nontaxable Costs Against Plaintiffs Furthers the Purposes of the Copyright Act.**

In *Fogerty*, the Supreme Court emphasized that awarding fees to a prevailing defendant in a copyright case furthers the goals of copyright law as much as awarding fees to a prevailing plaintiff:

>   Because copyright ultimately serves the purpose of enriching the
>   public through access to creative works, it is particularly
>   important that the boundaries of copyright law be demarcated as
>   clearly as possible. To that end, defendants who seek to advance
>   a variety of meritorious defenses should be encouraged to litigate
>   them to the same extent that plaintiffs are encouraged to litigate
>   meritorious claims of infringement . . . Thus a successful defense
>   of a copyright infringement action may further the policies of the
>   Copyright Act every bit as much as a successful prosecution of
>   an infringement claim by a holder of a copyright.

510 U.S. at 527.

As the Supreme Court explains in *Kirtsaeng v. John Wiley & Sons, Inc.*, 579

U.S. 197 (2016), when a litigant is clearly in the right, the likelihood of recovering

fees from an unreasonable opponent incentivizes litigation through to the end. *Id.* at

203-205. Shifting fees encourages a defendant to continue defending against a

meritless claim, even if the cost of attorney's fees exceeds the cost of settlement.

*Id.* "Conversely, when a person ... has an unreasonable litigating position, the

likelihood that he will have to pay two sets of fees discourages legal action." *Id.* at

205. Thus, "[t]he copyright holder with no reasonable infringement claim has good

reason not to bring suit in the first instance (knowing he cannot force a settlement

and will have to proceed to judgment)[.]" *Id.*

Here, the considerations of compensation and deterrence favor awarding TPA

its attorneys' fees and nontaxable costs for successfully defending Plaintiffs'

meritless copyright infringement claims. Awarding fees to TPA will deter future

plaintiffs from pursuing objectively unreasonable copyright infringement claims,

whereas not awarding fees penalizes TPA for defending against Plaintiffs' legally and factually deficient claims (and will also discourage future defendants with valid defenses from protecting their rights). Therefore, TPA should be awarded its fees and costs in this case.

v.    **Weighing the *Fogerty* Factors.**

In light of the *Fogerty* factors, TPA is entitled to its fees. Plaintiffs' claims were objectively unreasonable, pursued in bad faith, and lacked any legal or factual merit from the outset. Their conduct throughout the litigation—misrepresenting the law, making baseless settlement demands, and abusing procedural rules—further demonstrates the need for fee shifting. Awarding fees here will not only compensate TPA but will also serve as a deterrent to future plaintiffs bringing similar meritless actions. The policies behind the Copyright Act favor such an award, ensuring that both creators and users can rely on the law's boundaries without fear of groundless litigation.

**B.    TPA Is Entitled to its Fees and Nontaxable Costs under the Lanham Act.**

The Lanham Act's fee-shifting provision provides: "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[T]he legislative history to the Lanham Act makes it clear that attorney's fees are also available to prevailing defendants in 'exceptional' cases." *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1319 n. 10 (11th Cir. 2001).

12

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court explained that the phrase "exceptional case" should be interpreted in accordance with its ordinary meaning to mean "uncommon," "rare," or "not ordinary," and is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances." 572 U.S. 545, 554 (2014) (emphasis added). Courts determining if a case is "exceptional" consider nonexclusive factors including: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554, n.6. "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*. at 555.

### i.    Plaintiffs' Litigating Position with Respect to its Lanham Act Claim was Weak.

Under *Octane Fitness*, the Court considers "the substantive strength of a party's litigating positions (considering both the governing law and the facts of the case)." *Hard Rock Café International USA, Inc. and Tarsadia Hotels v. Rockstar Hotels, Inc.* (quoting *Octane Fitness*, 572 U.S. at 554). Fees are appropriate where a

claim is objectively baseless, supported by "extremely weak arguments," or wholly lacking in factual or legal support. *Id.*

Here, Plaintiffs' false endorsement claim under Section 43(a)(1)(A) of the Lanham Act fails from the outset. They allege no cognizable trademark right[6] and disregard overwhelming precedent rejecting the idea that a musical composition can function as a trademark. *See* DE 135 at 15–16. Plaintiffs offer no coherent rationale—only the untenable view that a songwriter's close association with a song alone creates consumer confusion. This Court rightly called that argument "senseless." *Id.* at 17–18. Plaintiffs made no real effort to defend the claim, and what little argument they did offer only underscored its weakness. The claim was objectively baseless and legally indefensible.

### ii.    Considerations of Compensation and Deterrence Warrant an Award of Fees.

An award of fees is also warranted under the *Octane Fitness* factor of compensation and deterrence. Plaintiffs' legally baseless Lanham Act claim forced TPA to expend substantial resources responding to allegations that lacked any foundation in law or fact. Awarding fees here would compensate TPA for those unnecessary costs and deter future litigants from asserting similarly meritless false endorsement claims—particularly claims that stretch the Lanham Act far beyond its

---

[6] Plaintiffs do reference two trademark registrations but make no allegations than any parties used the subject marks.

intended scope. Without a fee award, plaintiffs with weak or speculative claims face little downside to pursuing costly litigation in the hopes of extracting a settlement. The Court should make clear that misuse of the Lanham Act for such purposes has consequences.

### iii.    The Remaining *Octane Fitness* Factors All Fall in TPA's Favor.

TPA has already addressed Plaintiffs' bad-faith motivation and the objectively unreasonable nature of their claims in Sections IV.A and IV.B.i-ii above, and that reasoning applies with equal force here. Plaintiffs had multiple opportunities to assess the legal deficiencies of their Lanham Act claim but instead disregarded clear, settled law. Rather than engaging with the merits, they resorted to Rule 11 threats in a failed attempt to pressure TPA into withdrawing a well-founded motion to dismiss. This conduct reinforces the conclusion that Plaintiffs litigated in an unreasonable manner and further supports a fee award under the Lanham Act.

### iv.    Weighing the *Octane Fitness* Factors.

Weighing the *Octane Fitness* factors, Plaintiffs' Lanham Act claims stand out as objectively unreasonable and frivolous. They failed to provide a legitimate defense, instead resorting to threats of sanctions to preserve a legally unsound position. This unreasonable conduct, coupled with the lack of substantive merit in their claim, strongly supports an award of attorneys' fees. Given these

considerations, the Court should grant TPA its fees for defending this baseless litigation.

## V.    TPA's Fee Estimate and Request for Separate Briefing Schedule.

Pursuant to Fed R. Civ. P. 54(d)(2)(B)(iii), TPA estimates that it has incurred approximately $205,238 in attorneys' fees in connection with this matter, plus the fees it has incurred, and will incur, in subsequent fees-related briefing. Pursuant to Fed R. Civ. P. 54(d)(2)(C), TPA asks that the Court first rule on whether this case meets the standards of the applicable fee-shifting provisions and, if so, to set a separate briefing schedule before receiving detailed submissions regarding the reasonableness and amount of attorneys' fees.

## VI.    Conclusion

In view of the totality of the circumstances, TPA respectfully requests that the Court grant the Motion.

Respectfully submitted this 2nd day of May, 2025,

*(signatures on following page)*

16

FAEGRE DRINKER BIDDLE &
REATH LLP

*/s/ Louis T. Perry*
Louis T. Perry (admitted *pro hac vice*)
Louis.Perry@faegredrinker.com
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204
(317) 237-0300
(317) 237-1000

NELSON MULLINS RILEY &
SCARBOROUGH LLP


*/s/ Alex G. Pisciarino*
Alex G. Pisciarino
(Georgia Bar No. 569773)
alex.pisciarino@nelsonmullins.com
201 17th Street NW, Suite 1700
Atlanta, GA 30363
404-322-6000
404-322-6050

Attorneys for Defendant
Turning Point Action, Inc.

## CERTIFICATION

In accordance with LR 5.1C, ND GA, I hereby certify that this document has

been prepared in 14 point, Times New Roman font.

*/s/ Alex G. Pisciarino*
Alex G. Pisciarino
Georgia Bar No. 569773

## CERTIFICATE OF SERVICE

I certify that on May 2, 2025, I caused the foregoing to be electronically

filed the foregoing with the Clerk of Court using the CM/ECF system, which will

send notice of filing and a copy of same to counsel of record.

*/s/ Alex G. Pisciarino*
Alex G. Pisciarino
Georgia Bar No. 569773